## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| YATES CONSTRUCTION CO., INC., on behalf of itself and all others similarly situated, | No. 3:12-cv-00169-AET-LHG |
| Plaintiff, | **MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CONSOLIDATION PURSUANT TO FED. R. CIV. P. 42** |
| v. | **and** |
| SIGMA CORPORATION, MCWANE INC. and STAR PIPE PRODUCTS, LTD., | **FOR APPOINTMENT OF INTERIM CO-LEAD COUNSEL FOR INDIRECT PURCHASER PLAINTIFFS** |
| Defendants. | |

| | |
|---|---|
| SOUTH HUNTINGTON WATER DISTRICT, on behalf of itself and all others similarly situated, | No. 3:12-cv-00734-FLW-DEA |
| Plaintiff, | **MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CONSOLIDATION PURSUANT TO FED. R. CIV. P. 42** |
| v. | **and** |
| SIGMA CORPORATION, MCWANE INC. and STAR PIPE PRODUCTS, LTD., | **FOR APPOINTMENT OF INTERIM CO- LEAD COUNSEL FOR INDIRECT PURCHASER PLAINTIFFS** |
| Defendants. | |

Plaintiffs Yates Construction Co., Inc. and South Huntington Water District, by and through their respective counsel, jointly move this Honorable Court for (i) consolidation of their related actions pursuant to Federal Rule of Civil Procedure 42 and (ii) appointment of Steven A. Asher, Esquire, of Weinstein Kitchenoff & Asher LLC and David Kovel, Esquire, of Kirby McInerney LLP as Co-Lead Interim Lead Counsel, and Lisa J. Rodriguez, Esquire, of Trujillo Rodriguez & Richards, LLC as Interim Liaison Counsel, on behalf of Indirect Purchaser Plaintiffs.

## I.     INTRODUCTION

The above-captioned actions (filed as class actions) arise out of an unlawful conspiracy among defendants and their co-conspirators that had the purpose and effect of raising and fixing prices in the market for ductile iron pipe fittings ("DIPF") throughout the United States beginning in January 2008.

DIPF are a component of pipeline systems that transport drinking water and waste water under pressurized conditions in municipal distribution systems and treatment plants.  Plaintiffs Yates Construction Co., Inc. ("Yates") and South Huntington Water District ("South Huntington") (jointly, "Plaintiffs") were indirect purchasers of DIPF from one or more of the named defendants during the relevant time period.  Plaintiffs seek both monetary damages and injunctive relief in their respective complaints.

Presently, Plaintiffs seek consolidation of their actions pursuant to Federal Rule of Civil Procedure 42.  Not only do the two actions share common questions of law and fact, but the risk of inconsistent adjudication and burden on the parties as a result of multiple lawsuits weighs in favor of consolidation.

Plaintiffs also seek appointment of interim co-lead counsel (Steven A. Asher of Weinstein Kitchenoff & Asher LLC and David Kovel of Kirby McInerney LLP) and interim liaison counsel (Lisa J. Rodriguez of Trujillo Rodriguez & Richards, LLC) on behalf of the indirect purchaser plaintiffs pursuant to Federal Rule of Civil Procedure 23(g) in order to protect the interests of the proposed indirect classes.

## II.    CONSOLIDATION OF ACTIONS

Federal Rule of Civil Procedure 42 governs the consolidation of actions.  It provides in pertinent part:

2

> If actions before the court involve a common question of law or fact, the court may:
>
> (1) join for hearing or trial any or all matters at issue in the action;
>
> (2) consolidate the actions; or
>
> (3) issue any orders to avoid unnecessary cost or delay.

Fed. R. Civ. P. 42(a).   The party moving for consolidation bears the burden of showing the existence of common questions of law or fact. *Medpointe Healthcare Inc. v. Hi-Tech Pharmacal Co., Inc.*, 2007 U.S. Dist. LEXIS 4652, at *10 (D.N.J. Jan. 22, 2007).

The actions do not need to be identical in order to be consolidated. *A.F.I.K. Holding SPRL v. Bio-Technology General Corp.*, 216 F.R.D. 567, 570 (D.N.J. 2003).  However, before the actions can be consolidated, the Court

> must balance the risk of prejudice and possible confusion against the risk of inconsistent adjudications of common factual and legal issues, the burden on the parties and witnesses, the length of time required to conclude multiple lawsuits as against a single one, and the relative expense to all concerned of the single-trial and multiple-trial alternatives.

*Id.*

Here, the parties jointly seek consolidation of their actions.  *See* Fed. R. Civ. P. 42(a)(2). Both actions have been brought by indirect purchasers of Ductile Iron Pipe Fittings ("DIPF") as a class action against a common set of defendants, *i.e.*, Sigma Corp. ("Sigma"), McWane, Inc. ("McWane") and Star Pipe Products, Ltd. ("Star") ("Defendants").  Each Plaintiff alleges that:

- Defendants conspired to fix, raise, maintain and/or stabilize the prices at which DIPF is sold in the United States;

- Defendants' unlawful acts caused indirect purchasers of DIPF to pay artificially inflated prices for the product; and

- Defendants' unlawful conduct started at least as early as January 2008 and caused injury to indirect purchasers of DIPF.

3

*See generally* Exhibit A, *Yates* Complaint and Exhibit B, *South Huntington* Complaint.

The two actions also involve common questions of fact and law that arise out of Defendants' combination and conspiracy to fix, raise, maintain and/or stabilize the price charged for DIPF in the United States.[1]  In fact, the actions assert *identical* questions of fact (and law), including:

- Whether Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain, and/or stabilize the price charged for DIPF sold in the United States;

- The identity of participants in the conspiracy;

- The duration of the conspiracy alleged in this Complaint and the nature and character of the acts performed by Defendants and their co-conspirators in the furtherance of the conspiracy;

- Whether Defendants took steps to actively conceal the conspiracy from Plaintiff and other Class members;

- Whether the alleged conspiracy violated the Sherman Act;

- Whether the alleged conspiracy violated state antitrust and unfair competition law;

- Whether Defendants unjustly enriched themselves to the detriment of the Plaintiff and the members of the Classes, thereby entitling Plaintiff and the members of the Classes to disgorgement of all benefits derived by Defendants;

- Whether the conduct of Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business and property of Plaintiff and other members of the Class;

---

[1] Both the *Yates* action and the *South Huntington* action seek to recover damages from a conspiracy that commenced in 2008 as a price fixing scheme among all three defendants. The *Yates* action additionally seeks injunctive relieve and to recover damages for a conspiracy which continued from 2009 to the present wherein McWane and Sigma excluded the third defendant, Star Pipe, from the market for domestic DIPF through the present to the detriment of indirect purchasers. This distinction, however, is of no moment as the actions do not need to be identical in order to be consolidated. *A.F.I.K. Holding SPRL*, 216 F.R.D. at 570. Moreover, the parties are committed to preparing a consolidated class action complaint to resolve any differences between the existing complaints.

- The effect of Defendants' conspiracy on the prices of DIPF sold by Defendants during the Class Period; and

- The appropriate measure of damages sustained by Plaintiff and other members of the Damages Class.

Exhibit A, *Yates* Complaint at ¶¶ 83(a)-(j); Exhibit B, *South Huntington* Complaint at ¶¶ 57(a)-(j).

Because the two actions share core common questions of fact and law, they will invariably generate duplicative and overlapping discovery. Consolidating the actions will minimize duplication of effort in pretrial proceedings, and will prevent inconsistent determinations. *See, e.g., In Re TMI Litig.*, 193 F.3d 613, 724 (3d Cir. 1999) ("'The purpose of consolidation is to streamline and economize pretrial proceedings so as to avoid duplication of effort, and to prevent conflicting outcomes in cases involving similar legal and factual issues.'") (citation omitted). Consolidation will also minimize the burden on the parties and witnesses in the litigation, as well as the Court. *See, e.g., Tracinda Corp. v. DaimlerChrysler AG*, 2001 U.S. Dist. LEXIS 26452, at *8 (D. Del. July 26, 2001) (the goals of consolidation are furthered "by requiring the parties to coordinate their efforts while simultaneously increasing the efficient handling of these cases and easing the administrative burdens on the Court").

Based on the foregoing considerations, and due to the lack of any possible prejudice or confusion if the actions were to be consolidated, the consolidation of the two actions is appropriate.

## III.   APPOINTMENT OF INTERIM CO-LEAD COUNSEL

Rule 23(g)(3) of the Federal Rules of Civil Procedure provides that a court "may designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action." When appointing lead counsel, the court must consider (1) the work counsel have done in identifying or investigating potential claims in the action; (2)

5

counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class.   *See* Fed. R. Civ. P. 23(g)(1)(A).   Proposed Interim Co-Lead Counsel more than satisfy these requirements.

The Advisory Committee notes to former Rule 23(g)(2)(A) explain that the rule "authorizes [a] court to designate interim counsel during the pre-certification period if necessary to protect the interests of the putative class." The *Manual for Complex Litigation*, Fourth ("MCL 4th") elaborates as follows:

> If…there are a number of overlapping, duplicative, or competing suits pending in other courts, and some or all of those suits may be consolidated, a number of lawyers may compete for class counsel appointment. *In such cases, designation of interim counsel clarifies responsibility for protecting the interests of the class during pre-certification activities,* such as making and responding to motions, conducting any necessary discovery, moving for class certification and negotiating settlement.

MCL 4th § 21.11 (emphasis added). Courts considering motions for appointment of interim class counsel have generally applied the factors set forth in Rule 23(g)(1)(A). *See, e.g., Parkinson v. Hyundai North America*, Nos. CV06-345 (AHS), 2006 WL 2289801, at *2 (C.D. Cal. Aug. 7, 2006); *In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 57 (E.D.N.Y. 2006); *Hill v. The Tribune Co.*, Nos. 05 C 2602, 2005 WL 3299144, at *3-4 (N.D. Ill. Oct. 13, 2005).[2] Application of these Rule 23(g) factors strongly supports appointing the undersigned as interim lead counsel and liaison counsel.

Here, approval of the proposed interim leadership structure will allow for, among other things: (1) the coordinated preparation and filing of a consolidated amended complaint; (2) the

---

[2] These cases refer to the factors contained in former rule Fed. R. Civ. P. 23(g)(1)(C), which was renumbered to Fed. R. Civ. P. 23(g)(1)(A) by the December 1, 2007 Amendments to the Federal Rules of Civil Procedure.

efficient prosecution of this action through a decision on class certification and appointment of permanent class counsel; (3) coordination with counsel for direct purchaser plaintiffs; and (4) the facilitation of any potential settlement discussions that may occur in the future. *See* Advisory Committee Notes to former Fed. R. Civ. P. 23(g)(2)(A).   Other benefits will also accrue, including the assurance to third parties that they are dealing with counsel authorized to negotiate document preservation and production issues.   Approving the proposed interim leadership structure and granting these firms interim co-lead counsel status will provide all concerned with the requisite indicator that Steven A. Asher of Weinstein Kitchenoff & Asher LLC and David Kovel of Kirby McInerney LLP, as interim co-lead counsel, and Lisa J. Rodriguez of Trujillo Rodriguez & Richards, LLC, as interim liaison counsel, are empowered to act on behalf of the proposed class.

### A.   Counsel's Significant Experience in Serving as Lead Counsel in Antitrust Class Actions

#### 1.   Weinstein Kitchenoff & Asher LLC

As detailed in the resume of Weinstein Kitchenoff & Asher LLC ("WKA"), attached hereto as Exhibit C, the Firm and its attorneys have a long history of serving as lead counsel for plaintiffs in antitrust class actions.   Courts have consistently recognized WKA's expertise and knowledge of the law in such cases. For example, in *In re Electrical Carbon Products Antitrust Litigation*, MDL No. 1514 (D.N.J.), the Honorable Jerome B. Simandle stated the following in his Order granting final approval to the class settlement:

> Class Counsel . . . demonstrated the skills and effectiveness which come from seasoning and experience in class action litigation, and more particularly in antitrust litigation.   In this case, the Court observed Class Counsel closely and found them to be well-prepared, knowledgeable, industrious, fair with opposing counsel, and unfailingly candid with the Court . . . In short, Class Counsel's skills and effectiveness in preparing, litigating, strategizing, and

> successfully resolving the case with a fair settlement were of the
> highest order of professionalism.

*In re Elec. Carbon Prods. Antitrust Litig.*, 447 F. Supp. 2d 389, 406-07 (D.N.J. 2006).

In *In re Polyester Staple Antitrust Litig.*, MDL No. 1516 (W.D.N.C.), the Honorable

Richard L. Voorhees recognized the skill of WKA and its co-lead counsel in that case:

> As an initial matter, the competency of Plaintiffs' counsel, as well as
> counsel's ability to handle a complex class action is evident. Class
> Counsel, who have appeared before the Court on numerous occasions
> during the course of the litigation, have been exceptionally well-prepared
> on each occasion and demonstrated a mastery of both antitrust and class
> action jurisprudence. Plaintiffs' counsel have vigorously prosecuted this
> action and will undoubtedly continue to do so upon certification.

*In re Polyester Staple Antitrust Litig.*, No. 03-1516, 2007 U.S. Dist. LEXIS 52525, at *44

(W.D.N.C. July 19, 2007).

Steven A. Asher, who will be leading the prosecution of this action on behalf of WKA,

has served as co-lead counsel for plaintiffs in many of the major antitrust class actions in the past

two decades, in which hundreds of millions of dollars have been recovered for class members.

In its ranking of the top U.S. Business attorneys, *Chambers & Partners USA* noted that Mr.

Asher is "highly knowledgeable and experienced" and has "garnered peer approval for his

*'tough, aggressive'* approach, which often results in multimillion dollar settlements." Mr. Asher

has also been listed in *Best Lawyers in America* since 2006 and has perennially been named to

the *Pennsylvania Super Lawyers* publication.

Mr. Asher is currently serving as co-lead counsel for plaintiffs in the following

multidistrict, antitrust class actions:

- *In re Processed Eggs Antitrust Litigation,* MDL No. 2002 (E.D. Pa.) (Pratter, J.).
  WKA is co-lead counsel for a class of direct purchasers of shell eggs and egg
  products that conspired to fix prices.   Although discovery has not yet commenced,
  one group of defendants has settled for $25 million.

8

- *In re Sulfuric Acid Antitrust Litigation*, MDL No. 1536 (N.D. Ill.) (Coar, J.). WKA represents a class of direct purchasers alleging that major manufacturers of sulfuric acid conspired to fix prices. The class was certified by Judge Coar and several defendants have entered into settlements with the class. The case is presently on appeal in the Seventh Circuit.

In addition, Mr. Asher has served as co-lead counsel for plaintiffs in approximately 20 successful antitrust class actions, including, *inter alia*: *In re Graphite Electrodes Antitrust Litigation* (E.D. Pa.) – recovery in excess of $134 million; *In re Flat Glass Antitrust Litigation* (W.D. Pa.) – recovery in excess of $120 million; *In re Citric Acid Antitrust Litigation* (N.D. Cal.) – recovery in excess of $90 million; *In re Sorbates Direct Purchaser Antitrust Litigation* (N.D. Cal.) – recovery in excess of $80 million; *In re Polyester Staple Antitrust Litigation* (W.D.N.C.) – recovery in excess of $60 million; and *In re BP Propane Direct Purchaser Antitrust Litig.* (N.D. Ill.) – recovery of $52 million. Mr. Asher was most recently before this Court as co-lead counsel in *In re Electrical Carbon Products Antitrust Litigation* (D.N.J.), where in excess of $21 million was recovered from manufacturers alleged to have fixed prices and to have allocated customers and markets for industrial electric products.

Mr. Asher graduated from The Johns Hopkins University in 1969 with a B.A. in philosophy, and received a J.D. from New York University's School of Law in 1973 where he was an editor of the Law Review and winner of the Edmond Cahn award given annually to the outstanding law review editor. He is a former chair of the Philadelphia Bar Association Antitrust Law Committee, lectured for several years on antitrust litigation for the Department of Economics at the University of Pennsylvania, and has also lectured on class action and antitrust topics for Continuing Legal Education groups throughout the country.

## 2.    Kirby McInerney LLP

As detailed in the resume of Kirby McInerney LLP ("KM"), attached hereto as Exhibit D,

KM is a specialist litigation firm with expertise in antitrust, commodities, securities, and other

consumer matters.   KM has achieved and is pursuing landmark results in the fields of antitrust,

commodities fraud, securities fraud, corporate governance, consumer, and health care,

representing our clients in both class actions and individual litigation.   KM has recovered billions

of dollars for its clients.

In this matter, KM represents a municipal water district that purchased DIPF for its own

use indirectly from the defendants.   Over the last two decades, KM has had considerable success

representing both governments and classes of indirect purchasers harmed by antitrust violations

and other market manipulations.

KM is well equipped with resources and expertise to handle large scale litigation on

behalf of classes and governments and will invest the resources needed to succeed in these sorts

of actions.   A case in point is *In re Pharmaceutical Industry Average Wholesale Price Litigation*,

MDL No. 1456: *The City of New York, et al. v. Abbott Laboratories, et al.*, Case No. 01-12257-

PBS (D. Mass).   In that matter, KM has been litigating against 40 defendant drug manufacturers

as counsel to the State of Iowa, the City of New York, and 42 New York County governments in

individual Medicaid fraud cases asserting that the defendant pharmaceutical companies

manipulated their average wholesale price data to inflate prices charged to government payers.

Since 2003, this case has involved immense discovery and expert burdens.   KM has recovered

over $225 million for the New York and Iowa Medicaid programs.   In the process, KM obtained

partial summary judgment against thirteen companies for false reporting practices, successfully

defended more than 20 motions to dismiss, and resolved claims against all but eight defendants.

David Kovel, a leader in KM's antitrust practice and heading the firm's commitment in this antitrust matter, has significant experience representing indirect purchasers in antitrust matters. Prior to receiving his JD/MBA for Columbia University, Mr. Kovel was a commodities trader for a large financial firm. As a commodities trader, Mr. Kovel took financial risk in futures and options markets and traded physical markets in US, Europe, Asia and Latin America and became a specialist in understanding market dynamics, especially in pricing matters.

Mr. Kovel has been appointed interim co-lead counsel in the antitrust action *In Re: Libor-Based Financial Instruments Antitrust Litigation,* 1:11-md-02262-NRB; *FTC Capital GMBH et al. v. Credit Suisse Group AG et al.,* 1:11-cv-02613-NRB (S.D.N.Y. 2011) (Buchwald, J.), a case alleging the fixing of prices of a benchmark interest rate. Mr. Kovel was also a co-lead counsel on behalf of indirect purchasers in *In re BP Propane Indirect Purchaser Antitrust Litigation,* 06-CV-3541 (N.D.Ill. 2010) which resulted in a $15 million settlement on behalf of propane purchasers.

Mr. Kovel also participated as a lead counsel to classes of indirect purchasers in connection with antitrust proceedings against Microsoft in *Charles Cox and Old Factories, Inc. v. Microsoft Corporation,* Index No. 105193/00, Part 3 (N.Y. Sup. Ct.); *Gordon, et al. v. Microsoft Corp.,* No. MC 00-5994 (Minn. Dist. Ct. Hennepin County). These litigations resulted in settlements totaling nearly a billion dollars for consumers in the States of New York, Florida, Tennessee, West Virginia, and Minnesota (where the litigation proceeded to trial). The specific cases cited here, conducted on behalf New York and Minnesota consumers, resulted in recoveries of approximately $350 million and $175 million, respectively.

Additionally, Mr. Kovel and KM acted as lead counsel in *In re Reformulated Gasoline (RFG) Antitrust and Patent Litigation and Related Actions*, 05-cv-01671 (C.D. Cal), an antitrust

class action pertaining to Unocal's alleged manipulation of the standard-setting process for low-emissions reformulated gasoline in California, which plaintiffs claim caused inflated retail prices. This litigation resulted in a $48 million settlement for indirect purchasers. KM also acted as one of the firms with primary responsibility for *In re Visa Check/Mastermoney Antitrust Litigation*, 96-cv-05238 (E.D.N.Y.), a case on behalf of a class of retailers in connection with Visa MasterCard policies pertaining to debit card fees. The litigation resulted in a settlement of over $3 billion for the class and landmark injunctive relief.

KM has been involved in some of the most cutting edge areas of market manipulation cases, including a seminal case involving Sumitomo Corporation's manipulation of the copper market. Of late, KM represented market makers and hedge funds in commodities manipulation cases involving silver, propane and fixed income products. KM's experience in market manipulation and price fixing for both indirect and direct purchasers, in cases brought under the Sherman Act and state law analogs, spans the markets for gasoline, propane, cement, concrete, steel, potash, silver and even fixed income products.

Many of KM's other attorneys are also exceptionally well versed in antitrust litigation. Prior to joining KM, Alice McInerney was Chief of the Investor Protection Bureau and Deputy Chief of the Antitrust Bureau of the New York Attorney General's office. Partners Joanne Cicala, Daniel Hume, Roger Kirby and Randy Berger, who may also be involved in this case, also have deep experience in antitrust actions.

Some notable KM antitrust work includes:

    • *In re Visa Check/MasterMoney Antitrust Litigation* 96-CV-5238 (S.D.N.Y.) (over $3 billion settlement in direct purchaser debit card fee case – KM was class counsel with second largest lodestar in the case);

• *Microsoft antitrust cases*: KM acted as a lead counsel to classes of indirect purchasers in connection with antitrust proceedings against Microsoft. The litigations resulted in settlement totaling nearly a billion dollars for consumers in the states of New York, Florida, Tennessee, West Virginia, and Minnesota (where the litigation proceeded to trial);

• *In re Reformulated Gasoline (RFG) Antitrust and Patent Litigation and Related Actions,* 05-cv-01671 (C.D. Cal, 2005) ($48 million settlement on behalf of indirect gasoline purchasers);

• *In re BP Propane Indirect Purchaser Antitrust Litigation,* 06-CV-3541 (N.D.Ill. 2010) ($15 million settlement on behalf of indirect propane purchasers);

• *In re Potash Antitrust Litigation,* 1:08-cv-06910 (N.D.Ill. 2008) (indirect purchaser price fixing case – pending on appeal);

• *In re Commodity Exchange, Inc., Silver Futures and Options Trading Litigation,* 1:11-md-02213-RPP (S.D.N.Y. 2011) (market manipulation case pending);

• *Supreme Auto Transport LLC v. Arcelor Mittal et al,* 1:08-cv-05468 (N.D. Ill. 2008) (indirect purchaser price fixing case pending); and

• *In re Sumitomo Copper Litigation*, (S.D.N.Y. 1999) (counsel in matter involving settlement of over $140 million in market manipulation case).

### 3.    Trujillo Rodriguez & Richards LLC

Under the proposed leadership structure, Trujillo, Rodriguez & Richards, LLC ("TRR") will serve as Liaison Counsel. A copy of the firm's website is attached hereto as Exhibit E. Lisa J. Rodriguez and her firm are a valuable part of the leadership team, as they have extensive experience litigating class cases in New Jersey Federal Courts. Most recently, Ms. Rodriguez litigated as co-counsel in a six-week jury trial before the Honorable Joseph Irenas, in which she

obtained a liability verdict for a class of former TWA Pilots who sued their union for breach of its duty of fair representation in connection with labor negotiations with the acquiring airline. She was also liaison counsel in a recently settled matter before the Honorable Stanley H. Chesler in *In re Merck/Vioxx ERISA Litig.*, No. 05-cv-1151(D.N.J.) (Final Approval Order dated November 29, 2011 (SHC)).   In the antitrust area, Ms. Rodriguez has served as liaison counsel in a number of actions, including *In re Mercedes Benz Antitrust Litig.*, No. 99-cv-4311 (D.N.J.); *In re Electrical Carbon Antitrust Litigation*, No. 03-cv-2182 (D.N.J.) and *In re Bulk Graphite Products Antitrust Litig.*, No. 02-cv-6030 (D.N.J.).

Ira N. Richards, also a member of TRR, has played a prominent role in antitrust cases. For example, Mr. Richards served as co-lead counsel for plaintiffs in a number of actions, including:  *In re Pillar Point Partners Patent and Antitrust Litig.*, MDL No. 1202 (D. Ariz) (resulting in a \$50 million settlement on behalf of a class of direct purchasers); *In re Pressure Sensitive Labelstock Antitrust Litig.*, MDL NO. 1556 (M.D. Pa.) (resulting in settlements totaling over \$46 million for the class); and *In re Airline Ticket Commission Antitrust Litig.*, 898 F.Supp. 685 (D. Minn. 1995) (\$86 million settlement for travel agents).  Mr. Richards has been involved in numerous other antitrust cases in a variety of capacities.  For instance, Mr. Richards serves as a team leader for plaintiffs in *In re Urethane Antitrust Litig.*, ("Polyether Polyols") (D. Kan.), was a member of the deposition team in *In re Linerboard Antitrust Litig.*, MDL No. 1261 (E.D. Pa.), and was counsel for the City of Philadelphia in *In re Hydrogen Peroxide Antitrust Litig.*, No. 05-666 (E.D. Pa.).

**B.     The Work Done By Counsel In Identifying and Investigating Claims in the Action**

Defendants' conspiracy was first revealed to the public in January 2012, when the Federal Trade Commission filed complaints against (i) Defendants McWane, Inc. and Star Pipe Products,

Ltd. and (ii) Defendant Sigma Corporation.   In a short period of time, proposed interim co-lead and liaison counsel:

- Mounted an investigation into the DIPF industry, including:
    - interviews with clients, industry personnel, and other purchasers of DIPF;
    - review of governmental purchases and contracts;
    - analysis of DIPF pricing at the indirect purchaser level;
    - analysis of distribution market for DIPF products;
- Retained an economic consultant to explore the effect of the DIPF conspiracy;
- Compiled corporate histories of Defendants and their subsidiaries;
- Compiled all available FTC documents regarding Defendants;
- Investigated existence of prior criminal activity by Defendants and their subsidiaries;
- Investigated 1995 Canadian government prosecution of Defendant McWane for conspiracy to eliminate competition;
- Investigated 2002 Canadian government prosecution of a subsidiary of Defendant McWane for attempted monopolization;
- Performed legal analysis of the interplay between FTC Act and Sherman Act, Sections 1 and 2; and,
- Advanced the litigation by coordinating the various clients and proposing a leadership structure to benefit the putative class.

### C.     Proposed Interim Co-Lead and Liaison Counsel Can Devote Substantial Resources to the Prosecution of this Action

Proposed interim co-lead and liaison counsel are familiar with the substantial resources necessary to litigate a case of this magnitude – it is the nature of their respective practices.  For

example, working with just one other co-lead firm, WKA recently prosecuted an action against

BP America, Inc. and related BP entities in the Northern District of Illinois wherein a settlement

of $52 million was obtained on behalf of direct purchasers of propane and propane futures. BP

was alleged to have cornered the propane market in early 2004 in that litigation. Kirby

McInerney was recently appointed co-lead counsel with just one other firm to manage the

LIBOR exchange-based cases pending in the S.D.N.Y. The LIBOR action alleges that at least 13

banks colluded to misreport and manipulate LIBOR rates, thereby harming investors in futures,

swaps, and other LIBOR-based derivative products between January 2006 and June 2009.

These firms have achieved excellent results in the past and are committed to providing

the resources required to prosecute this litigation through all phases, including rigorous motion

practice, discovery, class certification, summary judgment, and trial. Proposed co-lead and

liaison counsel have the experience and the resources to deal with large volumes of documents

and the substantial amount of discovery, motion practice, and trial work that will be required in

this action, and will do so in an efficient, coordinated manner.

For the foregoing reasons, Plaintiff respectfully requests that this Court appoint Steven A.

Asher of Weinstein Kitchenoff & Asher LLC and David Kovel of Kirby McInerney LLP, as

interim co-lead counsel, and Lisa J. Rodriguez of Trujillo Rodriguez & Richards LLC, as interim

liaison counsel, pursuant to Rule 23(g)(3).

## IV.   CONCLUSION

For the foregoing reasons, the indirect purchaser actions filed in this District should be

consolidated; Steven A. Asher, Esquire of Weinstein Kitchenoff & Asher LLC and David Kovel

of Kirby McInerney LLP should be appointed as interim co-lead counsel; and Lisa J. Rodriguez

of Trujillo Rodriguez & Richards LLC, should be appointed as interim liaison counsel. An

16

appropriate order follows.

Date: February 9, 2012

David Kovel, Esquire
Daniel Hume, Esquire
David Bishop, Esquire
KIRBY MCINERNEY LLP
825 Third Avenue, 16th Floor
New York, NY 10022
Telephone (212) 317-2300
Fax (212) 751-2540
dkovel@kmllp.com
dhume@kmllp.com
dbishop@kmllp.com

*Counsel for Plaintiff, South Huntington
Water District*

Respectfully submitted,

 s/ Lisa J. Rodriguez .
Lisa J. Rodriguez, Esquire
TRUJILLO RODRIGUEZ & RICHARDS, LLC
258 Kings Highway East
Haddonfield, NJ  08033
Telephone (856) 795-9002
Fax (865) 795-9877
Email: lisa@trrlaw.com

*Counsel for Plaintiffs, Yates Construction Co.,
Inc. and South Huntington Water District*

Steven A. Asher, Esquire
Mindee J. Reuben, Esquire
Jeremy S. Spiegel, Esquire
WEINSTEIN KITCHENOFF & ASHER LLC
1845 Walnut Street, Suite 1100
Philadelphia, PA  19103
Telephone (215) 545-7200
Fax (215) 545-6535
Email:  asher@wka-law.com
          reuben@wka-law.com
          spiegel@wka-law.com

*Counsel for Plaintiff, Yates Construction Co.,
Inc.*

Robert C. Cone, Esquire
TUGGLE DUGGINS & MESCHAN, P.A.
100 North Greene Street
Greensboro, NC  27401
Telephone (336) 271-5230
Fax (336)274-6590
Email:  RCone@tuggleduggins.com

*Counsel for Plaintiff Yates Construction Co.,
Inc.*

17