# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| YATES CONSTRUCTION CO., INC., on behalf of itself and all others similarly situated,<br><br>    Plaintiff,<br>  v.<br>SIGMA CORPORATION, MCWANE INC. and STAR PIPE PRODUCTS, LTD.,<br><br>    Defendants. | No. 3:12-cv-00169-AET-LHG |
| SOUTH HUNTINGTON WATER DISTRICT, on behalf of itself and all others similarly situated,<br><br>    Plaintiff;<br>  v.<br>SIGMA CORPORATION, MC WANE INC. and STAR PIPE PRODUCTS, LTD.,<br><br>    Defendants. | No. 3:12-cv-00734-FLW-DEA |
| WATERLINE INDUSTRIES CORPORATION and WATERLINE SERVICES, LLC, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br>  v.<br><br>SIGMA CORPORATION, MCWANE, INC. and STAR PIPE PRODUCTS, LTD.,<br><br>    Defendants. | No. 3:12-cv-01022-AET-TJB |

| | |
|---|---|
| CITY OF DESOTO, on behalf of itself and all others similarly situated<br><br><br>            Plaintiff,<br>     v.<br><br>SIGMA CORPORATION, MCWANE, INC. and STAR PIPE PRODUCTS, LTD.,<br><br>            Defendants. | No. 3:12-cv-01182-AET-LHG |

**WATERLINE  INDUSTRIES CORPORATION AND WATERLINE SERVICES, LLC'S MEMORANDUM OF LAW IN OPPOSITION TO YATES CONSTRUCTION CO., INC. AND SOUTH HUNTINGTON WATER DISTRICT'S MOTION: 1) TO CONSOLIDATE PURSUANT TO FED. R. CIV. P. 42; AND (2) FOR APPOINTMENT OF INTERIM CO-LEAD COUNSEL FOR INDIRECT PURCHASER PLAINTIFFS**
**AND**
**IN SUPPORT OF WATERLINE  INDUSTRIES CORPORATION AND WATERLINE SERVICES, LLC'S REQUEST TO CONSOLIDATE OR COORDINATE THE INDIRECT PURCHASER ACTIONS AND TO APPOINT KOHN, SWIFT & GRAF, P.C. AS INTERIM LEAD COUNSEL FOR THE RESELLER INDIRECT PLAINTIFFS**

# TABLE OF CONTENTS

SUMMARY OF ARGUMENT ..................................................................2

BACKGROUND ................................................................................3

ARGUMENT ....................................................................................5

    **A.**    **THE COURT SHOULD CONSOLIDATE OR COORDINATE THE INDIRECT PURCHASER CASES.**.........................................5

    **B.**    **THE COURT SHOULD APPOINT KOHN SWIFT AS INTERIM LEAD COUNSEL FOR THE RESELLER INDIRECT PURCHASERS.**........................................................5

        **1.**    **Legal Standard For Appointing Interim Lead Counsel.**.......5

        **2.**    **Standards for Appointing Interim Lead Counsel.**...............11

        **3.**    **Kohn Swift Has Significant Experience and Expertise in Handling Class Actions, Complex Litigation, and the Types of Claims Asserted Here.**........................................13

CONCLUSION ...............................................................................16

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591 (1997) ....................................................................7

*In re Ins. Brokerage Antitrust Litig.*
   579 F. 3d 241 (3rd Cir. 2009) ..................................................7

*In re Chocolate Confectionary Antitrust Litig.*,
   MDL No. 1935 (M.D. Pa.) ..........................................................11

*DIK Drug Co. v. Altana Pharma AG*,
   2008 WL 2264586, (D.N.J. 2008) ................................................9

*Hill v. The Tribune Co.*,
   2005 WL 3299144 (N.D. Ill. Oct. 13, 2005) ..............................11

*Illinois Brick Co. v. Illinois*,
   431 U.S. 720 (1977)......................................................................1

*Ingerman v. Internal Revenue Service*,
   1990 WL 10029523 (D.N.J. July 16, 1990) .................................7

*In re Air Cargo Shipping Services Antitrust Litig.*,
   240 F.R.D. 56 (E.D.N.Y. 2006) ..................................................11

*In re Delphi ERISA Litig.*,
   230 F.R.D. 496 (E.D. Mich. 2005) ..............................................12

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   MDL No. 2262, Case No. 11-2262 (Oct. 18, 2011 S.D.N.Y.) ............9

*In re OSB Antitmst Litig.*,
   2007 WL 2253425 (E.D. Pa. 2007) ..............................................9

*In re Packaged Ice Antitrust Litig.*,
   Case No. 08-MD-01952 and MDL No. 1942 (E.D. Mich.) ................13

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    2006 WL 2038650 (E.D.N.Y. Feb. 24, 2006) .......................................................6

*Valley Drug Co. v. Geneva Pharm., Inc.*,
    350 F.3d 1181 (11th Cit. 2003) ...........................................................................9

**RULES**

Fed. R. Civ. P. 23(g) .............................................................................................1

Fed. R. Civ. P. 23(g)(1)(A) ..................................................................................12

Fed. R. Civ. P.23(g)(1)(B) ...................................................................................12

Federal Rule of Civil Procedure 23(g)(3) ..............................................................5

**OTHER AUTHORITIES**

Chapter II, *Managing Class Action Litigation: A Pocket Guide for Judges* .............2

Manual for Complex Litigation (Fourth) (2007) § 10.22 .........................................6

## STATEMENT OF ISSUES PRESENTED

1.      Whether the Court should consolidate or coordinate all the indirect purchaser ductile iron pipe fittings ("DIPF") cases.

2.      Whether the conflict between indirect purchasers who are not end users of DIPF ("Reseller Indirect Purchasers") and other indirect purchasers warrants appointing separate lead counsel for such purchasers.

3.      Whether, based on the work performed in identifying and filing the claims in this action; its years of experience in handling antitrust class actions, including indirect purchaser cases, and other complex litigation; its knowledge of antitrust, consumer protection and  class action law and procedure; and the resources the firm will commit to representing the Reseller Indirect Purchasers, Kohn Swift & Graf, P.C. ("Kohn Swift") should be appointed by the Court as Interim Lead Counsel for the Reseller Indirect Purchasers.

Plaintiffs Waterline Industries Corporation and Waterline Services, LLC (collectively, "Waterline") respectfully request that the Court: (1) consolidate or coordinate the four indirect purchaser ductile iron pipe fittings ('DIPF') cases[1] currently pending before the Court, and any future indirect purchaser case that alleges the same or substantially similar claims that is filed in or transferred to this Court; (2) because of a conflict between the Reseller Indirect Purchasers and other indirect purchasers with respect to proving injury and damages, deny the motion of Yates Construction Co., Inc. ("Yates") and South Huntington Water District ("SHWD") to be appointed interim co-lead counsel for all indirect purchasers; and (3) appoint Kohn, Swift & Graf, P.C. ("Kohn Swift") as Interim Lead Counsel for the Reseller Indirect Purchasers pursuant to Fed. R. Civ. P. 23(g) and the Court's inherent power to manage cases before it.

---

[1] Currently three "direct purchaser" and  four "indirect purchaser" antitrust cases have been filed.  The direct purchaser cases are brought by plaintiff/purchasers who purchased DIPF directly from Defendants, and therefore have the only damages claims under the Federal Sherman and Clayton Acts.  *See Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).  The "indirect" cases are brought by plaintiff/purchasers who are customers of direct purchasers from the Defendants, or another indirect purchaser. Their  damages claims arise under various state laws that permit such indirect claims for damages.  To prevent any conflict between these groups, courts have traditionally appointed separate lead counsel for the direct and indirect cases.  Here, as discussed above, there can also be conflicts between indirect purchasers.   Because the alleged violations arise from the same core of operative facts, however, both direct and indirect cases can and should be coordinated.

89121_289085

Appointing Kohn Swift Interim Lead Counsel for the Reseller Indirect Purchasers will avoid any conflict and greatly facilitate the efficient prosecution of the cases and enable Kohn Swift to assist this Court in case management efforts. Kohn Swift possesses the requisite qualifications to be appointed Interim Lead Counsel for the Reseller Indirect Purchasers. The requested consolidation (or coordination) and leadership appointment would foster the early organization and case management efficiencies that are strongly encouraged by the Federal Judicial Center,[2] the *Manual for Complex Litigation*,[3] and federal courts across the country. While private ordering is strongly encouraged, our attempts to do so here were unsuccessful.  Therefore, the Court must select Interim Lead Counsel from among the applicants.

## SUMMARY OF ARGUMENT

First, the indirect purchaser actions "involve a common question of law or fact" and consolidation or coordination will allow these cases to be litigated in a more efficient manner.  Therefore, consolidation or coordination is appropriate here.

Second, because there are conflicts between the different indirect purchasers regarding injury and damages that can be avoided by appointing Kohn Swift as

---

[2] Chapter II, *Managing Class Action Litigation: A Pocket Guide for Judges*, Third Edition (2010).

[3] *Manual for Complex Litigation* (Fourth) (2007).

2

Interim Lead Counsel for the Reseller Indirect Purchasers, the Court should deny the Yates and SHWD motion to have their counsel appointed interim lead counsel for all indirect purchasers.

Third, Kohn Swift respectfully submits that it should be appointed Interim Lead Counsel for the Reseller Indirect Purchasers because:

- Kohn Swift is a nationally recognized firm with extensive experience both prosecuting and defending antitrust and class action matters through trial and appeals;

- Kohn Swift and its co-counsel have been retained by Waterline and have investigated and brought claims against Defendants for antitrust violations, and it has the resources to commit to the case going forward.

## BACKGROUND

This case arises out of an unlawful conspiracy among Defendants and their co-conspirators that had the purpose and effect of raising and fixing prices for DIPF throughout the United States. DIPF are a component of pipeline systems that transport drinking water and waste water under pressurized conditions in municipal distribution systems and treatment plants. Waterline is an indirect purchaser of DIPF from one or more of the Defendants during the relevant time period. Waterline seeks both monetary damages under state law and injunctive relief in its Complaint.

3

The conspiracy began at least as early as January 11, 2008.  It continued among all Defendants until early 2009, and continued between Defendants McWane, Inc. and Sigma Corp. thereafter.  From January 2008 until early 2009, Defendants conspired to fix the prices of  DIPF sold in the United States. McWane and Sigma then conspired to eliminate competition and restrict capacity for DIPF produced in the United States through adoption and enforcement of exclusive dealing policies.  As a result, Waterline and others paid more during the class period for DIPF than they otherwise would have paid in a competitive market, and have therefore been injured in their businesses and property.

Defendants' conspiracy was revealed on January 4, 2012, when the United States Federal Trade Commission ("FTC"), brought an action against the Defendants concerning their anticompetitive conduct.  The FTC action describes Defendants' illegal conduct.

On February 17, 2012, Waterline filed a class action pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26 for injunctive relief, and to recover damages under state antitrust and unfair competition laws, and common law principles of unjust enrichment, as a result of the Defendants' conspiracy to fix, raise, maintain and stabilize the prices of DIPF.  Three other indirect actions have been filed against Defendants to date, they are: *South*

4

*Huntington Water District v. Sigma Corp., et al.*, 12-cv-00734-FLW-DEA (D.N.J.), filed on February 7, 2012; *Yates Construction Co., Inc. v. Sigma Corp., et al.*, 12-cv-00169-AET-LHG (D.N.J.), filed on January 10, 2012; and *City of Desoto v. Sigma Corporation et al.*, 12-cv-01182-AET-LHG (D.N.J.), filed on February 28, 2012.  On February 9, 2012, counsel for SHWD and Yates filed a motion to consolidate their two cases and to appoint interim co-lead counsel for all indirect purchasers.

## ARGUMENT

### A.   THE COURT SHOULD CONSOLIDATE OR COORDINATE THE INDIRECT PURCHASER CASES.

Given the substantial similarity of the parties and claims in the indirect purchaser actions, Waterline agrees that they should be consolidated or coordinated.  However, separate lead counsel should be appointed for the Reseller Indirect Purchasers.

### B.   THE COURT SHOULD APPOINT KOHN SWIFT AS INTERIM LEAD COUNSEL FOR THE RESELLER INDIRECT PURCHASERS.

#### 1.   Legal Standard For Appointing Interim Lead Counsel.

The Federal Rules of Civil Procedure and the *Manual* recognize the importance of an early appointment of counsel to act on behalf of a class.  Federal Rule of Civil Procedure 23(g)(3) provides that "[t]he court may designate interim counsel to act on behalf of the putative class before determining whether to certify

5

the action as a class action."  Similarly, the *Manual* recommends that early in complex litigation the court select and authorize attorneys to act on behalf of other counsel and their clients.  Counsel so designated "assume a responsibility to the court and an obligation to act fairly, efficiently, and economically in the interests of all parties and parties' counsel."  *Manual* § 10.22.

In *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2006 WL 2038650, at *2 (E.D.N.Y. Feb. 24, 2006), the court observed that "[t]he appointment of lead counsel is recognized as a useful and helpful way to avoid duplication of effort and a means to streamline what could otherwise be inefficient and unruly proceedings." The court also noted that "the *Manual*…counsels that in making such an appointment, [the court] should consider such factors as the qualification and competence of counsel, *the ability of counsel to fairly represent diverse interests*, and the 'attorneys ability to command the respect of their colleagues and work cooperatively with opposing counsel and court.'" *Id.* (Emphasis added).

Waterline agrees that appointing interim lead counsel for the indirect purchasers makes sense at this time.  The initial organization of counsel and the institution of case management procedures pave the way for a more efficient proceeding, and appointing lead counsel is critical to successful case management. If Kohn Swift is appointed, it will be able to, *inter alia*, protect the interests of the

Reseller Indirect Purchasers, and otherwise move the case along in an orderly fashion.

Fed.R.Civ.P. 23(a)(4) requires a class representative to be able to fairly and adequately represent the members of the class. This provision has been construed as requiring a class representative to be free of serious conflicts of interest with other class members.  See *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625, (1997); *Ingerman v. Internal Revenue Service*, 1990 WL 10029523, at *1 (D.N.J. July 16, 1990).  The *Amchem* court explained that class representatives "must be part of the class and possess the same interest and suffer the same injury as the class members."  *Id*. at 625-26 (citation and internal quotation marks omitted). The Third Circuit has noted that "[w]here a class is found to include subclasses divergent in interest" then subclasses are warranted.  *In re Ins. Brokerage Antitrust Litig*. 579 F. 3d 241, 271 (3rd Cir. 2009) (quoting Fed R. Civ. P. 23(c) Advisory Committee's Note).

As noted above, the *Manual* counsels that interim lead counsel selected by the Court must be able to fairly represent diverse interests.  This observation is consistent with the Supreme Court's decision in *Amchem*.  Therefore, it is important to appoint counsel to represent the Reseller Indirect Purchasers as a separate group, as conflicts exist between the interests of the Reseller Indirect Purchasers and other indirect purchasers.  The principal conflict revolves around

the extent to which the illegal overcharge was passed on from one purchaser to another, and whether the pass-on defense is applicable.  While Defendants cannot raise a pass-on defense against a direct purchaser in an antitrust case, it becomes an issue when there are indirect purchasers who also are claiming overcharge injury and damages.  To prevent any conflict between direct and indirect purchasers, courts have traditionally appointed separate lead counsel for the direct and indirect cases.  The same concern warrants appointment of a separate lead counsel for the Reseller Indirect Purchasers here.

SHWD's Complaint illustrates the conflict. In ¶19 it states that independent wholesale distributors (called "Waterworks Distributors") are the primary channel for DIPF to end users.  These Waterworks Distributors distribute products for water infrastructure projects.  *Id*.  According to SHWD, direct sales of DIPF to end users "or to the utility contractors that often serve as the agent of the end user in purchasing and installing DIPF, are uncommon." *Id*. ¶20.  DIPF suppliers and end-users prefer to work through Waterworks Distributors. *Id*.  Paragraph 40 of SHWD's Complaint states that "[t]racing can help show that changes in the prices made by direct purchasers of DIPF affect prices paid by indirect-purchasers of DIPF." In ¶41, SHWD states that inflated DIPF prices have "been passed on to Plaintiffs and the other Class members by Defendants and waterworks distributors", and in ¶42 SHWD alleges that SHWD was injured by having paid

8

higher prices for DIPF than it would have paid in the absence of Defendants' unlawful conduct.  If so, that means that, unless SHWD bought DIPF directly from a Waterworks Distributor, it was injured and damaged only if all or part of the overcharge to the Waterworks Distributors was passed on to it.

Conflicts exist among purchasers who are not similarly situated regarding damage calculation, and the application of the pass-on defense. *See In re OSB Antitrust Litig.*, 2007 WL 2253425, at *5 (E.D. Pa. 2007) (re-seller cannot adequately represent consumers because it cannot be deemed to credibly address the pass-through issue on behalf of consumers); *DIK Drug Co. v. Altana Pharma AG*, 2008 WL 2264586, at *2 (D.N.J. 2008) (recognizing conflicts between classes of direct and indirect purchasers who seek different types of damages); *cf. Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1195, (11th Cir. 2003) ("the claims of these disparate groups cannot be mixed together under Rule 23(a) where the economic reality of the situation leads some class members to have economic interests that are significantly different from and potentially antagonistic to the named representatives purporting to represent them.").

Where there are class members who have conflicts with one another, courts appoint separate lead counsel for the respective groups.  For example, in *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, MDL No. 2262, Case No. 11-2262

9

(Oct. 18, 2011 S.D.N.Y.),[4] a group of law firms, including Kirby McInerney,

counsel for SHWD, sought to be appointed lead counsel for two different groups of

plaintiffs.  Since there were distinct categories of plaintiffs, and the firms

acknowledged a potential conflict in representing both, the court did not allow one

group of attorneys to represent all the proposed class members.  (Exhibit A, Doc.

No. 32, Memorandum and Order, at 2-3). The court explained the reason for its

decision as follows:

> We have concluded that separate putative classes should be
> maintained for those plaintiffs who engaged in over-the-counter
> transactions and those plaintiffs who purchased financial instruments
> on an exchange. These two classes may be differently positional at
> various stages of the litigation, creating a potential conflict in their
> joint representation. For example, the issue of antitrust standing could
> be raised with respect to the exchange-based plaintiffs, who
> admittedly did not purchase products directly from any of the
> defendants.

*In re LIBOR*, Memorandum and Order, at 5.

In *LIBOR*, the court found that there was a conflict of interest between "over

the counter plaintiffs" and the "exchange-based plaintiffs," and due to that conflict

separate leadership was needed for each group.  *Id.* at 6 ("A far more

commonsense approach is to divide plaintiffs with two putative classes and appoint

interim lead counsel for each class.").  Conflicts also exist here between the

---

[4] The Memorandum and Order is attached as Exhibit A.

10

Reseller Indirect Purchasers and other indirect purchasers, like SHWD, regarding pass-on, injury and damages.

Also to illustrate how conflicts can be avoided, in *In re Chocolate Confectionary Antitrust Litig.*, MDL No. 1935 (Civil Action No. 1:08-MDL-1935 (M.D. Pa.), there are separate groups of indirect purchasers, indirect purchasers for resale and indirect end users. Each group has filed a separate complaint and is being represented by separate counsel.

### 2.     Standards for Appointing Interim Lead Counsel.

Although neither Rule 23(g) nor the Advisory Committee Notes explicitly define the standards for appointing interim class counsel, courts have held that the same standards apply as when selecting class counsel at the class certification stage. *See, e.g., In re Air Cargo Shipping Services Antitrust Litig.*, 240 F.R.D. 56, 57 (E.D.N.Y. 2006); *Hill v. The Tribune Co.*, 2005 WL 3299144, at *3 (N.D. Ill. Oct. 13, 2005) ("Rule 23(g) provides criteria to consider when appointing class counsel. No distinction is made regarding appointing interim counsel."). The Court should, therefore, consider the following factors in appointing interim class counsel:

> 1) the work that counsel has performed in identifying or investigating potential claims in the action; 2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; 3) counsel's knowledge of the applicable law; and 4) the

11

> resources that counsel will commit to representing the
> class.

*In re Delphi ERISA Litig.*, 230 F.R.D. 496, 498 (E.D. Mich. 2005) (quoting Fed. R.

Civ. P. 23(g)(1)(A)). The "Court may also consider other matters pertinent to

counsel's ability to fairly and adequately represent the interests of the class." *Id.*

(*citing* Fed. R. Civ. P.23(g)(1)(B)).  Counsel selected must be adequate based on

the court's evaluation of the factors set forth above, and must be able to "fairly and

adequately represent the interests of the class."  Fed.R.Civ.P. 23(g)(4).  When there

is more than one adequate applicant for appointment as class counsel, the court

must "appoint the applicant best able to represent the interests of the class."

Fed.R.Civ.P. 23(g)(2).

SHWD and Yates filed their lead counsel motion on February 9th.  Counsel

for Waterline communicated with them in an effort to agree on a leadership

structure that could be presented to the Court.  These efforts were unsuccessful.

Therefore, the indirect purchasers are unable to present a comprehensive Rule

23(g) leadership application to the Court that addresses the conflicts described

above, necessitating Kohn Swift's request that it be appointed Interim Lead

Counsel for the Reseller Indirect Purchasers.

89121_289085

### 3.   Kohn Swift Has Significant Experience and Expertise in Handling Class Actions, Complex Litigation, and the Types of Claims Asserted Here.

Kohn Swift has investigated the claims at issue in these cases and filed a DIPF case.  Kohn Swift will be able to bring its experience with antitrust and class action cases, including representing indirect purchasers, and the issues involved in such litigation, to bear in this case.  As a result, Kohn Swift represents the best choice to be appointed the Reseller Indirect Purchasers Lead Counsel in order to protect this group of indirect purchasers' interests.[5]

Kohn Swift has prosecuted complex antitrust and other cases as lead counsel in an efficient and cost effective manner for over 40 years.  The firm is listed as a top antitrust firm by *Chambers USA,* and its lawyers are recognized in the *Best Lawyers in America* and "Super Lawyers" publications.  Kohn Swift has been appointed as lead counsel by courts throughout the country in dozens of antitrust class actions and has a long history of successfully representing the interests of the classes it has been appointed to represent.  Recently, Kohn Swift was appointed the sole lead counsel by Judge Borman in *In re Packaged Ice Antitrust Litig.*, Case No. 08-MD-01952 and MDL No. 1942 (E.D. Mich.) (settlements of $26 million reached with two defendants).  In his Opinion and Order entered December 13, 2011 at 30, approving one of the settlements and awarding attorneys' fees in

---

[5] Kohn Swift's Firm Resume is attached as Exhibit B.

*Packaged Ice*, Judge Borman commended Kohn Swift for "[t]he excellent work that the Court feels Lead Counsel have performed in this case and the good result they have achieved for the class members."

The firm has also served as Lead or Co-Lead counsel in the following antitrust class actions, among others: *In re Fasteners Antitrust Litig.*, MDL No. 1912 (E.D. Pa.); *In re Automotive Refinishing Paint Antitrust Litig.,* MDL No. 1426 (E.D. Pa.) (settlements totaling $105.75 million); *In re Plastics Additives Antitrust Litig.*, MDL No. 1684 (E.D. Pa.) (settlements of $46 million)); *In re Residential Doors Antitrust Litig.*, MDL 1039 (E.D. Pa.) ($18 million in settlements); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, MDL No. 1361 (D. Me.) (settlements totaling $143 million approved); *Cumberland Farms, Inc. v. Browning-Ferris Industries, Inc.*, 120 F.R.D. 642 (E.D. Pa. 1988) (settled shortly before trial for $50 million); *In re Stock Exchanges Options Antitrust Litig.*, MDL No. 1283(S.D.N.Y.) (settlements reached of $44 million); *In re Pillar Point Partners Antitrust Litig.*, MDL No. 1202 (D. Arizona) (settlements of $50 million); *In re Amino Acid Lysine Antitrust Litig.,* 918 F.Supp. 1190 (N.D. Ill. 1996) (settlements in excess of $50 million); *In re Toys "R" Us, Inc., Antitrust Litig.*, MDL No. 1211 (E.D.N.Y.) ($55 million settlement value).

Importantly, Kohn Swift also has experience prosecuting indirect purchaser cases such as this case. Indirect purchaser cases present additional issues not

14

present in direct purchaser cases, and Kohn Swift's experience in these matters will be a significant asset to the Reseller Indirect Purchasers.  The firm has been involved in the following indirect purchaser antitrust class actions: *In re Metoprolol Succinate End-Payor Antitrust Litig.*, C.A. No. 06-071 (GMS) (D. Del.) (representing third party payor alleging that it was overcharged for a drug product); *Vista Healthplan, Inc., et al. v. Warner Chilcott Holdings Co., III Ltd., et al.*, C.A. No. 1:05-cv-02327-CKK (D.D.C.) (represented a third party payor alleging that it was overcharged for a drug product); *Sorbate Price Cases*, J.C.C.P. No. 4073 (Superior Court of the State of California, City and County of San Francisco) (action on behalf of indirect purchaser of sorbates).

Kohn Swift's work has earned significant praise from District Court Judges around the county.  In *In re Amino Acid Lysine Antitrust Litig.*, MDL No. 1083 (N.D. Ill.), and 918 F. Supp. 1190 (N.D. Ill. 1996), Judge Shadur, after scrutinizing Kohn Swift's credentials with care, stated that "[a]lthough a small firm by today's mega firm standards, it has amply demonstrated its ability to handle major litigation."  At the conclusion of the case Judge Shadur praised the firm's "extraordinarily professional handling" of the matter, which justified the selection of the firm *ab initio.*  Transcript of hearing, February 27, 1998, pp. 3 & 4.

In *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, MDL Docket No. 1361 (D. Me.), Judge Hornby at the conclusion of the case stated:

15

"Uniformly [counsel] did their homework and were prepared and effective

advocates.  Their performance confirmed my confidence in their abilities and

dedication to their client's cause."   *Id*., Decision and Order, June 13, 2003.  In

selecting the firm as lead counsel, Judge Hornby stated that "I have concluded that

the firm Kohn, Swift & Graf has the experience, skill, resources, and expertise best

able to move this matter forward, and I hereby designate that firm as lead counsel."

Order of January 26, 2001, p. 2.

In *In re Automotive Refinishing Paint Antitrust Litig.*, MDL No. 1426 (E.D.

Pa.), Judge Surrick stated:  "I want to commend counsel on both sides of this

litigation.  I think the representation on both sides of this litigation is as good as

I've ever seen in my entire professional career," transcript of hearing, August 9,

2007, pp. 18-19.

Kohn Swift is also working with two extremely capable firms, Preti Flaherty

from Portland, Maine, and Barrack, Rodos & Bacine from Newark, New Jersey

and Philadelphia, whose attorneys are available to assist in the litigation of the

case.  Both of these firms are fully capable of serving as lead counsel in their own

right, and have done so in numerous cases throughout the county.

## CONCLUSION

Consolidating or coordinating the indirect purchaser cases will streamline

this litigation and allow the cases to move forward efficiently.  In addition,

appointing Kohn Swift  as Interim Lead Counsel for the Reseller Indirect

Purchasers will ensure that this action will be directed by unconflicted, capable,

and experienced counsel with the demonstrated capacity to efficiently organize,

prosecute, and finance litigation such as this proceeding.   Therefore, Waterline

respectfully requests that the Court consolidate or coordinate the indirect purchaser

cases and appoint Kohn Swift as Lead Counsel for the Reseller Indirect Purchasers

of DIPF.

Dated: March 2, 2012                                  Respectfully submitted,


                                        /s/ Mark R. Rosen

                                        BARRACK, RODOS & BACINE
                                        Mark R. Rosen
                                        Jeffery B. Gittleman
                                        One Gateway Center, Suite 2600
                                        Newark, NJ 07102
                                        Phone: 973-297-1484
                                        Fax: 973-297-1485
                                        Email: mrosen@barrack.com

                                           - and –

                                        BARRACK, RODOS & BACINE
                                        3300 Two Commerce
                                        2001 Market Street
                                        Philadelphia, PA 19103
                                        Phone: 215-963-0600
                                        Fax: 215-963-0838

17

Joseph C. Kohn
William E. Hoese
Douglas A. Abrahams
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107
Telephone: (215) 238-1700
jkohn@kohnswift.com
whoese@kohnswift.com
dabrahams@kohnswift.com

Gregory P. Hansel
Randall B. Weill
Joshua R. Carver
Jonathan Mermin
PRETI, FLAHERTY, BELIVEAU
 & PACHIOS LLP
One City Center
P.O. Box 9546
Portland, ME 04112-9546
Telephone:  (207) 791-3000
ghansel@preti.com
rweill@preti.com
jcarver@preti.com
jmermin@preti.com

Christopher R. Nicolopoulos
PRETI, FLAHERTY, BELIVEAU
 & PACHIOS LLP
57 North Main Street
P.O. Box 1318
Concord, NH 03302-1318
Telephone: (603) 410-1500
cnicolopoulos@preti.com

Attorneys for Plaintiffs Waterline
Industries Corporation and Waterline
Services, LLC

18

89121_289085