NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re Ductile Iron Pipe Fittings ("DIPF") Indirect Purchaser Antitrust Litigation | Civ. No. 12-169<br><br>OPINION |

THOMPSON, U.S.D.J.

## I. INTRODUCTION

This matter has come before the Court upon two motions to dismiss. Defendant Star Pipe Products, Ltd. ("Star Pipe Products") filed a Motion to Dismiss Counts Three, Four, Five, Six, and Ten of the Amended Class Action Complaint of Indirect Plaintiffs. (Docket Entry No. 89). Defendants McWane, Inc. ("McWane") and Sigma Corporation ("Sigma") filed a Motion to Dismiss as well. (Docket Entry No. 90). Waterline Industries Corporation and Waterline Services, LLC, Yates Construction Co., Inc., City of Hallandale Beach, Wayne County, South Huntingdon Water District, City of Fargo, and City of Blair (collectively, "Indirect Purchaser Plaintiffs") oppose the motions. (Docket Entry No. 95). The Court has decided these matters upon consideration of the parties' written submissions and oral argument conducted on January 14, 2013. For the reasons given below, Defendants' motions to dismiss are granted.

II. BACKGROUND

This case concerns antitrust violations allegedly committed by manufacturers and distributors of ductile iron pipe fittings ("DIPF"). Indirect Purchaser Plaintiffs bring on behalf of themselves and all other similarly-situated indirect purchasers ten claims for relief. They seek damages and injunctive relief for alleged violations of Sections 1 and 2 of the Sherman Act, Section 3 of the Clayton Act, as well as numerous state antitrust, consumer protection, and unfair competition statutes. Indirect Purchaser Plaintiffs also seek relief for unjust enrichment. Defendants now seek to have the amended complaint ("Amended Complaint") dismissed under Rule 12(b)(6). For the purposes of the pending motion, the Court considers as true all of Indirect Purchaser Plaintiffs' well-pleaded factual allegations. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

A. *DIPF Industry*

DIPF are used to join pipes, valves, and hydrants in pipeline systems that transport waste and drinking water under pressurized conditions in municipal distribution systems and treatment plants. (Am. Compl., Docket Entry No. 85 at ¶ 29). Defendants import, market, and sell DIPF throughout the United States to independent wholesale distributors ("waterworks distributors") who then sell DIPF to end users. (*See id*. at ¶¶ 23-25, 30). Indirect Purchaser Plaintiffs allege that they indirectly purchased DIPF from Defendants in this manner and paid inflated prices for it as a result of a number of anticompetitive schemes perpetuated by Defendants. (*Id*. at ¶¶ 16-22). The allegedly anticompetitive schemes are briefly summarized below.

B. *Conspiracy to Fix DIPF Prices*

Indirect Purchaser Plaintiffs allege that Defendants "conspired to raise and stabilize the prices at which DIPF were sold in the United States from January 11, 2008 through January

2009." (*Id*. at ¶ 32). According to the Amended Complaint, Defendants reached an agreement to fix prices in which McWane traded its support for higher prices for Sigma and Star Pipe Products adopting certain business practices that would reduce the risk that they would sell DIPF at prices below the agreed upon, published prices. (*Id*. at ¶¶ 33, 34). In accordance with that agreement, on January 11, 2008, McWane announced an increase in DIPF prices that was followed by similar price increases by Sigma and Star Pipe Products. (*Id*. at ¶ 35).

In June 2008, McWane sought to implement another coordinated price increase. (*Id*. at ¶ 37). This time, however, McWane traded its support for higher prices for information from Sigma and Star Pipe Products about their monthly sales of DIPF. (*Id*. at ¶ 37). McWane communicated the terms of this plan to Sigma and Star Pipe Products through a public letter to waterworks distributors, and Sigma and Star Pipe Products signaled their acceptance of McWane's offer by participating in the Ductile Iron Fittings Research Association – an association that exchange information about DIPF sales volume. (*Id*. at ¶¶ 40, 41). According to Indirect Purchaser Plaintiffs, this exchange of information furthered the conspiracy by enabling each defendant to monitor the market share of its rivals to ensure that each defendant was adhering to the agreed upon prices. (*Id*. at ¶ 39). Following the agreement, Defendants raised DIPF prices on June 17, 2008, and Sigma and Star Pipe Products subsequently increased their own DIPF prices. (*Id*. at ¶ 42).

    C. *Conspiracy to Target the Domestic DIPF Market*

In February 2009, Congress enacted the American Recovery and Reinvestment Act ("ARRA"), which allocated more than $6 billion for water infrastructure projects and contained a "Buy American" provision that required all federally funded projects to use domestically produced materials, including domestically produced DIPF. (*Id*. at ¶ 47). As a result, the

domestic DIPF market was poised to expand, and McWane, the only supplier of a full line of DIPF in the commonly used sizes at the time the ARRA was enacted, was poised to profit from that expansion.  (*Id*. at ¶¶ 48, 49).  This expansion of the domestic DIPF market led Star Pipe Products to consider producing a full line of domestic DIPF.  (*Id*.).

Upon learning that Star Pipe Products was preparing to enter the domestic DIPF market, McWane conspired with Star Pipe Products to fix domestic DIPF products.  (*Id*. at ¶¶ 50, 51).  In accordance with the agreement they reached, McWane announced on April 15, 2009, an increase in DIPF prices, and Star Pipe Products subsequently announced on April 22, 2009 that it was increasing DIPF prices as well.  (*Id*. at ¶¶ 52, 53, 55, 56).

   D. *Conspiracy to Restrain Competition by McWane and Sigma*

After enactment of the ARRA, Sigma also sought to enter the domestic DIPF market. (*Id*. at ¶ 62).  Fearing additional competition, McWane induced Sigma to abandon its plans to produce domestic DIPF and to instead become a distributor of McWane's domestic DIPF.  (*Id*. at ¶ 64).  On September 17, 2009, McWane and Sigma entered into the Master Distribution Agreement ("MDA"), in which Sigma agreed not to enter the domestic DIPF market as a competitor.  (*Id*. at ¶ 65).  Instead, under the terms of the MDA, (1) McWane would sell domestic DIPF to Sigma at a 20 percent discount off of McWane's published prices; (2) McWane would be Sigma's exclusive source for domestic DIPF; (3) Sigma would resell McWane's domestic DIPF at or very near McWane's published prices; and (4) Sigma would resell McWane's domestic DIPF to waterworks distributors only on the condition that the distributor agreed to purchase domestic DIPF exclusively from McWane or Sigma.  (*Id*.). McWane and Sigma also agreed that McWane would sell its domestic DIPF at or very near its published prices – prices determined by McWane's agreement with Star Pipe Products.  (*Id*. at ¶

4

67). Finally, McWane also transferred a share of its sales and profits in the domestic DIPF market to Sigma. (*Id*. at ¶ 69). Indirect Plaintiffs claim that, absent these financial inducements, Sigma would have entered the domestic DIPF market and customers would have benefitted in the form of lower prices. (*Id*. at ¶¶ 70, 72).

    E. *Monopolistic Conduct*

Indirect Purchaser Plaintiffs also contend that McWane has monopolized the domestic DIPF market since at least February 2009. (*Id*. at ¶ 74). They assert that, through execution of the MDA, McWane excluded Sigma from the domestic DIPF market, and through adoption of restrictive and exclusive distribution policies, including those outlined in the MDA, McWane partially excluded Star Pipe Products from the domestic DIPF market. (*Id*. at ¶¶ 76-78).

    F. *Instant Litigation*

On January 10, 2012, Indirect Purchaser Plaintiffs filed a complaint against Defendants, which, after the case was consolidated with a number of similar actions, was amended on July 11, 2012. (*See* Docket Entry Nos. 1, 58, 85). The amended complaint ("Amended Complaint") asserts ten claims for relief. (*See* Docket Entry No. 85 at 25-46). In Counts One and Two, Indirect Purchaser Plaintiffs seek injunctive relief from McWane for (1) conspiring to unlawfully restrain trade in violation of Section 1 of the Sherman Act and Section 3 of the Clayton Act; and (2) illegally maintaining a monopoly in violation of Section 2 of the Sherman Act and Section 3 of the Clayton Act. (*Id*. at ¶¶ 114-26). In Counts Three and Four, Indirect Purchaser Plaintiffs seek damages from Defendants for (1) unreasonably restraining trade in violation of a number of state statutes; and (2) engaging in unfair competition or unfair, unconscionable, deceptive, or fraudulent acts in violation of a number of state consumer protection and unfair competition statutes. (*Id*. at ¶¶ 127-72). In Counts Five and Six, Indirect Purchaser Plaintiffs seek damages

from McWane and Star Pipe Products for (1) unreasonably restraining trade in violation of a number of state antitrust statutes; and (2) violating a number of state consumer protection and unfair competition statutes. (*Id*. at ¶¶ 173-220). In Counts Seven and Eight, Indirect Purchaser Plaintiffs seek damages from McWane and Sigma for (1) violating a number of state antitrust statutes; and (2) violating numerous state consumer protection and unfair competition statutes. (*Id*. at ¶¶ 221-68). In Count Nine, Indirect Purchaser Plaintiffs seek damages from McWane for monopolization in violation of a number of state antitrust, consumer protection and unfair competition statutes. (*Id*. at ¶¶ 269-98). Finally, in Count Ten, Indirect Purchaser Plaintiffs seek damages from all Defendants for unjust enrichment. (*Id*. at ¶¶ 299-302).

On September 26, 2012, Star Pipe Products moved to dismiss Counts Three, Four, Five, Six, and Ten of the Amended Complaint for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6). (Docket Entry No. 89). McWane and Sigma also filed a Rule 12(b)(6) motion to dismiss on September 26, 2012, seeking dismissal of all claims. (Docket Entry No. 90). For the reasons set forth below, Defendants' motions to dismiss are granted.

### III.  LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that pleadings contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). On a motion to dismiss for failure to state a claim, a "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

When considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id*. (quoting *Iqbal*, 556 U.S. at 675). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). But, the court should disregard any conclusory allegations proffered in the complaint. *Id*. Finally, once the well-pleaded facts have been identified and the conclusory allegations ignored, a court must next determine whether the "facts alleged in the complaint are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Id*. at 211 (quoting *Iqbal*, 556 U.S. at 679). This requires more than a mere allegation of an entitlement to relief. *Id*. "A complaint has to 'show' such an entitlement with its facts." *Id*. A claim is only plausible if the facts pleaded allow a court to reasonably infer that the defendant is liable for the misconduct alleged. *Id*. at 210 (quoting *Iqbal*, 556 U.S. at 678). Facts suggesting the "mere possibility of misconduct" fail to show that the plaintiff is entitled to relief. *Id*. at 211 (quoting *Iqbal*, 556 U.S. at 679).

## IV. ANALYSIS

The elements of an antitrust claim are "(1) a violation of the antitrust laws . . ., (2) individual injury resulting from that violation, and (3) measurable damages." *In re Hydrogen Peroxide Litig.*, 552 F.3d 305, 311 (3d Cir. 2008). Therefore, "individual injury (also known as antitrust impact) is an element of the cause of action" and "to prevail on the merits, every class member must prove at least some antitrust impact resulting from an alleged violation." *Id*. (citing *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 454 (3d Cir. 1977)). Antitrust impact is "injury of the type the antitrust laws were intended to prevent . . . that flows from that which

makes defendants' acts unlawful." *See* 15 U.S.C. § 15(a) (2000); *see also Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 111 (1986); *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 479 U.S. 489 (1977).

Additionally, in a class action lawsuit, a class representative for a particular claim must himself have a cause of action on that claim. *Zimmerman v. HBO Affiliate Grp.*, 834 F.2d 1163, 1169 (3d Cir. 1987). "Each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to the claim." *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987). Therefore, for each antitrust claim asserted, there must be at least one Indirect Purchaser Plaintiff who has experienced antitrust impact that flows from the anticompetitive behavior that gives rise to the claim.

Indirect Purchaser Plaintiffs' pleadings fail to show, however, that any one of the Indirect Purchaser Plaintiffs was actually injured by Defendants' conduct as alleged under any single claim. As pled in the Amended Complaint, each Indirect Purchaser Plaintiff indirectly purchased DIPF that was originally imported, marketed, sold or manufactured by "one or more" of the three Defendants at some time "[d]uring the Class Period." (Am. Compl., Docket Entry No. 85 at ¶¶ 16-22). The Class Period is defined as January 11, 2008 through the present. (*Id*. at ¶ 1). Thus, the Court can conclude only that each Indirect Purchaser Plaintiff purchased DIPF that originated with at least one of the three Defendants on some date after January 11, 2008.

The claims made in the Amended Complaint, however, require a greater level of specificity concerning Indirect Purchaser Plaintiffs' actions. First, the offending conduct in six

8

of the ten claims occurred in a time period shorter than that of the Class Period.[1] Therefore, regarding those six claims, the Court cannot determine whether any of the Indirect Purchaser Plaintiffs actually purchased DIPF during the time periods relevant to those claims. For example, Count One pertains only to the time period from September 2009 to the present, yet the allegations concerning when Indirect Purchaser Plaintiffs purchased DIPF are so broad that it is possible that no Indirect Purchaser Plaintiff actually purchased DIPF after September 2009. Thus, Indirect Purchaser Plaintiffs have not shown that that they were directly injured in the claims involving conduct that occurred during a time period shorter than the Class Period. Counts One, Two, Three, Five, Seven, and Nine must, therefore, be dismissed.

Furthermore, many of the claims are directed to only one or two of the three defendants.[2] This is problematic because the Amended Complaint does not provide information about which defendant produced the DIPF indirectly purchased by any Indirect Purchaser Plaintiff, stating instead only that the DIPF purchased was produced by "one or more" of the defendants. As a result, it is not clear that any Indirect Purchaser Plaintiff actually purchased DIPF produced by any of the defendants charged under those claims. For example, Count Six is brought against McWane and Star Pipe Products, however, since the Amended Complaint states only that Indirect Purchaser Plaintiffs indirectly purchased DIPF from "one or more" of the defendants, it is possible that no Indirect Purchaser Plaintiff actually indirectly purchased DIPF from McWane and Star Pipe Products. Thus, as to the claims brought against one or two defendants, the Court

---

[1] Counts One, Two, and Nine pertain only to conduct that occurred after September 2009. (*Id*. at ¶¶ 115, 123, 270). Count Three pertains only to conduct that occurred between January 11, 2008 and January 2009. (*Id*. at ¶ 128). Count Five pertains only to conduct that occurred after April 2009. (*Id*. at ¶ 174). Count Seven pertains only to conduct that occurred after September 17, 2009. (*Id*. at ¶ 222).

[2] Counts One, Seven, and Eight are directed only at McWane and Sigma. (*Id*. at ¶¶ 114-21, 221-68). Counts Two and Nine are directed only at McWane. (*Id*. at ¶¶ 122-26, 269-98). Counts Five and Six are directed only at McWane and Star Pipe Products. (*Id*. at ¶¶ 173-220).

cannot determine whether any of the Indirect Purchaser Plaintiffs purchased DIPF from a defendant against whom the claim is actually brought.  As such, of the remaining claims, Counts Six and Nine must also be dismissed.

The two remaining claims – Counts Four and Ten – fail for similar pleading deficiencies.  In the Amended Complaint, Indirect Purchaser Plaintiffs do not state whether the DIPF they purchased was produced domestically or imported.  This omission requires dismissal of the remaining claims as Indirect Purchaser Plaintiffs allege no facts suggesting that Sigma's imported DIPF prices were affected by anticompetitive practices after January 2009.  As such, the allegations that Indirect Purchaser Plaintiffs' indirectly purchased some type of DIPF from one or more of Defendants at some time during the Class Period leave open the possibility that Indirect Purchaser Plaintiffs purchased imported DIPF from Sigma after January 2009 – the last time that imported DIPF was subject to Defendants' anticompetitive behavior.  Therefore, Indirect Purchaser Plaintiffs have not shown that the prices they paid for DIPF were affected by any anticompetitive behavior, and Counts Four and Ten must also be dismissed.

As Indirect Purchaser Plaintiffs' pleadings regarding antitrust impact are insufficient as to each claim, the Amended Complaint is dismissed with leave to amend.  As such, it is unnecessary for the Court to address the other arguments raised by Defendants in favor of dismissal.  Indirect Purchaser Plaintiffs are encouraged, however, to anticipate those arguments and address any additional potential pleading deficiencies when amending the Amended Complaint.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are granted.  An appropriate order will follow.

>                                       */s/ Anne E. Thompson*
>                                       ANNE E. THOMPSON, U.S.D.J.

Date: March 18, 2013