# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

_____  :
                                   :
IN RE DUCTILE IRON PIPE FITTINGS   :   Civ. No. 12-169 (AET) (LHG)
("DIPF") INDIRECT PURCHASER        :
ANTITRUST LITIGATION               :
_____  :

---

## MEMORANDUM OF LAW IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANT McWANE, INC.

---

David Kovel
Elizabeth Brehm
KIRBY MCINERNEY LLP
825 Third Avenue, 16th Floor
New York, NY 10022
Tel: (212) 317-2300
Fax: (212) 751-2540

Joseph C. Kohn
William E. Hoese
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107
Tel: (215) 238-1700
Fax: (215) 238-1968

Lisa J. Rodriguez
SCHNADER HARRISON SEGAL
& LEWIS LLP
Woodland Falls Corporate Complex
220 East Lake Drive, Suite 200
Cherry Hill, NJ 08002
Tel: (856) 482-5222
Fax: (856) 482-6980

_Interim Liaison Counsel for Indirect
Purchaser Plaintiffs_

Robert S. Kitchenoff
WEINSTEIN KITCHENOFF & ASHER LLC
100 S. Broad Street, Suite 705
Philadelphia, Pa 19110-1061
Tel: (215) 545-7200
Fax: (215) 545-6535

_Interim Co-Lead Counsel for Indirect Purchaser Plaintiffs_

# TABLE OF CONTENTS

I.      INTRODUCTION. ................................................................. 1

II.     BACKGROUND. .................................................................. 2

III.    TERMS OF THE PROPOSED SETTLEMENT. ........................................ 5

        A.    The Settlement Class................................................... 5

        B.    The Settlement Amount And Rescission Provisions........................ 6

        C.    Payment For Notice And Settlement Administration. ...................... 7

        D.    Release Provisions. ................................................... 7

IV.     THE PROPOSED SETTLEMENTS ARE SUFFICIENTLY FAIR,
        REASONABLE, AND ADEQUATE. ............................................... 8

        A.    The Standard For Preliminary Approval. ................................ 8

              1.    The Settlement is the Result of Arm's-Length
                    Negotiations by Experienced Class Counsel and
                    Weighs in Favor of Preliminary Approval. ..........................10

              2.    The Extent of Discovery at the Time the Settlement
                    Agreement was Negotiated and Agreed to Supports
                    Preliminary Approval...............................................14

V.      PRELIMINARY CERTIFICATION OF THE PROPOSED
        SETTLEMENT CLASS IS WARRANTED. ..........................................16

        A.    This Case Satisfies The Prerequisites Of Rule 23(a). ..................17

              1.    The Settlement Class is Sufficiently Numerous. ....................17

              2.    There are Common Questions of Law and Fact. ....................18

              3.    The Representative Plaintiffs' Claims are Typical
                    of Those of the Settlement Class...................................19

              4.    The Representative Plaintiffs will Fairly and
                    Adequately Protect the Interests of the Class. ....................21

B. The Representative Plaintiffs' Claims Satisfy The Requisites Of Rule 23(b)(3). ...............................................................23

 1. Common Legal and Factual Questions Predominate. .............24

 2. A Class Action is Superior to Other Methods of Adjudication. ...................................................................26

C. Interim Co-Lead Counsel Should Be Appointed Class Counsel Under Rule 23(g). ............................................................27

VI. THE COURT SHOULD APPROVE THE NOTICE PROGRAM. .............27

 A. The Notice Program And Form Of Notice. ......................................28

 B. The Plan Satisfies Rule 23 And Constitutional Due Process. ............30

VII. REQUEST TO APPOINT GARDEN CITY GROUP, LLC AS CLAIMS ADMINISTRATOR AND CITIBANK AS ESCROW AGENT. ................31

VIII. CONCLUSION..............................................................................32

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Allen v. Holiday Universal*,
  249 F.R.D. 166 (E.D. Pa. 2008).........................................................................21

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ...............................................................................23, 24

*Baby Neal v. Casey*,
  43 F.3d 48 (3d Cir. 1994) ...................................................................18, 19, 20

*Bernhard v. TD Bank*, N.A.,
  No. 08 -4392, 2009 U.S. Dist. LEXIS 92308 (D.N.J. Oct. 5, 2009)...................12

*Bogosian v. Gulf Oil Corp.*,
  561 F.2d 434 (3d Cir. 1977) ...........................................................................21

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001) .............................................................................12

*Dewey v. Volkswagen Aktiengesellschaft*,
  681 F.3d 180 (3d Cir. 2012) ...........................................................................22

*Ehrheart v. Verizon Wireless*,
  609 F.3d 590 (3d Cir. 2010) .......................................................................... 8

*Hoxworth v. Blinder*, *Robinson & Co., Inc.*,
  980 F.2d 912 (3d Cir. 1992) ...........................................................................20

*In re Am. Inv. Life Ins. Co. Annuity Mktg. and Sales Practices Litig.*,
  263 F.R.D. 226 (E.D. Pa. 2009)....................................................................... 9

*In re Auto. Refinishing Paint Antitrust Litig.*,
  MDL No. 1426, 2004 WL 1068807 (E.D. Pa. May 11, 2004)........................... 9

*In re Auto. Refinishing Paint Antitrust Litig.*,
  617 F. Supp. 2d 336 (E.D. Pa. 2007) ...............................................................10

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ...........................................................................10

*In re Citigroup Inc. Bond Litigation*,
   No. 08 Civ. 9522, 2013 WL 4427195 (S.D.N.Y. Aug. 20, 2013)......................12

*In re Community Bank of N. Va.*,
   418 F.3d 277 (3d Cir. 2005) ...............................................................23

*In re Community Bank of N. Va.*,
   622 F.3d 275 (3d Cir. 2010) ...............................................................21

*In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions,*
   410 F. Supp. 659 (D. Minn. 1974) .......................................................13

*In re General Instruments Sec. Litig.*,
   209 F. Supp. 2d 423 (E.D. Pa. 2001) ...................................................13

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
   55 F.3d 768 (3d Cir. 1995) ...........................................................9, 10

*In re Hydrogen Peroxide Antitrust Litig.*,
   552 F.3d 305 (3d Cir. 2008) ...............................................................17

*In re Insurance Broker. Antitrust Litig.*,
   579 F.3d 241 (3d Cir. 2009) .........................................................24, 26

*In re Linerboard Antitrust Litig.*,
   292 F. Supp. 2d 631 (E.D. Pa. 2003) ...............................................9, 10

*In re McWane, Inc.*,
   F.T.C., No. 9351, 2014 WL 556261 (F.T.C. Jan. 30, 2014)
   *aff'd*, *McWane Inc. v. F.T.C.*, 783 F.3d 814 (11th Cir. 2015)................14, 15

*In re Mercedes-Benz Antitrust Litig.*,
   213 F.R.D 180 (D.N.J. 2003)........................................................20, 24

*In re Microcrystalline Cellulose Antitrust Litig.*,
   218 F.R.D. 79 (E.D. Pa. 2003)............................................................20

*In re Pet Food Prods. Liab. Litig.,*
   629 F.3d. 333 (3d Cir. 2010) ..............................................................16

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
   962 F. Supp. 450 (D.N.J. 1997)......................................................9, 27

*In re Prudential Ins. Co. of Am. Sales Practices Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998) ........................................................25, 28

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   163 F.R.D. 200 (S.D.N.Y. 1995) ......................................................16

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004) ..........................................8, 10, 16, 24

*Lake v. First Nationwide Bank*,
   156 F.R.D. 615 (E.D. Pa. 1994).........................................................11

*Marsden v. Select Med. Corp.*,
   246 F.R.D. 480 (E.D. Pa. 2007)........................................................18

*McCoy v. Health Net, Inc.*,
   569 F. Supp. 2d 448 (D.N.J. 2008) ..................................................10

*McGuinness v. Parnes*,
   No. 87-2728-LFO, 1989 WL 29814 (D.D.C. Mar. 22, 1989)............13

*McWane, Inc. v. F.T.C.*,
   136 S.Ct. 1452 (2016) .....................................................................14

*Mirakay v. Dakota Growers Pasta Co.*,
   No. 13-cv-4429, 2014 U.S. Dist. LEXIS 148694 (D.N.J. Oct. 20, 2014) ...........24

*Petruzzi's, Inc. v. Darling-Delaware Co. Inc.*,
   880 F. Supp. 292 (M.D. Pa. 1995) ..................................................11

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993) ............................................................17

*Rodriguez v. Nat'l City Bank*,
   726 F.3d 372 (3d Cir. 2013) ............................................................18

*Sheinberg v. Sorensen*,
   606 F.3d 130 (3d Cir. 2010) ............................................................22

*Stewart v. Abraham*,
   275 F.3d 220 (3d Cir. 2001) ............................................................17

*Stewart v. Rubin,*
948 F. Supp. 1077 (D.D.C. 1996), *aff'd*, 124 F.3d 1309 (D.C. Cir. 1997)..........13

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011) ................................................................16, 24, 25

*Thomas v. NCO Fin. Sys.*,
No. 00-5118, 2002 U.S. Dist. LEXIS 14157 (E.D. Pa. filed Aug. 1, 2002)......... 9

*Tiro v. Public House Invs., LLC*,
Nos. 11 Civ. 7679, 11 Civ. 8249,
2013 U.S. Dist. LEXIS 129258 (S.D.N.Y. Sept. 10, 2013)...............................12

*Waste Mgmt. Holdings, Inc. v. Mowbray*,
208 F.3d 288 (1st Cir. 2000)...........................................................................25

*Williams v. Aramark Sports, LLC*,
No. 10-cv-1044, 2011 U.S. Dist. LEXIS 102173 (E.D. Pa. Sept. 8, 2011).........18

**Statutes**

15 U.S.C. § 1 .................................................................................................... 2

15 U.S.C. § 2 .................................................................................................... 2

**Rules**

Fed. R. Civ. P. 23(a) ...................................................................................*passim*

Fed. R. Civ. P. 23(a)(1).................................................................................17

Fed. R. Civ. P. 23(a)(2).............................................................................18, 19

Fed. R. Civ. P. 23(a)(3).............................................................................19, 21

Fed. R. Civ. P. 23(a)(4).........................................................................21, 22, 23

Fed. R. Civ. P. 23(b) ...............................................................................16, 23

Fed. R. Civ. P. 23(b)(3)................................................................................*passim*

Fed. R. Civ. P. 23(c)(2)(B)............................................................................28

Fed. R. Civ. P. 23(c)(3)................................................................................27

Fed. R. Civ. P. 23(e) ........................................................................*passim*

Fed. R. Civ. P. 23(e)(1) ..............................................................................27

Fed. R. Civ. P. 23(g) .......................................................... 12, 22, 26, 27

Fed. R. Civ. P. 23(g)(1)(A) .......................................................................26

**Other Authorities**

William B. Rubenstein, *Newberg on Class Actions* § 13.1 (5th ed. 2014) ............... 9

William B. Rubenstein, *Newberg on Class Actions* § 13.14 (5th ed. 2014) ......11, 15

William B. Rubenstein, *Newberg on Class Actions*, §13.45 (5th ed. 2014) ......11, 12

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Indirect Purchaser Plaintiffs ("Plaintiffs") respectfully submit this memorandum in support of their motion: (1) for preliminary approval of the settlement between Plaintiffs and McWane, Inc. ("McWane"); and (2) for certification of the Settlement Class.[1]

## I.    INTRODUCTION.

After several mediation sessions before three different mediators spanning a series of years, Plaintiffs successfully obtained a mutually agreeable settlement with McWane (the "Settlement Agreement" or "McWane Agreement").   In exchange for a release from this lawsuit, McWane has agreed to pay $1,425,000 into an escrow fund to provide for the claims of members of the proposed Settlement Class, of which $150,000 is available for notice and administration costs.[2]  McWane Agreement ¶¶ 33-34.

Earlier, Plaintiffs entered into separate settlements with SIGMA Corporation ("SIGMA") and Star Pipe Products, Ltd. ("Star"), to which settlements the Court granted final approval by order entered on June 8, 2016 (ECF No. 274).

---

[1] Capitalized terms have the same meaning as set forth in the McWane Agreement, attached hereto as Exhibit A.

[2] Any portion of this sum used for notice and administration costs is not refundable to McWane in the event that the settlement is not finally approved by this Court or if this Court's final approval is overturned on appeal.

Plaintiffs respectfully submit that the Settlement with McWane is fair, reasonable and adequate to the Class, is an excellent result in light of the risks posed by continued litigation, and is well within the range for settlement approval pursuant to Federal Rules of Civil Procedure 23(e).

## II.    BACKGROUND.

This case concerns an alleged conspiracy among manufacturers of ductile iron pipe fittings ("DIPF").  Plaintiffs allege that Defendants SIGMA, McWane, and Star along with other unnamed co-conspirators, violated the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.*, by engaging in: (i) an unlawful conspiracy to raise and fix the prices for ductile iron pipe fittings ("DIPF") sold throughout the United States.   In addition, Plaintiffs allege that McWane illegally maintained its monopoly in the Domestic DIPF market, and, with SIGMA, unlawfully conspired to monopolize the Domestic DIPF market, which conduct violated § 2 of the Sherman Act.   This conduct also collectively violates certain state antitrust, consumer protection, and unfair competition statutes.  Plaintiffs allege that, as a result, they and the members of the proposed Settlement Class paid prices for DIPF that were higher than they would have been absent the unlawful conduct. McWane denies all allegations of wrongdoing in this action.

This action was commenced in January 2012 (ECF No. 1). Plaintiffs filed an amended complaint in July 2012 (ECF No. 85), and motions to dismiss that

complaint were filed by Defendants in September 2012 (ECF Nos. 89-90). The
Court granted the motions to dismiss but gave Plaintiffs leave to amend (ECF Nos.
105-106). Plaintiffs filed their second amended complaint in May 2013 (ECF No.
110). Defendants moved to dismiss the second amended complaint (ECF Nos. 116-
117), which motions were granted-in-part and denied-in-part by order dated
October 2, 2013 (ECF No. 133). Defendants then answered the second amended
complaint in October 2013 (ECF Nos. 137-139).

Discovery commenced at the end of 2013. In October 2014, the Court stayed
the litigation so that the parties could mediate the case before the Honorable Joel
B. Rosen, U.S.M.J. (Ret.) (ECF No. 207). The stay was extended several times,
lifted briefly in April 2015, and further extended until September 14, 2015 (ECF
No. 225). In June 2015, Defendant SIGMA settled with the indirect purchaser
plaintiffs for $2,005,000 and cooperation (ECF No. 221). Then, in July 2015,
Defendant Star settled with the indirect purchaser plaintiffs for $641,250 and
cooperation (ECF No. 226). The Court certified the indirect purchaser settlement
classes and granted final approval to SIGMA and Star settlements on June 8, 2016
(ECF No. 274).

On May 27, 2016, Plaintiffs filed their motion for class certification (ECF
No. 271), to which McWane filed its opposition on July 29, 2016 (ECF No. 288).
By Letter Order dated October 19, 2016, Magistrate Judge Lois H. Goodman

granted the parties' joint request[3] for a stay of their cases so that they could pursue mediation before the Honorable Layne Phillips, U.S.D.J. (ret.), of Phillips ADR (ECF No. 295). As a result of the Magistrate Judge's letter order staying the parties' case pending mediation, the Court terminated Plaintiffs' motion for class certification without prejudice (ECF No. 296).

The mediation proved unsuccessful, and Plaintiffs' class certification motion was reinstated (ECF No. 302). Plaintiffs filed their class certification reply brief on March 31, 2017 (ECF No. 305). The parties argued the motion for class certification on May 24, 2017, at the conclusion of which the Court reserved the possibility of hearing testimony from each party's expert witness.

On June 23, 2017, the Court ordered the parties to attempt to schedule a further settlement mediation session (ECF No. 323). The parties participated in a full-day mediation session in California on July 27, 2017, before Gregory Lindstrom, an experienced mediator affiliated with Phillips ADR (ECF No. 324). The parties were again unsuccessful in resolving the matter. With further encouragement from Magistrate Judge Goodman, on August 11, 2017, the parties informed the Court that they had agreed to an additional full-day of mediation to occur in New York on September 13, 2017, before Mediator Lindstrom (ECF No.

---

[3] The Letter Order was captioned in this case (No. 12-cv-169) as well as in the Direct Purchaser (No. 12-cv-711) and State of Indiana (No. 12-cv-6667) actions.

328). On September 18, 2017, the parties informed the Court that the September 13th mediation resulted in an agreement in principle to settle the action with McWane (ECF No. 330).

## III.   TERMS OF THE PROPOSED SETTLEMENT.

### A.   The Settlement Class.

The McWane Settlement Agreement defines the proposed Settlement Class as follows:

> All persons or entities that reside or have a place of business in the States of Arizona, Arkansas, California, District of Columbia, Florida, Hawaii, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin (the "Settlement Class States") who or that purchased DIPF indirectly from any Defendant at any time from January 11, 2008, through June 30, 2011 or who or that purchased Domestic DIPF indirectly from McWane or SIGMA at any time from September 17, 2009, through December 31, 2013.

McWane Agreement ¶ 19.   "Excluded from the Settlement Class are Defendants and their parents, subsidiaries and affiliates, whether or not named as a Defendant in this action, federal governmental entities, and instrumentalities of the federal government." *Id.*   The definition of the settlement class mirrors the SIGMA and, in part, Star[4] settlement classes certified by the Court (ECF No. 274).

---

[4] Plaintiffs alleged that Star was involved only with the conspiracy to fix the price of DIPF, and thus the Star settlement class involves only purchase of DIPF indi-

*(footnote continued...)*

**B.      The Settlement Amount And Rescission Provisions.**

McWane paid $1,425,000 (the "Settlement Amount") into a settlement fund on December 8, 2017, in accordance with the terms of the executed Settlement Agreement. McWane Agreement ¶ 33. The money is being maintained in an escrow account at Citibank and will be treated as a qualified settlement fund pending approval of the settlement by the Court. *Id.* at ¶ 36.

McWane and Plaintiffs have the right and option to rescind the McWane Agreement for the reasons described in Paragraphs 43-46 of the Settlement Agreement, including in the event that the Court refuses to approve the Settlement Agreement or any material part thereof, or if such approval is modified or set aside on appeal.   McWane also has the right and option to terminate the Settlement Agreement if customers representing twenty-five (25) percent of all ductile iron pipe fitting dollar purchases made by members of the indirect purchaser plaintiff Settlement Class validly opt-out of the settlement. McWane Agreement ¶ 44. Following the expiration of the rescissory period, Interim Co-Lead Counsel may submit a motion seeking approval of the payments of attorneys' fees, expenses, and class representative service awards from the Settlement Fund. *Id.* at ¶ 39.

---

rectly from Defendants between January 11, 2008 and June 30, 2011. It does not involve monopolization of the Domestic DIPF market.

**C.     Payment For Notice And Settlement Administration.**

The McWane Settlement Amount is "all in," meaning that any costs of notice or settlement administration as well as any award of attorneys' fees, reimbursement of litigation expenses, or class representative service awards will be funded out of the settlement amount. Interim Class Counsel have the right to use up to $150,000 of the McWane Settlement Amount for notice and administration costs prior to final approval. *Id.* at ¶ 33.  Any amount spent or accrued for notice or the cost of settlement administration, up to a maximum of $150,000, is not refundable to McWane in the event that the Settlement Agreement is not approved or fails to become effective. *Id.* at ¶ 34.

**D.     Release Provisions.**

In exchange for the consideration described above, Plaintiffs have agreed to release McWane from any and all claims arising out of, or resulting from, any of the conduct alleged or that could have been alleged in this action against McWane, including under federal or state laws.  *Id.* at ¶ 29. The terms of the McWane Agreement do not release: (a) any claims based upon direct purchases of DIPF or Domestic DIPF brought by prospective members of any class of direct purchasers; (b) any claims based upon purchases of DIPF or Domestic DIPF brought by the State of Indiana; or (c) claims arising in the ordinary course of business for any product defect, breach of contract, product performance, or warranty claims

relating to DIPF or Domestic DIPF. *Id.* The full text of the proposed releases, including the limitations thereof, is set forth in Paragraphs 29-32 of the McWane Agreement.

## IV. THE PROPOSED SETTLEMENTS ARE SUFFICIENTLY FAIR, REASONABLE, AND ADEQUATE.

In considering whether to grant preliminary approval of a proposed settlement, the Court need determine only whether the settlement is sufficiently fair, reasonable, and adequate to allow notice of the proposed settlement to be disseminated to the Settlement Class. A final determination of the settlement's fairness will be made at or after the Fairness Hearing, once Class Members have received notice of the settlement and have been given an opportunity to review it, object to it, or opt-out of the class. As set forth below, Plaintiffs respectfully submit that the McWane Settlement amply satisfies the requirements of Rule 23(e) of the Federal Rules of Civil Procedure.

### A. The Standard For Preliminary Approval.

The settlement of class action litigation is favored and encouraged in the Third Circuit. *See, e.g., Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010) ("Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts"); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535

(3d Cir. 2004) ("there is an overriding public interest in settling class action litigation, and it should therefore be encouraged").

Rule 23(e) of the Federal Rules of Civil Procedure governs settlement approval for both litigation and settlement classes. It is a two-step process: (1) preliminary approval; and (2) a fairness hearing, after notice to the class, to determine final approval of the proposed settlement. *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 562 (D.N.J. 1997); *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 WL 1068807, at *1 (E.D. Pa. May 11, 2004); William B. Rubenstein, *4 Newberg on Class Actions* § 13.1, 274-275 (5th ed. 2014).

Preliminary approval of a settlement does not require a definitive determination of the fairness of a proposed settlement. *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) ("GMC Trucks") (holding that the "preliminary determination establishes an initial presumption of fairness"); *In re Am. Inv. Life Ins. Co. Annuity Mktg. and Sales Practices Litig.*, 263 F.R.D. 226, 238 (E.D. Pa. 2009) (same).  Rather, a definitive determination of the fairness, reasonableness, and adequacy of a settlement is made at a final approval hearing. *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 638 (E.D. Pa. 2003). At the preliminary approval stage, "[t]he court determines whether the proposed settlement discloses grounds to doubt its fairness

or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval." *Thomas v. NCO Fin. Sys.*, No. 00-5118, 2002 U.S. Dist. LEXIS 14157, at \*14 (E.D. Pa. filed Aug. 1, 2002). In making this determination, the court generally evaluates whether: "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected."[5] *See In re Cendant Corp. Litig.*, 264 F.3d 201, 232, n. 18 (3d Cir. 2001); *GMC Trucks*, 55 F.3d at 785. In reviewing a proposed settlement, courts may also consider the amount of relief provided. *See, e.g., In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 344 (E.D. Pa. 2007).

Plaintiffs here request that the Court take the first step in the settlement approval process and grant preliminary approval of the McWane Settlement.

> **1.    The Settlement is the Result of Arm's-Length Negotiations by Experienced Class Counsel and Weighs in Favor of Pre-liminary Approval.**

---

[5] This last factor, regarding the portion of the class that has objected at the time of final approval, is evaluated at the fairness hearing after class notice and opportunity to object has been provided to the class. *McCoy v. Health Net, Inc.,* 569 F. Supp. 2d 448, 458-59 (D.N.J. 2008).

Settlements that result from arm's-length negotiations between experienced counsel are generally entitled to deference from the court. *See, e.g., Warfarin*, 391 F.3d at 535 (presumption of fairness attaches where, *inter alia*, the settlement resulted from intense arm's-length negotiations between experienced counsel); *Linerboard*, 292 F. Supp. 2d at 640 (holding that "[a] presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel" (citation omitted)); *Lake v. First Nationwide Bank*, 156 F.R.D. 615, 628 (E.D. Pa. 1994) ("giving due regard to the recommendations of the experienced counsel in this case, who have negotiated this settlement at arm's-length and in good faith"); *Petruzzi's, Inc. v. Darling-Delaware Co. Inc.*, 880 F. Supp. 292, 301 (M.D. Pa. 1995) ("The opinions and recommendation of such experienced counsel are indeed entitled to considerable weight"); Rubenstein, *4 Newberg on Class Actions*, §13:14 (5th ed.) ("The primary procedural factor courts consider in determining whether to preliminarily approve a proposed settlement is whether the agreement arose out of arm's-length, noncollusive negotiations"). This deference reflects the understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness considerations of Rule 23(e).

Courts further "find an absence of collusion when settlement negotiations are conducted by a third-party mediator." Rubenstein, *4 Newberg on Class Actions*,

§13.45. Here, the proposed settlement is the result of arm's-length negotiations that included the participation of three independent mediators: U.S. Magistrate Judge Joel B. Rosen (Ret.), U.S. District Court Judge Layn R. Phillips (Ret.), and Gregory Lindstrom,[6] and concluded only after intense, hard-fought negotiations spanning several years. The settlement requires McWane to pay $1,425,000, which includes notice and administration costs of up to $150,000.

Interim Co-Lead Counsel (and Liaison Counsel) have substantial experience litigating and settling class actions. *See* Motion for Consolidation and for Appointment of Interim Co-Lead Counsel (ECF No. 14) and Opposition thereto (ECF No. 28), setting forth qualifications of the then-proposed Interim Co-Lead Counsel and Liaison Counsel and their firms. This Court recognized that experience not only in the interim co-lead counsel appointment (ECF No. 58) but

---

[6] The participation of an independent mediator insures that the settlement negotiations were conducted at arm's length and without collusion between the parties. *Bernhard v. TD Bank*, N.A., No. 08-4392, 2009 U.S. Dist. LEXIS 92308, at *4-5 (D.N.J. Oct. 5, 2009); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *Tiro v. Public House Invs., LLC*, Nos. 11 Civ. 7679, 11 Civ. 8249, 2013 U.S. Dist. LEXIS 129258 (S.D.N.Y. Sept. 10, 2013), citing *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 151 (S.D.N.Y. 2013) ("Additionally, whereas here, the settlement is the by-product of a mediation before an experienced employment law mediator, there is a presumption of fairness and arm's-length negotiations.").

also in the appointment of Interim Co-Lead Counsel to serve as Settlement Class Counsel for the SIGMA and Star Settlements (ECF No. 274, ¶ 10).[7]

Interim Co-Lead Counsel believe that the settlement is fair, reasonable and adequate to the Class, and gives due consideration to the financial situation of McWane, McWane's potential liability and damages exposure, and the strengths and weaknesses of each side's litigation position. Courts have accorded significant weight to the opinion of class counsel based on a thorough analysis of the facts. *See, e.g., In re Gen. Instruments Sec. Litig.,* 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001); *Stewart v. Rubin,* 948 F. Supp. 1077, 1099 (D.D.C. 1996), *aff'd*, 124 F.3d 1309 (D.C. Cir. 1997) ("A court should defer to the judgment of experienced counsel who have competently evaluated the strength of the proof"); *McGuinness v. Parnes,* No. 87 Civ. 2728, 1989 WL 29814, at *1 (D.D.C. Mar. 22, 1989) ("While the evaluation of the fairness and adequacy of a settlement such as this is anything but a scientific process, there is nothing about this settlement suggesting that the Court should second-guess the product of the negotiations between the skilled and conscientious lawyers who represented parties on both sides of this litigation"); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions,*

---

[7] "The Court hereby confirms the appointment of Kirby McInerney LLP; Kohn Swift & Graf, P.C.; and Weinstein Kitchenoff & Asher LLC as Settlement Class Counsel for the Indirect Purchaser Plaintiffs in the SIGMA and Star settlements, having determined that the requirements of Rule 23(g) of the Federal Rules of Civil Procedure are fully satisfied by this appointment."

410 F. Supp. 659, 667 (D. Minn. 1974) ("The recommendation of experienced antitrust counsel is entitled to great weight").

> **2.    The Extent of Discovery at the Time the Settlement Agreement was Negotiated and Agreed to Supports Preliminary Approval.**

The amount of discovery completed in advance of the settlement also supports a finding that the McWane Settlement falls within the range of possible approval.

First, discovery in this litigation commenced at the end of December 2013. The parties have exchanged written discovery and a large volume of documents, review of which was well underway before the January 2015 mediation and completed well before the start of the 2017 settlement negotiations.

Second, and in addition to the documents produced by Defendants, Plaintiffs also had the benefit of being able to review the FTC hearing transcripts and exhibits from *In re McWane, Inc.*, *and Star Pipe Prods., Ltd.,* F.T.C. No. 9351, 2014 WL 556261 (F.T.C. Jan. 30, 2014) *aff'd*, *McWane Inc. v. F.T.C.*, 783 F.3d 814 (11th Cir. 2015). Following both a lengthy investigation and proceeding before an Administrative Law Judge, the FTC issued its opinion and final order against McWane on February 6, 2014, finding that it unlawfully maintained its monopoly in the Domestic DIPF market after Star entered the market in 2009. The FTC split 2-2 on whether to uphold the ALJ's decision on the price fixing claims. The

Eleventh Circuit upheld the FTC's findings,[8] and the Supreme Court denied McWane's certiorari petition. *McWane, Inc. v. F.T.C.*, 136 S.Ct. 1452 (2016). The FTC's Final Order "prohibits McWane from requiring exclusivity from its customers" for Domestic DIPF. *In re McWane, Inc.,* 2014 WL 556261.

Third, Plaintiffs had a good understanding of McWane's financial position, including its ability to pay a settlement or withstand a judgment in this litigation. Accordingly, Interim Co-Lead Counsel were knowledgeable regarding the facts of the case and the strengths and weaknesses of the parties' positions in advance of the settlement negotiations and resulting Settlement.

Finally, Plaintiffs' counsel conducted extensive research and discovery, including not only the review of the FTC docket, depositions, trial transcripts, and review of documents produced by defendants and third parties, but also took depositions of defendants, their experts, and third-party distributors of DIPF, compiled, reviewed, and analyzed distributor transaction sales data, and worked extensively with econometricians to analyze that transactional data in order to determine potential, provable damages. The information gained through the hard-fought litigation provided Plaintiffs' counsel with a comprehensive understanding of the relative strengths and weaknesses of their claims. Rubenstein, *4 Newberg on*

---

[8] The Eleventh Circuit affirmed an FTC ruling that Defendant McWane had engaged in an "unlawful exclusive dealing policy to maintain its monopoly power in the Domestic fittings market." *In re McWane, Inc.*, 2014 WL 556261, at *41.

*Class Actions*, §13:14 ("Where the proposed settlement was preceded by a lengthy period of adversarial litigation involving substantial discovery, a court is likely to conclude that settlement negotiations occurred at arm's-length").

These factors weigh in favor of preliminary approval.

## V.   PRELIMINARY CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS IS WARRANTED.

It is well-established in the Third Circuit that a class may be certified for purposes of settlement.  *E.g., Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 296 (3d Cir. 2011); *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 349 (3d Cir. 2010).  In the case of settlements, "tentative or temporary settlement classes are favored when there is little or no likelihood of abuse, and the settlement is fair and reasonable and under the scrutiny of the trial judge." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 205 (S.D.N.Y. 1995) (internal quotation and citation omitted). The Settlement Class should be certified by the Court so that the members may be informed of the terms of the McWane settlement and the Court can determine whether the settlement with McWane is fair, reasonable, and adequate.

Fed. R. Civ. P. 23 governs the issue of class certification for both litigation and settlement classes. A settlement class should be certified where the four requirements of Rule 23(a) – numerosity, commonality, typicality and adequacy – are satisfied, and when one of the three subsections of Rule 23(b) is also met.

*Warfarin*, 391 F.3d at 527-30.  Here, Plaintiffs are seeking to certify a Settlement Class under Rule 23(b)(3), which McWane has consented to for settlement purposes.  McWane Agreement ¶ 23.[9]  To be certified under Rule 23(b)(3), the Class must meet Rule 23(b)(3)'s "predominance" and "superiority" requirements. *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309-10 (3d Cir. 2008).

## A.    This Case Satisfies The Prerequisites Of Rule 23(a).

Certification is appropriate under Rule 23(a) if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).  Here, certification pursuant to Rule 23(a) is appropriate.

### 1.    The Settlement Class is Sufficiently Numerous.

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable." *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993). There is no threshold number required to satisfy the numerosity requirement and the most important factor is whether joinder of all the parties would be impracticable for any reason. *Stewart v. Abraham*, 275 F.3d

---

[9] "The parties to this Agreement hereby stipulate for purposes of this Settlement only that the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3) are satisfied and, subject to Court approval, the Settlement Class defined in Paragraph 19 shall be certified for settlement purposes as to McWane."

220, 226-27 (3d Cir. 2001) (noting that there is no minimum number to satisfy numerosity and observing that generally the requirement is met if the number of plaintiffs exceeds 40). Moreover, numerosity is not determined solely by the size of the class but also by the geographic location of class members. *Marsden v. Select Med. Corp.*, 246 F.R.D. 480, 484 (E.D. Pa. 2007).

Here, the proposed Settlement Class is comprised of at least thousands of members that are geographically dispersed across the United States. Second Amended Complaint ("SAC") ¶ 134 (ECF No. 110). Thus, joinder of all class members would be impracticable and the Settlement Class is sufficiently numerous to satisfy Rule 23(a)(1).

### 2.     There are Common Questions of Law and Fact.

The proposed Settlement Class meets the commonality requirement of Rule 23(a)(2). *See* Fed. R. Civ. P. 23(a)(2) (there must be "questions of law or fact common to the class"). This requirement, however, is "not onerous." *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 380-82 (3d Cir. 2013). In fact, commonality may be satisfied "if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). Thus, commonality does not require that "all class members share identical claims," *Sullivan*, 667 F.3d at 301, or that there be identical issues and facts for all plaintiffs, or that no individualized issues exist. *Williams v. Aramark Sports, LLC*,

Nos. 10 Civ. 1044, 10 Civ. 1547, 2011 WL 4018205, at *3 (E.D. Pa. Sept. 9, 2011).

Here, questions of law and/or fact common to the Class include, but are not limited to:

- Whether Defendants (and their co-conspirators) entered into an illegal agreement to reduce fix, raise, maintain, and/or stabilize the prices charged for DIPF sold in the United States;
- Whether McWane monopolized the Domestic DIPF market;
- If such an agreement was reached, whether Defendants violated federal antitrust laws, state antitrust laws, and state consumer protection and unfair competition statutes;
- The effect of the conspiracy, including whether it caused a cognizable injury to the Class; and
- The aggregate amount of damages suffered by the Class as a result of the conspiracy.

Because there are multiple common legal and factual questions related to potential liability, the commonality requirement of Rule 23(a)(2) is met.

### 3.    The Representative Plaintiffs' Claims are Typical of Those of the Settlement Class.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." As the Third Circuit described in *Baby Neal*:

> The typicality inquiry is intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented. . . . The typicality criterion is intended to preclude certification of those cases

19

> where the legal theories of the named plaintiffs potentially conflict
> with those of the absentees by requiring that the common claims are
> comparably central to the claims of the named plaintiffs as to the
> claims of the absentees.
>
> "Typicality entails an inquiry whether 'the named plaintiff's
> individual circumstances are markedly different or . . . the legal theory
> upon which the claims are based differs from that upon which the
> claims of other class members will perforce be based.'" . . .
> Commentators have noted that cases challenging the same unlawful
> conduct which affects both the named plaintiffs and the putative class
> usually satisfy the typicality requirement irrespective of the varying
> fact patterns underlying the individual claims.

43 F.3d at 57-58 (internal citations omitted).

Moreover, "factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Hoxworth v. Blinder*, *Robinson & Co., Inc.*, 980 F.2d 912, 923 (3d Cir. 1992) (internal citations omitted). "Even if there are 'pronounced factual differences' among the plaintiffs, typicality is satisfied as long as there is a strong similarity of legal theories and the named plaintiff does not have any unique circumstances." *In re Microcrystalline Cellulose Antitrust Litig.*, 218 F.R.D. 79, 84 (E.D. Pa. 2003); *see also In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 185 (D.N.J. 2003) ("[W]hile the Court must ensure that the interests of the plaintiffs are congruent, the Court will not reject the plaintiffs' claim of typicality on speculation regarding conflicts that may arise in the future").

Here, typicality is satisfied because the claims of the proposed Settlement Class Representatives and absent class members rely on the same legal theories and arise from the same alleged conspiracy and illegal agreement by Defendants, namely, Defendants' agreement to manipulate the prices of DIPF and McWane and SIGMA's monopolization of the Domestic DIPF market. Moreover, Plaintiffs allege that all putative class members were indirect purchasers of DIPF and suffered injury as a result of Defendants' alleged conduct. *See, e.g.*, SAC ¶ 9. Accordingly, the Rule 23(a)(3) typicality requirement is satisfied.

### 4.   The Representative Plaintiffs will Fairly and Adequately Protect the Interests of the Class.

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). As the Third Circuit explained in *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 449 (3d Cir. 1977), the adequate representation requirement of Rule 23(a)(4):

> [guarantees] that the representatives and their attorneys will competently, responsibly and vigorously prosecute the suit, and that the relationship of the representative parties' interest to those of the class are such that there is not likely to be divergence in viewpoint or goals in the conduct of the suit.

The first prong requires a determination that "the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, . . . and that there is no conflict between the individual's claims and those asserted on behalf of the class." *In re Cmty. Bank of N. Va.*, 622 F.3d 275, 291 (3d Cir. 2010).

Under this requirement, a class representative must have some commitment to the case, and therefore some minimal knowledge about the case. *Allen v. Holiday Universal*, 249 F.R.D. 166, 184-85 (E.D. Pa. 2008). However, this is not a high bar. Moreover, a class representative is not inadequate simply because of the existence of a minor conflict. Rather, "[a] conflict must be 'fundamental' to violate Rule 23(a)(4)." *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 180, 184 (3d Cir. 2012). "A fundamental conflict exists where some [class] members claim to have been harmed by the same conduct that benefitted other members of the class." *Id.*

The named Class Representatives here clearly meet the first prong of the adequacy requirement. Each named representative has the ability and incentive to represent the claims of the class vigorously. They have all responded to discovery in which they have attested to indirectly purchasing DIPF. They have provided documentation of their purchases. They were deposed. There is no evidence of any conflict, fundamental or otherwise, which would prevent any of the named Plaintiffs from fairly and adequately representing absent class members. Thus, there is no basis for finding that class representatives are inadequate under Rule 23(a)(4).

The second prong requires class counsel to be adequate. Since 2003, the standards for evaluating class counsels' adequacy have been contained in Fed. R.

Civ. P. 23(g). *Sheinberg v. Sorensen*, 606 F.3d 130, 132 (3d Cir. 2010); *Dewey*, 681 F.3d at 181, n.13. Here, Interim Co-Lead Counsel have extensive experience and expertise in the litigation of antitrust disputes, complex litigation and class action proceedings throughout the United States. Interim Co-Lead Counsel are qualified and able to conduct this litigation, as this Court recognized when appointing them to run the litigation and as Settlement Class Counsel in connection with preliminary and final approval of the Star and SIGMA settlements (ECF Nos. 231, 233, and 274). Interim Co-Lead Counsel have vigorously represented Plaintiffs in the settlement negotiations with McWane and have vigorously prosecuted this Action. Moreover, the named Class Representatives have adequately represented the absent Class Members' interests, actively participating in discovery by responding to document production requests and interrogatories, being deposed, and have no conflicts with them.  Adequate representation under Rule 23(a)(4) is therefore satisfied.

### B.   The Representative Plaintiffs' Claims Satisfy The Requisites Of Rule 23(b)(3).

In addition to satisfying Rule 23(a), Plaintiffs must show that each putative class falls under at least one of the three subsections of Rule 23(b). Here, the Settlement Class qualifies under Rule 23(b)(3), which authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class

action is superior to other available methods for fairly and efficiently adjudicating of the controversy."[10] Fed. R. Civ. P. 23(b)(3).

Rule 23(b)(3) is "designed to secure judgments binding all class members, save those who affirmatively elect[ ] to be excluded," where a class action will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods., Inc.*, 521 U.S. at 614-15. Certification of the proposed Settlement Class under Rule 23(b)(3) will serve these purposes.

### 1.    Common Legal and Factual Questions Predominate.

The Rule 23(b)(3) predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation . . . ." *Sullivan,* 667 F.3d at 297 (quoting *In re Ins. Broker. Antitrust Litig.*, 579 F.3d 241, 266 (3d Cir. 2009) (internal quotations omitted));  *see also Mercedes-Benz*, 213 F.R.D. at 186 ("Predominance requires that the common issues be both

---

[10] Since this is a settlement class, the Court need not examine the manageability of the class at trial. "[I]n a settlement-only class action . . . the court certifying the class need not examine issues of manageability." *In re Community Bank of N. Va.*, 418 F.3d 277, 306 (3d Cir. 2005) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)) (explaining that issues of individual liability and damages are even less likely to defeat predominance in settlement-only class actions).

numerically and qualitatively substantial in relation to the issues peculiar to individual class members").

"[C]oncerns regarding variations in state law largely dissipate when a court is considering the certification of a settlement class." *Sullivan,* 667 F.3d at 297. Indeed, the existence of "variations in the rights and remedies available to injured class members under the various laws of the fifty states [do] not defeat commonality and predominance." *Id.* at 301 (quoting *Warfarin,* 391 F.3d at 529). *Accord Mirakay v. Dakota Growers Pasta Co., Inc.*, No. 13 Civ. 4429, 2014 WL 5358987, at *6 (D.N.J. Oct. 20, 2014) (citing *Sullivan*); *Waste Mgmt. Holdings, Inc. v. Mowbray,* 208 F.3d 288, 296 (1st Cir. 2000) (rejecting argument that variations in various types of state law claims defeated predominance).

Here, Plaintiffs allege that Defendants conspired to manipulate the price of DIPF sold in the United States, and that Defendants McWane and SIGMA monopolized the domestic market for DIPF. Whether Plaintiffs' claims are analyzed under the Sherman Act or various state laws, common factual and legal questions predominate, including, among others, whether Defendants acted illegally to manipulate the price of DIPF, whether McWane monopolized the market for Domestic DIPF, whether Plaintiffs paid prices greater than they should have absent Defendants' alleged unlawful conduct, whether Plaintiffs sustained injury as a result of Defendants' unlawful behavior, and the amount of damages

25

sustained by Plaintiffs as a result of Defendants' illegal conduct. Accordingly, the predominance requirement is easily satisfied.

### 2.    A Class Action is Superior to Other Methods of Adjudication.

"The superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternate available methods of adjudication." *In re Prudential Ins. Co. of Am. Sales Practices Litig. Agent Actions*, 148 F.3d 283, 316 (3d Cir. 1998) (internal quotation omitted). In evaluating the superiority of a class action, the Court should inquire as to the class members' interest in individually controlling the prosecution of separate actions, the extent and nature of any litigation concerning the controversy already commenced by members of the class, and the desirability or undesirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).

A class action is superior to other available methods for the fair and efficient adjudication of class claims "because litigating all of these claims in one action is far more desirable than numerous separate actions litigating the same issues." *Ins. Broker.*, 579 F.3d at 259. Absent class action certification, the Court may be faced with dozens of individual lawsuits, all of which would arise out of the same set of operative facts. By proceeding as a class action, resolution of common issues alleged in one action will be a more efficient use of judicial resources and bring

26

about a single outcome that is binding on all class members. Also, potential plaintiffs are likely to be geographically dispersed, as are the proposed Class Representatives. As such, the realistic alternative to a class action is many scattered lawsuits with possibly contradictory results for some plaintiffs and defendants. Accordingly, a class action is the superior method of adjudicating Plaintiffs' claims.

### C.   Interim Co-Lead Counsel Should Be Appointed Class Counsel Under Rule 23(g).

Fed. R. Civ. P. 23(g)(1)(A) states that "a court that certifies a class must appoint class counsel." Interim Co-Lead Counsel – comprised of Kirby McInerney LLP, Kohn Swift & Graf, P.C., and Weinstein Kitchenoff & Asher LLC – satisfy the requirements of Fed. R. Civ. P. 23(g) and should be appointed as Class Counsel. As discussed above, Interim Co-Lead Counsel have fairly and adequately represented the Settlement Class and will continue to do so.

## VI.   THE COURT SHOULD APPROVE THE NOTICE PROGRAM.

Once a settlement has been reached on a class-wide basis, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). It is not

necessary to actually notify all Settlement Class members: "due process does not require actual notice, but rather a good faith effort to provide actual notice." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 177 F.R.D. 216, 231 (D.N.J. 1997).

As for content of the notice, Rule 23 requires that the notice use clear, concise, and plain language to inform members of:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). In the settlement context, notice must also be "designed to summarize the litigation and the settlement and to apprise class members of the right and opportunity to inspect the complete settlement documents, papers, and pleadings filed in the litigation." *Prudential Agent Actions*, 148 F.3d at 327 (internal quotations omitted).

### A.    The Notice Program And Form Of Notice.

Plaintiffs propose that notice be given in the form attached hereto as Exhibit B-1.[11] The proposed form of Class notice describes in basic English terms the

---

[11] A proposed Order Granting Preliminary Approval of Class Action Settlement Between Indirect Purchaser Plaintiffs and Defendant McWane, Inc., Granting

*(footnote continued...)*

operation of the Settlement, the considerations that caused Interim Co-Lead Counsel to conclude that the Settlement is fair and adequate, the maximum counsel fees and class representative compensation that may be sought, the procedure for objecting to the Settlement, and the date and place of the fairness hearing.

Plaintiffs' selected claims administrator (*see* Section VII, *infra*), Garden City Group, LLC ("GCG")[12] has prepared a notice program ("Notice Program") detailing the method of notice to inform potential Settlement Class Members of the McWane Settlement. GCG Decl.[13] ¶¶ 7-15. Plaintiffs also propose publishing a Summary Notice in the form attached as Exhibit B-2, which provides an abbreviated but informative description of the action and the proposed Settlement, and also explains how to obtain the more detailed long form Notice (Exhibit B-1) and Proof of Claim (Exhibit B-3) forms. The Notice Program details the trade publications and media outreach including internet advertising for the publication

Conditional Class Certification, and Providing for Notice ("Proposed Order") is attached hereto as Exhibit B. Exhibit B-1 to the Proposed Order is the form of the long form Notice; Exhibit B-2 is the form of the proposed Summary Notice; and Exhibit B-3 is the form of the proposed Claim Form.

[12] GCG is already serving as the claims administrator in the SIGMA and Star settlements, *see, e.g.,* ECF No. 231, and has already noticed the class and adjudicated claims received from class members in connection with those settlements. Plaintiffs will later seek permission of the Court to do a combined distribution of the net proceeds of all three settlements to valid claimants in this matter.

[13] "GCG Decl." refers to the Declaration of Brandon Schwartz Concerning Proposed Notice Program and Administration, attached as Exhibit C hereto.

of the Summary Notice.  GCG Decl. ¶¶ 9-14. The Notice and Proof of Claim forms

will also be posted on a website hosted by the claims administrator dedicated to the

settlement administration of this litigation (*id.* at ¶ 15) as well as on Interim Co-

Lead Counsel's websites.

### B. The Plan Satisfies Rule 23 And Constitutional Due Process.

The form and content of the Notice Program comply with Rule 23 and

constitutional due process. The Notice Program is reasonably calculated to reach

the Settlement Class members. First, the Notice Program contemplates sending

direct notice by first-class mail to all Settlement Class Members reasonably

identified from McWane's records as well as from the records in the possession of

the claims administrator in connection with the SIGMA and Star settlements, and

to a large mailing list to potential Class Members in relevant industries. *Id.* at ¶¶

11-12. Second, the Notice Program includes a trade publication notice component

that involves placing the Summary Notice in relevant periodicals, internet

advertising, and a national newswire that will have substantial reach.  *Id.* at ¶¶ 9,

10, 13-14.

As to the content of notice, all forms of notice use easily understood

language to concisely and clearly inform class members of the nature of the action,

the definition of the class certified, the claims and issues, the ability to appear

through counsel, the ability and process for requesting exclusion, and the binding

effects of the settlement. The notices also explain the terms of the Settlement, the scope of the releases, and how class members may object.

## VII.   REQUEST TO APPOINT GARDEN CITY GROUP, LLC AS CLAIMS ADMINISTRATOR AND CITIBANK AS ESCROW AGENT.

Interim Co-Lead Counsel have selected Garden City Group, LLC and seek approval of it as the claims administrator for the proposed McWane Settlement. GCG is one of the country's largest and most experienced settlement administration firms, and has personnel well-versed in antitrust matters. *Id.* at ¶ 3.

GCG will handle all aspects of providing notice to the Class and claims administration including mailing and publishing the notice, managing a call center and website to handle all questions regarding completion and submission of the claim forms, physically processing the claims and inputting the data on computers, reviewing claims, informing class members whether or not their claims are deficient or complete, and ultimately, distributing the net settlement funds, subject to Court approval.

Interim Co-Lead Counsel have also selected, and nominate for approval, Citibank as escrow agent for the proposed settlement. Citibank is already acting as the court-appointed Escrow Agent in the SIGMA and Star settlements. *See, e.g.,* ECF No. 231.

## VIII. CONCLUSION.

For the foregoing reasons, Plaintiffs respectfully request that this Court: (1) preliminarily approve the settlement between Plaintiffs and McWane; (2) certify the proposed Settlement Class for purposes of the Settlement Agreement; (3) appoint Interim Co-Lead Counsel as Class Counsel for the Settlement Class; (4) approve the Notice Program; and (5) appoint GCG as Claims Administrator and Citibank as Escrow Agent.  A form of the proposed Order is attached as Exhibit B.

Date:  January 26, 2018

David Kovel
Elizabeth Brehm
KIRBY MCINERNEY LLP
825 Third Avenue, 16th Floor
New York, NY 10022
Tel: (212) 317-2300
Fax: (212) 751-2540

*Interim Co-Lead Counsel for Indirect
Purchaser Plaintiffs*

Joseph C. Kohn
William E. Hoese
KOHN, SWIFT & GRAF, P.C.
One South Broad Street
Suite 2100
Philadelphia, PA 19107
Tel: (215) 238-1700
Fax: (215) 238-1968

*Interim Co-Lead Counsel for Indirect
Purchaser Plaintiffs*

Respectfully submitted:

        *s/ Lisa J. Rodriguez*
Lisa J. Rodriguez
SCHNADER HARRISON SEGAL
  & LEWIS LLP
Woodland Falls Corporate Complex
220 East Lake Drive, Suite 200
Cherry Hill, NJ 08002
Tel: (856) 482-5222
Fax: (856) 482-6980

*Interim Liaison Counsel for Indirect
Purchaser Plaintiffs*

Robert S. Kitchenoff
WEINSTEIN KITCHENOFF
 & ASHER LLC
100 South Broad Street, Suite 705
Philadelphia, Pa 19103
Tel: (215) 545-7200
Fax: (215) 545-6535

*Interim Co-Lead Counsel for Indirect
Purchaser Plaintiffs*