# Exhibit  A

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE DUCTILE IRON PIPE FITTINGS ("DIPF") INDIRECT PURCHASER ANTITRUST LITIGATION | Civ. No. 12-169 (AET)(LHG) |

## SETTLEMENT AGREEMENT

This Settlement Agreement (also referred to as "Settlement" or "Agreement") is made and entered into this 13th day of November, 2017 (the "Execution Date"), by and between McWane, Inc. ("McWane") and the Indirect Purchaser Plaintiffs (also referred to as "Indirect Plaintiffs"), individually and on behalf of a Settlement Class of indirect purchasers of ductile iron pipe fittings ("DIPF"), which are parties to litigation consolidated in *In re Ductile Iron Pipe Fittings ("DIPF") Indirect Purchaser Antitrust Litigation*, Case No. 12-169 (D.N.J.) (the "Action").

WHEREAS, Indirect Plaintiffs brought the Action alleging that McWane participated in (a) a conspiracy to raise, fix, maintain, or stabilize prices of DIPF in violation of Section 1 of the Sherman Act and state law and (b) a conspiracy to monopolize and unreasonably restrain trade in the market for Domestic DIPF (as defined below) in violation of Sections 1 and 2 of the Sherman Act and state law;

WHEREAS, McWane denies each and every one of Indirect Plaintiffs' allegations, denies that it engaged in any wrongdoing of any kind, denies that it violated or breached any law or regulation, denies that it has liability as a result of any and all allegations made by Plaintiffs, and has asserted a number of defenses to Indirect Plaintiffs' claims;

1

WHEREAS, Indirect Plaintiffs and McWane agree that neither this Agreement nor any statement made in the negotiation thereof shall be deemed or construed to be an admission by or evidence against McWane of any violation of any state or federal law or of any liability or wrongdoing by McWane or evidence of the truth of any of the Indirect Plaintiffs' allegations or a waiver of any defenses thereto;

WHEREAS, arm's-length settlement negotiations spanning several mediation sessions and utilizing two neutral mediators have taken place between Interim Co-Lead Counsel (as defined below) for Indirect Plaintiffs and counsel for McWane, and this Settlement Agreement has been reached as a result of those negotiations;

WHEREAS, Indirect Plaintiffs have conducted an investigation into the facts and the law regarding the claims asserted in the Action and have concluded that a settlement with McWane according to the terms set forth below is fair, reasonable and adequate and in the best interests of Indirect Plaintiffs and the members of the Settlement Class (as defined below); and

WHEREAS, McWane believes that it is not liable for the claims asserted and has good defenses to Indirect Plaintiffs' claims, but nevertheless has decided to enter into this Settlement Agreement in order to avoid further expense, inconvenience, and the distraction of and delays associated with burdensome and protracted litigation;

NOW, THEREFORE, in consideration of the agreements and releases set forth herein and other good and valuable consideration, and intending to be legally bound, McWane and Indirect Plaintiffs agree that the Action be settled, compromised, and dismissed on the merits and with prejudice as to McWane only, without costs to Indirect Plaintiffs, the Settlement Class, or McWane, except as provided herein, subject to the approval of the Court, on the following terms and conditions:

A.     **Definitions**

The following terms, as used in this Settlement Agreement, have the following meanings:

1.      "Court" means the United States District Court for the District of New Jersey.

2.      "Defendants" collectively means (a) McWane, Inc. and its divisions Clow Water Systems Co., Tyler Pipe Company, and Tyler Union (collectively, "McWane"); (b) SIGMA Corporation ("SIGMA"); and (c) Star Pipe Products, Ltd. ("Star").

3.      "DIPF" means ductile iron pipe fittings. Ductile iron pipe fittings are used to join, among other products, iron and plastic pipes, valves, and hydrants within water systems as well as to change, divide, or direct the flow of water. DIPF includes both Domestic DIPF and DIPF produced abroad.

4.      "Domestic DIPF" means DIPF that is produced by McWane in the United States and is used in pressurized water and wastewater projects in the United States with domestic-only preferences or specifications.

5.      "Effective Date" means the first date by which all of the following have occurred: (a) neither Indirect Plaintiffs nor McWane have/has availed themselves/itself of any right to withdraw from or terminate the Settlement pursuant to Paragraphs 44-47, inclusive, herein; and (b) the Court has entered a final judgment approving this Agreement under Rule 23(e) of the Federal Rules of Civil Procedure; and (c) the Court has entered a final judgment dismissing any Releasee (as defined below) from the Action with prejudice and against Indirect Plaintiffs and as to all members of the Class and without costs; and (d) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of a final judgment as described above has expired or, if appealed, approval of this Agreement and the final judgment has been affirmed in its entirety by the court of last resort to which such appeal has been taken and such

3

affirmance has become no longer subject to further appeal or review, by certiorari or otherwise; provided, however, a modification or reversal on appeal of any amount of fees or expenses awarded by the Court from the Settlement Fund, or the amount of class representative service awards to named Indirect Plaintiffs, shall not by itself prevent this Settlement Agreement from becoming final and effective if all other aspects of the final judgment have been affirmed. Neither the provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. § 1651, shall be taken into account in determining the above-stated times.

6.    "Escrow Account" is the account created to maintain the Settlement Fund.

7.    "Final Approval" means that the approval of the Settlement Agreement by the Court has become final, either by exhaustion of any time for a Settlement Class Member who has properly and timely objected to the Settlement to appeal such approval, with no appeal being filed, or by completion of any appeals filed by Settlement Class Members, which appeals have been resolved to uphold the Settlement.

8.    "Indirect Plaintiffs" or "Named Indirect Plaintiffs" means TC Construction Co., Inc.; Waterline Industries Corporation; Waterline Services, LLC; Yates Construction Company Co., Inc.; City of Hallandale Beach; Wayne County; South Huntington Water District; Water District No. 1 of Johnson County; and Village of Woodridge.

9.    "Interim Co-Lead Counsel" means:

> Joseph C. Kohn, Esquire
> KOHN SWIFT & GRAF, P.C.
> One South Broad Street, Suite 2100
> Philadelphia, PA 19107
> Telephone: 215-238-1700
>
> Robert S. Kitchenoff, Esquire
> WEINSTEIN KITCHENOFF & ASHER LLC
> 100 South Broad Street, Suite 705
> Philadelphia, PA 19110-1061

4

Telephone: 215-545-7200

David Kovel, Esquire
KIRBY MCINERNEY LLP
825 Third Avenue, 16th Floor
New York, NY 10022
Telephone: 212-317-2300

10.    "Non-McWane Defendant" means any of the Defendants other than McWane.

11.    "Notice Amount" means $150,000.

12.    "Opt-Out Purchaser" means a member of the Settlement Class who has timely exercised its rights to be excluded from the Settlement Class.

13.    "Opt-Out Purchases" means the sum of the dollar amount of purchases of DIPF by each Opt-Out Purchaser in each of the Settlement Class States (set forth in Paragraph 19) between January 11, 2008 through December 31, 2013.

14.    "Opt-Out Numerator" means the total dollar amount of Opt-Out Purchases. "Opt-Out Denominator" means the total DIPF sales in each of the Settlement Class States (set forth in Paragraph 19) during the period of January 11, 2008 through December 31, 2013. "Opt-Out Percentage" means the Opt-Out Numerator divided by the Opt-Out Denominator.

15.    "Releasees" means jointly and severally, individually and collectively, McWane and its current and former parents, subsidiaries, affiliates, partners, officers and directors, agents, servants, workmen, employees, and any of their legal representatives (and the predecessors, heirs, executors, administrators, successors, purchasers, and assigns of each of the foregoing). Releasees does not include any Defendant in the Action other than McWane, including any Non-McWane Defendants' current and former parents, subsidiaries or officers, directors or employees. As used in this definition, "affiliates" means entities controlling, controlled by, or under common control with, any of the Releasees.

5

16.     "Releasors" means all Indirect Plaintiffs and the Settlement Class Members, including their current and former parents and subsidiaries, affiliates, partners, officers and directors, agents, employees, and any of their legal representatives (and the predecessors, heirs, executors, administrators, successors, purchasers, and assigns of each of the foregoing) of any claim that is subject to the Release in Paragraphs 30, 31, 32, and 33. As used in this definition, "affiliates" means entities controlling, controlled by, or under common control with, any of the Releasees.

17.     "Settlement" means the settlement of the Action contemplated by this Agreement.

18.     "Settlement Amount" means $1,425,000.00 in United States dollars.

19.     "Settlement Class" means  for purposes of settlement under this Agreement, all persons or entities that reside or have a place of business in the States of Arizona, Arkansas, California, District of Columbia, Florida, Hawaii, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin (the "Settlement Class States") who or that purchased DIPF indirectly from any Defendant at any time from January 11, 2008, through June 30, 2011 or who or that purchased Domestic DIPF indirectly from McWane or SIGMA at any time from September 17, 2009, through December 31, 2013. Excluded from the Settlement Class are Defendants and their parents, subsidiaries and affiliates, whether or not named as a Defendant in this Action, federal governmental entities, and instrumentalities of the federal government.

20.     "Settlement Class Member" means a member of the Settlement Class who does not timely and validly elect to be excluded from the Settlement Class.

21.     "Settlement Fund" shall be the amount paid by McWane in settlement of this Action pursuant to Paragraph 34 of this Agreement and any income earned on the Settlement Fund.

22.     "Settling Parties" means Indirect Plaintiffs and McWane.

**B.     Stipulation to Class Certification**

23.     The parties to this Agreement hereby stipulate for purposes of this Settlement only that the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3) are satisfied and, subject to Court approval, the Settlement Class defined in Paragraph 19 shall be certified for settlement purposes as to McWane.

**C.     Approval of this Settlement Agreement and Dismissal of the Action**

24.     The Settling Parties agree to make reasonable efforts to finalize and effectuate this Agreement, including, but not limited to, cooperating in Plaintiffs' effort to obtain the Court's approval of procedures (including the giving of class notice and scheduling a final fairness hearing under Federal Rules of Civil Procedure 23(c) and (e)) to obtain Final Approval of the Settlement and the final dismissal with prejudice of the Action as to McWane. Counsel for the Settling Parties further agree not to do anything to encourage any member of the Settlement Class to oppose or obstruct the Settlement or to opt out of the Settlement.  McWane shall use its reasonable best efforts to encourage Settlement Class Members not to request exclusion from the Settlement, including any Settlement Class Members who may already have agreed to request exclusion or entered into tolling or similar agreements with McWane or another defendant.

25.     Promptly after the Execution Date, Indirect Plaintiffs shall submit to the Court a motion for preliminary approval of the Settlement, appointing Interim Co-Lead Counsel for Indirect Plaintiffs as Settlement Class Counsel for purposes of this Agreement, and certifying the Settlement Class for purposes of this Settlement.

26.     Interim Co-Lead Counsel for Indirect Plaintiffs shall submit to the Court a motion seeking approval of a plan to provide Notice to the Settlement Class, approval of proposed forms of mail and publication notice, and appointment of a claims administrator. The text of the notice shall be agreed upon by Indirect Plaintiffs and McWane before submission to the Court for approval provided that McWane submits comments to Indirect Plaintiffs within five (5) business days of receipt of the draft notice. If the Parties cannot agree on the substance of the draft notice, Indirect Plaintiffs may submit their version to the Court. Consistent with Rule 23 of the Federal Rules of Civil Procedure, Indirect Plaintiffs shall propose to the Court for its approval that the claims administrator: (a) provide Settlement Class Members reasonably identified from McWane's records as well as from the records in the possession of the claims administrator in connection with the SIGMA and Star settlements, with notice by first-class mail of the Settlement and the date of the hearing to consider the fairness, adequacy, and reasonableness of the Settlement (the "Fairness Hearing"); (b) cause a summary notice of the Settlement and the Fairness Hearing to be published as the Court may direct; and (c) post the notice on the web-sites of the claims administrator and of Interim Co-Lead Counsel. McWane will provide to the claims administrator information relating to Settlement Class Members reasonably identified from its records within fourteen (14) days of the Execution Date.

27.     McWane shall cause notice of the Agreement to be served upon appropriate state and federal officials to the extent and in the manner required by the Class Action Fairness Act, 28 U.S.C. § 1715.

28.     Indirect Plaintiffs shall seek entry of an order and final judgment as to McWane, the text of which shall be agreed upon by Indirect Plaintiffs and McWane before submission to

the Court provided McWane submits comments to Indirect Plaintiffs within five (5) business days of receipt of the draft final judgment:

      (a)    approving the Settlement as fair, reasonable, and adequate within the meaning of Rule 23(e) of the Federal Rules of Civil Procedure and directing the consummation of the Settlement according to its terms;

      (b)    directing, as to McWane only, that the Action be dismissed with prejudice and, except as provided for herein, without costs;

      (c)    reserving exclusive and continuing jurisdiction over the Settlement, including the administration and consummation of this Settlement, to the United States District Court for the District of New Jersey;

      (d)    determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing entry of final judgment as to McWane; and

      (e)    approving the release of claims specified herein as binding and effective as to all Class members and permanently barring and enjoining such class members from asserting any Released Claims (as defined in Paragraph 30).

**D.**    **Releases, Discharge, and Covenant Not to Sue**

29.    Upon the Effective Date and in consideration of payment of the Settlement Amount into the Escrow Account, Releasors shall be deemed to and do completely remise, release, acquit, and forever discharge Releasees from any and all claims, demands, action, suits, injuries, and causes of action, damages of any nature, whenever or however incurred (whether actual, punitive, treble, compensatory, or otherwise), including claims for costs, fees, expenses, penalties, and attorneys' fees, whether class or individual, known or unknown, or otherwise, that Releasors, or any of them, ever had, now has, or hereafter can, shall, or may have, directly, representatively, derivatively, or in any other capacity against any of the Releasees, whether in law or equity or otherwise, arising out of or relating to any conduct, act, or omission of any of the Releasees from the beginning of the World until the Effective Date, concerning the conduct al-

leged or that could have been alleged in the Action against McWane, including, without limita-
tion, any claim arising under any federal or state antitrust, unfair competition, unfair practices,
price discrimination, unjust enrichment, unitary pricing or trade practice law (the "Released
Claims"). However, nothing herein shall release: (a) any claims based upon direct purchases of
DIPF or Domestic DIPF brought by prospective members of any class of direct purchasers; (b)
any claims based upon purchases of DIPF or Domestic DIPF brought by the State of Indiana
through its Attorney General; or (c) claims arising in the ordinary course of business for any
product defect, breach of contract, product performance, or warranty claims relating to DIPF or
Domestic DIPF.

30.    After the Effective Date, Releasors shall not seek, and are hereafter barred and en-
joined from seeking, to recover from any Releasee based, in whole or in part, upon any of the
Released Claims or conduct at issue in the Released Claims. Released Claims do not include any
claims arising out of the enforcement of this Agreement.

31.    In addition to the provisions of Paragraphs 30 and 31 of this Settlement Agree-
ment, Releasors hereby expressly waive and release upon the Effective Date any and all provi-
sions, rights, and benefits conferred by Section 1542 of the California Civil Code, and Section
20-7-11 of the South Dakota Codified Laws, each of which provides that a general release does
not extend to claims which the creditor does not know or suspect to exist in his or her favor at the
time of executing the release, which if known by him must have materially affected his settle-
ment with the debtor, and any similar provision, statute, regulation, rule, or principle of law or
equity of any other applicable state or jurisdiction. The Releasors acknowledge that they are
aware that they may hereafter discover facts in addition to, or different from, those facts which
they know or believe to be true with respect to the subject matter of this Agreement, but that it is

their intention to release fully, finally, and forever all Released Claims, and in furtherance of such intention, this release shall be and remain in effect notwithstanding the discovery or existence of any such additional or different facts.

32.    Upon the Effective Date, McWane and the Releasees shall be deemed to have fully released Indirect Plaintiffs and their directors, officers, employees and counsel from any claims relating to the institution or prosecution of the Action.

**E.    <u>Payment</u>**

33.    McWane's total payment hereunder shall be $1,425,000.00 (the "Settlement Amount"). Up to $150,000 of the Settlement Amount may be used for notice and administration expenses (the "Notice Amount"). McWane shall pay or cause to be paid by wire transfer the Settlement Amount on or before December 8, 2017. The Settlement Amount is an "all in" number that includes, without limitation, all monetary benefits and payments to the Settlement Class, and any class representative service awards, attorneys' fees and expenses, escrow fees, taxes, tax expenses, and all other costs and expenses relating to the Settlement (including but not limited to, administration costs and expenses, notice costs and expense, and settlement costs and expenses). Under no circumstances will McWane be required to pay anything more than the Settlement Amount in connection with this Settlement.

34.    The Notice Amount shall be used only for notice and administration expenses. The amount spent or accrued for notice and administration expenses is not refundable to McWane if the Settlement Agreement is disapproved, rescinded, or otherwise fails to become effective.

F.      **The Settlement Fund**

35.      Each Settlement Class Member shall look solely to the Settlement Fund for settlement and satisfaction, as provided herein, of all claims released by the Releasors. Except and until as provided by order of the Court finally approving and giving effect to the Settlement Agreement, no Settlement Class Member shall have any interest in the Settlement Fund or portion thereof.

36.      The Settlement Fund is intended by the parties to this Agreement to be treated as a "qualified settlement fund" for federal income tax purposes pursuant to Treas. Reg. §1.468B-1, and to that end the parties to this Agreement shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment. At the request of McWane, a "relation back election" as described in Treas. Reg. § 1.468B-1(j) shall be made to enable the Settlement Fund to be treated as a qualified settlement fund from the earliest date possible, and the parties shall take all action as may be necessary or appropriate to this end.

37.      To the extent practicable, the Settlement Fund shall be invested in United States Government Treasury obligations or deposited in a money market mutual fund invested solely in such instruments except that any residual cash balances of $250,000 or less may be deposited in an account that is fully insured by the Federal Deposit Insurance Corporation ("FDIC").  All income earned on the Settlement Fund shall become and remain part of the Settlement Fund.

38.      McWane shall not have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, or administration of the Settlement Fund, including, but not limited to, the costs and expenses of such investment, distribution, and administration, except as expressly otherwise provided in this Agreement.

39.     After the expiration of the time during which this Agreement could be rescinded for any of the reasons set forth in Paragraphs 44 - 45, Interim Co-Lead Counsel may at an appropriate time, determined in their sole discretion, submit a motion seeking approval of the payment of attorneys' fees, expenses, and class representative service awards from the Settlement Fund. McWane shall not oppose any motion by Interim Co-Lead Counsel seeking approval of payment of attorneys' fees, past, current, or future expenses, or class representative service awards from the Settlement Fund.

40.     The distribution of the Settlement Fund shall be administered pursuant to a plan of allocation (the "Plan of Allocation") proposed by Interim Co-Lead Counsel for Indirect Plaintiffs and subject to the approval of the Court. McWane shall have no participatory or approval rights with respect to the Plan of Allocation, and the Court's rejection of any Plan of Allocation shall not affect the validity or enforceability of this Settlement Agreement.

41.     Subject to Court approval, Indirect Plaintiffs and Interim Co-Lead Counsel for Indirect Plaintiffs shall be reimbursed and paid solely out of the Settlement Fund for all expenses and claims including, but not limited to, attorneys' fees and past, current, or future litigation expenses. Attorneys' fees, expenses, and class representative service awards approved by the Court shall be payable from the Settlement Fund upon award, notwithstanding the existence of any timely-filed objections thereto, or potential for appeal therefrom, or collateral attack on the settlement or any part thereof, subject to Interim Co-Lead Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund, if and when, as a result of any appeal or further proceedings on remand, or successful collateral attack, the fee or cost award is reduced or reversed. McWane shall not be liable for any costs, fees, or expenses of any of Plaintiffs' respec-

tive attorneys, experts, advisors, agents, or representatives, but all such costs, fees, expenses, and awards as approved by the Court may be paid out of the Settlement Fund.

42.     The procedure for and the allowance or disallowance of any application for attorneys' fees, expenses, and class representative service awards are matters separate and apart from the Settlement and shall be requested to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement. Any order or proceeding relating solely to an award of attorneys' fees and expenses or class representative service awards, or any appeal from any order relating thereto, or any reversal or modification thereof, shall have no effect on the Settlement and shall not operate to, or be grounds to, terminate or cancel the Settlement or to affect or delay the finality of the final judgment approving the Settlement.

**G.     Rescission**

43.     If the Court refuses to approve this Agreement or any material part hereof; if Court approval is modified or set aside on appeal; if the Court does not enter a final judgment as provided in Paragraph 29 of this Agreement; or if after the Court enters the final judgment, appellate review is sought, and, on such review, such final judgment is not affirmed, then McWane and Indirect Plaintiffs shall each, in their sole discretion, have the option to rescind this Agreement in its entirety by written notice to the Court and to counsel for the other Settling Party filed and served within ten (10) business days of the event triggering the right to rescind. A modification or reversal on appeal of any amount of the Settlement Fund that the Court authorizes to be used to pay Indirect Plaintiffs' attorneys' fees and expenses or class representative service awards shall not be deemed a modification of all or a part of the terms of this Agreement or such final judgment.

44.     McWane shall, in its sole discretion, have the option to terminate this Agreement if customers representing twenty-five (25) percent of all ductile iron pipe fitting dollar purchases made by members of the indirect purchaser plaintiff Settlement Class validly opt-out of the settlement.

(a)     Within ten (10) calendar days after the end of the period established by the Court and set forth in the notice to request exclusion from the Settlement Class, Interim Co-Lead Counsel for Indirect Plaintiffs shall provide McWane, through its counsel, with a written list of all Opt-Out Purchasers.

(b)     Within fifteen (15) calendar days of the delivery of the list described in Paragraph 45 (a), McWane and Interim Co-Lead Counsel will exchange information sufficient to permit the parties to calculate Opt-Out Purchases and the Opt-Out Percentage.  Within fifteen (15) calendar days of the exchange of information in the preceding sentence, McWane shall provide to Interim Co-Lead Counsel for Indirect Plaintiffs its calculation of Opt-Out Purchases and the resulting Opt-Out Percentage for each Opt-Out Purchaser, together with supporting data for Opt-Out Purchases.

(c)     If Indirect Plaintiffs dispute the amount of Opt-Out Purchases or the resulting Opt-Out Percentage as described in Paragraph 44 (b), Indirect Plaintiffs must notify counsel for McWane within ten (10) calendar days from the delivery thereof. Such notification shall include the basis for any dispute and any supporting data or documentation. McWane shall respond to such notification with ten (10) calendar days. If, after good faith discussions about the dispute, the parties cannot agree on a resolution, they shall submit the dispute to the Court for final resolution. Pending such final resolution, there shall be no further disbursements from the Settlement Fund.

(d)      If the total Opt-Out Percentage is equal to or greater than twenty-five percent of all ductile iron pipe fitting dollar purchases made by members of the indirect purchaser plaintiff Settlement Class, then McWane shall have the right to rescind this Agreement by providing written notice to Interim Co-Lead Counsel. Upon receipt of such notice, Interim Co-Lead Counsel may within ten (10) calendar days file with the Court and provide McWane's counsel with written notice of any challenge by Indirect Plaintiffs to such claim of entitlement to rescind this Agreement. In the event the parties are unable to agree upon McWane's right to rescind this Agreement under this subparagraph, they shall submit the issue to the Court.

(e)      Plaintiffs may attempt to obtain rescission of any decision by an Opt-Out Purchaser to request exclusion prior to McWane invoking its right to rescind under this Paragraph.

45.      If the Agreement is rescinded for any reason, then the balance of the Settlement Amount in the Settlement Fund will be returned to McWane. If the Settlement Agreement is rescinded, the Notice Amount already expended for notice costs will not be returned to McWane. Funds to cover notice costs that have been incurred but not yet paid, to an aggregate maximum of the Notice Amount also will not be returned to McWane.

46.      If the Agreement is rescinded for any valid reason, then the Settling Parties will be restored to their respective positions in the Action as of the Execution Date. In that event, the Action will proceed as if this Agreement had never been executed and this Agreement, and representations made in conjunction with it, may not be used in the Action or otherwise for any purpose. McWane and Indirect Plaintiffs expressly reserve all rights if the Agreement does not become effective or if it is rescinded.

**H.**     **Taxes**

47.     Interim Co-Lead Counsel shall be solely responsible for filing all informational and other tax returns necessary to report any net taxable income earned by the Settlement Fund; shall file all informational and other tax returns necessary to report any income earned by the Settlement Fund; and shall be solely responsible for taking out of the Settlement Fund, as and when legally required, any tax payments, including interest and penalties due on income earned by the Settlement Fund. All taxes (including any interest and penalties) due with respect to the income earned by the Settlement Fund shall be paid from the Settlement Fund. McWane shall have no responsibility to make any filings relating to the Settlement Fund and will have no responsibility to pay taxes on any income earned by the Settlement Fund or to pay any taxes on the Settlement Fund unless the Settlement is not consummated or is rescinded and the Settlement Fund is returned to McWane. In the event the Settlement is not consummated or is rescinded and any funds including interest or other income are returned to McWane, McWane shall be responsible for the payment of all taxes (including any interest or penalties), if any, on said interest or other income. McWane makes no representations regarding, and shall not be responsible for, the tax consequences of any payments made pursuant to this Agreement to Interim Co-Lead Counsel or to any Settlement Class member.

**H.**     **Miscellaneous**

48.     The parties stipulate to a stay of the proceedings in the Action, until the Court has finally approved the Settlement.

49.     All rights of any Settlement Class Member against former, current, or future defendants or alleged co-conspirators or any other person other than the Released Parties are specifically reserved by Indirect Plaintiffs and the Settlement Class Members.

17

50.     McWane, Indirect Plaintiffs and each member of the Settlement Class hereby submit to the exclusive jurisdiction of the United States District Court for the District of New Jersey solely for the purpose of any suit, action, proceeding, or resolution of any dispute arising out of or relating to this Agreement or the applicability of this Agreement.

51.     Any press release or other public statement published or authorized by McWane or its representatives regarding this Agreement or any of its terms shall be sent to Interim Co-Lead Counsel for their input and approval, which consent shall not be unreasonably withheld or unduly delayed. Any press release or other public statement published or authorized by Indirect Plaintiffs or their respective representatives regarding this Agreement or any of its terms shall be sent to McWane's counsel for their input and approval, which consent shall not be unreasonably withheld or unduly delayed.

52.     This Agreement constitutes the entire agreement among Indirect Plaintiffs and McWane pertaining to the Settlement of the Action against McWane. This Agreement may be modified or amended only by a writing executed by Indirect Plaintiffs and McWane.

53.     Neither this Agreement nor any negotiations or proceedings connected with it shall be deemed or construed to be an admission by any party or any Releasee of any wrongdoing or liability or evidence of any violation by McWane of any federal or state statute or law either in the Action or in any related action or proceedings, and evidence thereof shall not be discoverable or used, directly or indirectly, in any way, except in a proceeding to interpret or enforce this Agreement. This Agreement represents the settlement of disputed claims and does not constitute, nor shall it be construed as, an admission of the correctness of any position asserted by any party, or an admission of liability or of any wrongdoing by any party, or as an admission

of any strengths or weaknesses of the Indirect Plaintiffs' claims or McWane's defenses. McWane specifically denies any wrongdoing or liability by any of the Releasees.

54.     This Agreement may be executed in counterparts by counsel for Indirect Plaintiffs and McWane, and a facsimile or a .pdf signature shall be deemed an original signature for purposes of executing this Settlement Agreement.

55.     Neither Indirect Plaintiffs nor McWane shall be considered the drafter of this Agreement or any of its provisions for the purpose of any statute, the common law, or rule of interpretation that would or might cause any provision of this Agreement to be construed against the drafter.

56.     The provisions of this Agreement shall, where possible, be interpreted in a manner to sustain their legality and enforceability.

57.     This Agreement shall be governed and interpreted according to the substantive laws of the State of New Jersey, without regard to its choice of law or conflict of law principles.

58.     Each party acknowledges that he, she, or it has been and is being fully advised by competent legal counsel of such party's own choice and fully understands the terms and conditions of this Agreement, and the meaning and import thereof, and that such party's execution of this Agreement is with the advice of such party's counsel and of such party's own free will. Each party represents and warrants that it has sufficient information regarding the transaction and the other parties to reach an informed decision and has, independently and without relying upon the other parties, and based on such information as it has deemed appropriate, made its own decision to enter into this Agreement and was not fraudulently or otherwise wrongfully induced to enter into this Agreement.

59.    Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement.

IN WITNESS WHEREOF, the parties, through their respective counsel, have executed and delivered this Agreement as of the Execution Date.

Robert S. Kitchenoff
WEINSTEIN KITCHENOFF
& ASHER LLC
100 South Broad Street
Suite 705
Philadelphia, PA 19110-1061
215-545-7200

*Interim Co-Lead Counsel for*
*Indirect Purchaser Plaintiffs*

Lisa J. Rodriguez
Schnader Harrison Segal & Lewis LLP
Woodland Falls Corporate Center
220 Lake Drive East
Suite 200
Cherry Hill, NJ 08002-1165
856-482-6980

*Liaison Counsel for Indirect Purchaser Plain-*
*tiffs*

Joseph C. Kohn
William E. Hoese
KOHN SWIFT & GRAF, P.C.
One South Broad Street
Suite 2100
Philadelphia, PA 19107
215-238-1700

*Interim Co-Lead Counsel for*
*Indirect Purchaser Plaintiffs*

David Kovel
KIRBY MCINERNEY LLP
825 Third Avenue, 16th Floor
New York, NY 10022
212-317-2300

*Interim Co-Lead Counsel for*
*Indirect Purchaser Plaintiffs*

20

59.     Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement.

IN WITNESS WHEREOF, the parties, through their respective counsel, have executed and delivered this Agreement as of the Execution Date.

_____
Robert S. Kitchenoff
WEINSTEIN KITCHENOFF
& ASHER LLC
100 South Broad Street
Suite 705
Philadelphia, PA 19110-1061
215-545-7200

*Interim Co-Lead Counsel for*
*Indirect Purchaser Plaintiffs*

_____
Joseph C. Kohn
William E. Hoese
KOHN SWIFT & GRAF, P.C.
One South Broad Street
Suite 2100
Philadelphia, PA 19107
215-238-1700

*Interim Co-Lead Counsel for*
*Indirect Purchaser Plaintiffs*

_____
Lisa J. Rodriguez
Schnader Harrison Segal & Lewis LLP
Woodland Falls Corporate Center
220 Lake Drive East
Suite 200
Cherry Hill, NJ 08002-1165
856-482-6980

*Liaison Counsel for Indirect Purchaser Plain-*
*tiffs*

_____
David Kovel
KIRBY MCINERNEY LLP
825 Third Avenue, 16th Floor
New York, NY 10022
212-317-2300

*Interim Co-Lead Counsel for*
*Indirect Purchaser Plaintiffs*

20

Joseph A. Ostoyich
William C. Lavery
Jana I. Seidl
BAKER BOTTS LLP
1229 Pennsylvania Avenue, NW
Washington, DC  20004

Lee E. Bains, Jr.
Thomas W. Thagard III
MAYNARD, COOPER & GALE, PC
109 Sixth Avenue North, Suite 2400
Birmingham, AL  35203

J. Alan Truitt
KAZMAREK MOWERY CLOUD LASETER, L.L.P.
3008 7th Avenue South
Birmingham, AL  35233

Mark Salad Morgan
DAY PITNEY LLP
One Jefferson Road
Parsippany, NJ  07054-2891

*Counsel for McWane Inc.*