# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
:
IN RE DUCTILE IRON PIPE FITTINGS :     Civ. No. 12-169 (AET) (LHG)
("DIPF") INDIRECT PURCHASER :
ANTITRUST LITIGATION :
_____ :

---

## MEMORANDUM OF LAW IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND SERVICE AWARDS TO THE CLASS REPRESENTATIVES

---

David Kovel
Elizabeth Brehm
KIRBY MCINERNEY LLP
825 Third Avenue, 16th Floor
New York, NY 10022
Tel: (212) 317-2300
Fax: (212) 751-2540

Joseph C. Kohn
William E. Hoese
KOHN, SWIFT & GRAF, P.C.
1600 Market Street, Suite 2500
Philadelphia, PA 19103
Tel: (215) 238-1700
Fax: (215) 238-1968

Robert S. Kitchenoff
WEINSTEIN KITCHENOFF
 & ASHER LLC
100 S. Broad Street, Suite 705
Philadelphia, Pa 19110-1061
Tel: (215) 545-7200
Fax: (215) 545-6535

*Interim Co-Lead Counsel for Indirect
Purchaser Plaintiffs*

Lisa J. Rodriguez
SCHNADER HARRISON SEGAL &
LEWIS LLP
Woodland Falls Corporate Complex
220 East Lake Drive, Suite 200
Cherry Hill, NJ 08002
Tel: (856) 482-5222
Fax: (856) 482-6980

*Interim Liaison Counsel for Indirect
Purchaser Plaintiffs*

# TABLE OF CONTENTS

I.    INTRODUCTION ...........................................................................................1

II.   BACKGROUND ............................................................................................3

      A.    Prosecution Of The Case....................................................................3

      B.    The Settlements And The Combined Settlement Funds ......................5

      C.    Notice Regarding The Request For Attorneys' Fees, Reimbursement
            Of Expenses, And Service Awards .....................................................7

III.  THE REQUESTED ATTORNEYS' FEES ARE REASONABLE...............8

      A.    A Reasonable Percentage Of The Fund Recovered Is The Appropriate
            Method For Awarding Class Counsel's Attorneys' Fees In This
            Common Fund Settlement...................................................................9

      B.    A Fee Award Of One-Third Of The Settlement Funds Is Fair And
            Reasonable........................................................................................11

            1.    An Award of One-third is Reasonable Based on the Amount of
                  the Settlement Funds and the Number of Entities Benefitted. .12

            2.    Analysis of any Potential Objections to the Fee Request is
                  Premature. ...............................................................................13

            3.    Class Counsel are Skilled and Efficient Litigators. ..................13

            4.    The Complexity and Duration of the Litigation ......................14

            5.    Plaintiffs' Counsel Faced a Substantial Risk of Nonpayment..15

            6.    Plaintiffs' Counsel Devoted Thousands of Hours to Prosecuting
                  this Action. ..............................................................................16

            7.    One-third of the Settlement Funds is a Typical and Reasonable
                  Fee Award for Cases Like this One. ........................................17

            8.    Plaintiffs' Counsel had to Fully Prosecute the Action to Obtain
                  a Monetary Recovery for the Class Members. .........................20

i

9.    The Requested Fee is Consistent with the Percentage Fee that Would Have Been Negotiated in a Private Contingent Fee Arrangement.............................................................................21

10.   The Factor of any Innovative Terms is Neutral. ......................22

C.    The Lodestar Cross-Check Confirms The Reasonableness Of The Requested Fee.....................................................................23

1.    Class Counsel's Lodestar is Reasonable..................................24

2.    The Presence of a Negative Multiplier Supports the Requested Fee. ..........................................................................25

IV.   PLAINTIFFS' COUNSEL SHOULD BE REIMBURSED FOR THEIR OUT-OF-POCKET EXPENSES ....................................................26

V.   THE COURT SHOULD APPROVE CLASS REPRESENTATIVES SERVICE AWARDS ....................................................................27

VI.  CONCLUSION............................................................................29

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aetna Inc. Securities Litig.*,
No. CIV. A. MDL 1219, 2001 WL 20928 (E.D. Pa. Jan. 4, 2001) ....................26

*In re AremisSoft Corp. Sec. Litig.*,
210 F.R.D. 109 (D.N.J. 2002)..................................................................19

*In re AT&T Corp. Sec. Litig.*,
455 F.3d 160 (3d Cir. 2006) ...................................................................10

*In re Auto. Refinishing Paint Antitrust Litig.*,
No. 1426, 2008 WL 63269 (E.D. Pa. Jan. 3, 2008)...........................................18

*In re Blech Sec. Litig.*,
No. 94 Civ. 7696 (RWS), 2002 WL 31720381 (S.D.N.Y. Dec. 4,
2002) ...................................................................................................19

*Bradburn Parent Teacher Store, Inc. v. 3M*,
513 F. Supp. 2d 322 (E.D. Pa. 2007)........................................................18, 22

*Castro v. Sanofi Pasteur Inc.*,
Civ. No. 11-7178, 2017 WL 4776626 (D. N.J. Oct. 23, 2017) ....................11, 17

*Caudle v. Bristow Optical Co., Inc.*,
224 F.3d 1014 (9th Cir. 2000) .................................................................23

*In re Cendant Corp. Prides Litig.*,
243 F.3d 722 (3d Cir. 2001) ...................................................................14

*In re Continental Ill. Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) ...................................................................21

*In re Corel Corp. Sec. Litig.*,
293 F. Supp. 2d 484 (E.D. Pa. 2003).......................................................18, 26

*Cullen v. Whitman Medical Corp.*,
197 F.R.D. 136 (E.D. Pa. 2000)...............................................................14

iii

*In re Diet Drugs Prod. Liab. Litig.*,
 582 F.3d 524 (3d Cir. 2009) ...........................................................10, 11, 12, 23

*In re Fasteners Antitrust Litig.*,
 No. 08-md-1912, 2014 WL 296954 (E.D. Pa. Jan. 27, 2014).................3, 17, 22

*In re Flonase Antitrust Litig.*,
 291 F.R.D. 93 (E.D. Pa. 2013).....................................................................15, 18

*In re Flonase Antitrust Litig.*,
 951 F. Supp. 2d 739 (E.D. Pa. 2013)...........................................................17, 18

*In re Gen. Instrument Sec. Litig.*,
 209 F. Supp. 2d 423 (E.D. Pa. 2001)..................................................................19

*Gunter v. Ridgewood Energy Corp.*,
 223 F.3d 190 (3d Cir. 2000) ...............................................................................11

*Hall v. Best Buy Co.*,
 274 F.R.D. 154 (E.D. Pa. 2011)..........................................................................16

*In re Hypodermic Prods. Antitrust Litig.*,
 No. 05-1602, ECF 461 (D.N.J. Apr. 10, 2013) ..................................................18

*In re Ikon Office Solutions, Inc.*,
 194 F.R.D. 166 (E.D. Pa. 2000)..............................................................14, 22, 26

*In re Ins. Brokerage Antitrust Litig.*,
 579 F.3d 241 (3d Cir. 2009) ...............................................................................10

*In re K-Dur Antitrust Litig.*,
 No. 01-cv-1652, ECF 1058 (D.N.J. Oct. 5, 2017)...............................................17

*Kirsch v. Delta Dental*,
 534 Fed. Appx. 113 (3d Cir. 2013)..................................................................2, 10

*In re Linerboard Antitrust Litig.*,
 MDL 1261, 2004 WL 1221350 (E.D. Pa. June 2, 2004)............................*passim*

*Lazy Oil Co. v. Wotco Corp.*,
 95 F. Supp. 2d 290 (W.D. Pa. 1997)...................................................................17

iv

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ...............................................................19

*Marchbanks Truck Serv. v. Comdata Network, Inc.*,
    No. 07-1078-JKG, 2014 WL 12738907 (E.D. Pa. July 14, 2014) ..........3, 12, 18

*McGee v. Ann's Choice, Inc.*,
    No. 12-2664, 2014 WL 2514582 (E.D. Pa. June 4, 2014) ................................28

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ............................................................................19

*Mehling v. New York Life Ins. Co.*,
    248 F.R.D. 455 (E.D. Pa. 2008).........................................................................22

*Meijer, Inc. v. 3M*,
    No. 04-5871, 2006 WL 2382718 (E.D. Pa. Aug. 14, 2006).............................26

*Menkes v. Stolt-Nielsen S.A.*,
    No. 3:03CV00409(DJS), 2011 WL 13234815 (D. Conn. Jan. 25,
    2011) ..................................................................................................................19

*In re Merck & Co. Vytorin ERISA Litig.*,
    Civ. No. 08-CV-285, 2010 WL 547613 (D.N.J. Feb. 9, 2010) ........................22

*In re Metoprolol Succinate Antitrust Litig.*,
    No. 06-52, ECF 193 (D. Del. Feb. 21, 2012) ...................................................18

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
    No. 06 Civ. 4270 (PAC), 2009 WL 5851465 (S.D.N.Y. Mar. 31,
    2009) ..................................................................................................................19

*Montague v. Dixie Nat. Life Ins. Co.*,
    No. 3:09-00687-JFA, 2011 WL 3626541 (D.S.C. Aug. 17, 2011) ...................22

*In re Motorsports Merch. Antitrust Litig.*,
    112 F. Supp. 2d 1329 (N.D. Ga. 2000).............................................................15

*Mylan Pharmaceuticals, Inc. v. Warner Chilcott Public Limited
    Company*,
    No. 12-3824, 2014 WL 12778314 (E.D. Pa. Sep. 15, 2014).............................22

v

*Mylan Pharms., Inc. v. Warner Chilcott Public Ltd., Co.*,
  No. 12-3824, ECF 665 (E.D. Pa. Sept. 15, 2014)................................................18

*In re Neurontin Antitrust Litig.*,
  No. 02-1830, ECF 114 (D.N.J. Aug. 6, 2014).............................................12, 18

*Nichols v. SmithKline Beecham Corp.*,
  No. Civ.A.00-6222, 2005 WL 950616 (E.D. Pa. April 22, 2005) ....................26

*In re OSB Antitrust Litig.*,
  No. 2:06-cv-00826-PD, Order, ECF 947.......................................................13, 21

*In re Plastic Tableware Antitrust Litig.*,
  No. 94-3564, 1995 WL 723175 (E.D. Pa. Dec. 4, 1995) ..................................28

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998) ........................................................................11, 24

*In re Ravisent Techs., Inc. Sec. Litig.*,
  No. Civ.A.00-CV-1014, 2005 WL 906361 (E.D. Pa. Apr. 18,
  2005) ........................................................................................................................19

*In re Remeron Direct Purchaser Antitrust Litig.*,
  No. Civ. 03-0085, 2005 WL 3008808 (D.N.J. Nov. 9, 2005)............................21

*In re Rent-Way Sec. Litig.*,
  305 F. Supp. 2d 491 (W.D. Pa. 2003)..........................................................16, 26

*In re Rite Aid Corp. Securities Litigation*,
  396 F.3d 294 (3d Cir. 2005) ...............................................................23, 24, 25

*Rochester Drug Co-Operative, Inc. v. Braintree Labs., Inc.*,
  No. 1:07-cv-00142, ECF 243 (D. Del. May 31, 2012)......................................18

*Shaw v. Interthinx, Inc.*,
  No. 13–cv–01229–REB–NYW, 2015 WL 1867861 (D. Colorado
  Apr. 21, 2015).........................................................................................................19

*In re Southeastern Milk Antitrust Litig.*,
  No. 2:07-CV 208, 2013 WL 2155387 (E.D. Tenn. May 17, 2013) .................20

*Standard Iron Works v. ArcelorMittal*,
  No. 08 C 5214, 2014 WL 7781572 (N.D. Ill. Oct. 22, 2014)...........................19

{00183041 }

*Steele v. Welch*,
No. 03-6596, 2005 WL 3801469 (E.D. Pa. May 20, 2005)
(Baylson, J.) ..................................................................................18

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011) ...........................................................28

*In re Tricor Direct Purchaser Antitrust Litig.*,
No. 05-cv-340, 2009 U.S. Dist. LEXIS 133251 (D. Del. April 23,
2009) ..............................................................................................18

*In re U.S. Foodservice, Inc. Pricing Litig.*,
No. 07-md-01894, ECF 521 (D. Conn. Dec. 9, 2014)......................19

*In re Universal Service Fund Telephone Billing Practices Litigation*,
No. 02–MD–1468–JWL, 2011 WL 1808038 (D. Kan. May 12,
2011) ..............................................................................................19

*In re Viropharma Inc. Sec. Litig.*,
No. 12-2714, 2016 WL 312108 (E.D. Pa. Jan. 25, 2016) .................11

*In re Wellbutrin SR Antitrust Litig.*,
No. 04-5525, 2011 U.S. Dist. LEXIS 158833 (E.D. Pa. Nov. 21,
2011) ..............................................................................................18

## Rules

Fed.R.Civ. P. 23(h) ...........................................................................7, 8, 9

## Other Authorities

Denise N. Martin, Vinita M. Juneja, Todd S. Foster & Frederick C.
Dunbar, *Recent Trends IV: What Explains Filings and Settlements
in Shareholder Class Actions?* 2 STAN. J.L. BUS. & FIN. (1996) .......19

Eisenberg & Miller, *Attorney Fees in Class Action Settlements: An
Empirical Study,* J. Empirical Legal Stud. 27 (2004)........................21

Report of Third Circuit Task Force*: Court Awarded Attorney Fees*,
108 F.R.D. 237 (1985).......................................................................11

{00183041 }

Report of Third Circuit Task Force*: Selection of Class Counsel*, 208
    F.R.D. 340  (2002) ............................................................................... 11

{00183041 }

Indirect Purchaser Plaintiffs ("Plaintiffs"), respectfully move the Court for an Order: (1) awarding Plaintiffs' Counsel[1] one-third of the $4,071,250 combined SIGMA Corporation, Star Pipe Products Ltd., and McWane, Inc. settlement funds as attorneys' fees; (2) reimbursing Plaintiffs' Counsel's $87,270.35 in out-of-pocket litigation costs and expenses; and (3) awarding each Class Representative a service award of $15,000 for its contribution to the litigation, to be paid from the combined settlement funds.

## I.    INTRODUCTION

During the past seven years, Plaintiffs' Counsel devoted thousands of hours and expended tens of thousands of dollars of unreimbursed out-of-pocket expenses to pursue antitrust claims on behalf of indirect purchasers of ductile iron pipe fittings ("DIPF"). In broad outline this work encompassed:

- Factual and legal research;
- Drafting pleadings;
- Opposing motions to dismiss;
- Merits and expert discovery;
- Class certification; and

---

[1] For purposes of this Motion, Plaintiffs' Counsel include the three firms appointed as Interim Co-Lead Counsel and the firm that was appointed as Interim Liaison Counsel for the indirect purchasers, as well as the other firms representing Plaintiffs that contributed to the prosecution of the litigation. Plaintiffs' Counsel's Fee and Expense Declarations and unreported decisions cited herein, are attached to Exhibit 1, Declaration of Robert S. Kitchenoff.

- Settlement.

The success of those efforts is evident in the three settlements negotiated by Interim Co-Lead Counsel. The settlements were obtained after prolonged and difficult negotiations with Defendants, each of which had significant resources at its disposal and was represented by highly capable and experienced counsel. The work of Interim Co-Lead Counsel is, however, not over.  Interim Co-Lead Counsel will expend hundreds of additional hours preparing for the June 13, 2018 final approval hearing on the McWane settlement, and overseeing the claims processing and the distribution of settlement funds to the class member claimants.

Even though Plaintiffs' Counsel have been litigating the case for years and settled with two Defendants two years ago, Interim Co-Lead Counsel waited until the conclusion of the litigation to request an award of attorneys' fees, reimbursement of out-of-pocket litigation expenses, and service awards for the Class Representatives.[2] Plaintiffs' Counsel's request for a fee award of one-third of the SIGMA, Star, and McWane settlement funds is reasonable and fully consistent with the record in the case and the law on fee awards in the Third Circuit. *See*, *e.g.*, *Kirsch v. Delta Dental*, 534 Fed. Appx. 113, 116 (3d Cir. 2013) (upholding fee of

---

[2] The Court authorized Interim Co-Lead Counsel to use up to $475,000 from the SIGMA and Star settlements to pay for litigation expenses.  ECF No. 274, ¶ 21. Not all of this money was expended, and the remainder of $219,473.52 (as of March 31, 2018) will be added to the settlement funds available for distribution.

2

"roughly 36% of the District Court's conservative valuation" of the settlement value); *Marchbanks Truck Serv. v. Comdata Network, Inc.*, No. 07-1078-JKG, 2014 WL 12738907, at *2-3 (E.D. Pa. July 14, 2014); *In re Fasteners Antitrust Litig.*, No. 08-md-1912, 2014 WL 296954, at *7 (E.D. Pa. Jan. 27, 2014); *see also* § III.B.7, *infra*. Moreover, the fee request represents less than 27% of Plaintiffs' Counsel's lodestar, based on historical hourly rates, which lodestar was reduced by Interim Co-Lead Counsel seeking compensation only for time expended from May 10, 2012, the date the Court appointed Interim Co-Lead and Liaison Counsel, through March 31, 2018, and does not take into account time spent since March 31. Accordingly, in light of the facts of the case, the result obtained, and the other factors discussed more fully herein, Plaintiffs respectfully request that the Motion be granted.

## II.   BACKGROUND

### A.   Prosecution Of The Case

The history of the litigation is set forth at length in the Memorandum of Law in Support of Indirect Purchaser Plaintiffs' Motion for Final Approval of Class Action Settlement With Defendant McWane, Inc. and Plan of Allocation, which is being filed concurrently with this Motion. A summary is provided here.

This litigation began in 2012, when Plaintiffs filed lawsuits against SIGMA, Star, and McWane on behalf of indirect purchasers of DIPF. On May 10, 2012, the

{00183041 }

Court appointed the undersigned law firms to serve as interim co-lead and liaison counsel for the Plaintiffs.[3] The Court also ordered consolidation of the indirect purchaser actions and instructed Indirect Purchaser Plaintiffs to file a consolidated amended complaint.[4]

For seven years, Interim Co-Lead Counsel, along with other law firms working under their supervision, have devoted 9,414.70 hours developing and advancing the Plaintiffs' claims.  The work done by Plaintiffs' Counsel included, but was not limited to:

- Investigating the DIPF industry and working with the Class Representatives to draft and file complaints and amended complaints;

- Negotiating with Defendants and coordinating with the Direct Purchaser Plaintiffs on discovery matters and reports to the Court;

- Responding to Defendants' discovery requests (interrogatories and requests for production of documents), negotiating the scope of that discovery, and processing, reviewing, and analyzing document productions from each Class Representative for potential production to Defendants;

- Drafting discovery requests directed to third parties, and coordinating that discovery with the Direct Purchaser Plaintiffs;

- Reviewing and analyzing the voluminous FTC record, including documents produced by Defendants, trial transcripts and exhibits, briefs, findings of fact and conclusions of law, and opinions by the FTC and courts;

- Reviewing and analyzing documents and data produced by Defendants and third parties;

---

[3] ECF No. 58.

[4] ECF No. 60.

{00183041 }

- Briefing and arguing motions to dismiss;

- Briefing and arguing a motion to compel discovery from a third party in another District Court;

- Consulting with an expert to develop opinions on antitrust impact and damages for purposes of class certification, summary judgment, and trial;

- Preparing for and participating in the depositions of defense and third-party fact witnesses, in coordination with the Direct Purchaser Plaintiffs;

- Preparing for and examining the defense expert witness, in coordination with the Direct Purchaser Plaintiffs;

- Preparing for and defending the depositions of the Class Representatives;

- Preparing for and defending the deposition of Dr. James T. McClave, Plaintiffs' expert;

- Briefing the motion to exclude the opinions of Dr. McClave;

- Briefing and arguing the motion for class certification;

- Preparing for and attending multiple mediations, which eventually resulted in settlements in principle with all the Defendants; and

- Negotiating separate settlements with SIGMA, Star, and McWane; working with Garden City Group to design a notice program and to send notices to the members of the settlement classes and to create and maintain a settlement website; preparing the settlement agreements and the required notices, orders, and preliminary and final approval briefs; and obtaining approval from the Court.

### B.   The Settlements And The Combined Settlement Funds

After the motions to dismiss were decided and discovery had commenced, mediations were held with all the Defendants.  As a result of the first wave of mediations the Plaintiffs resolved their claims against SIGMA and Star.  The

5

settlements, reached separately in June 2015, with SIGMA and Star for $2,005,000 and $641,250, respectively, were granted final approval on June 8, 2016.[5]

The case against McWane continued, including discovery, the filing of Plaintiffs' class certification motion, brief, and expert report and their opposition to McWane's motion to exclude Dr. McClave's opinions.  In addition, Interim Co-Lead Counsel prepared for and defended Dr. McClave's deposition, and took the deposition of McWane's expert.

After another mediation with McWane in December 2016 did not result in a settlement, Interim Co-Lead Counsel filed the class reply along with the reply report of their expert.  The Court heard argument on the class motion in May 2017. The Court reserved its decision on the motions, and suggested that it might want to hear testimony from both sides' experts before ruling.

 In June 2017, the Court sent the parties back to mediation.  After two more attempts, in California in July and in New York City in September, Plaintiffs and McWane were able to reach a settlement in principle.  After further negotiation and drafting, Plaintiffs and McWane executed a settlement agreement on November 13, 2017, which provides for a payment by McWane of $1,425,000 in exchange for

---

[5] ECF No. 274.

a release. The Court preliminarily approved the McWane settlement and authorized the dissemination of class notice on February 27, 2018.[6]

If the McWane settlement is finally approved, the combined indirect purchaser settlements will total $4,071,250. This total, plus accrued interest, constitutes the settlement funds from which Interim Co-Lead Counsel now seek an award of attorneys' fees, reimbursement of litigation expenses, and service awards to the Class Representatives.

### C.  Notice Regarding The Request For Attorneys' Fees, Reimbursement Of Litigation Expenses, And Service Awards

In its Order granting preliminary approval, the Court authorized the dissemination of notice to the members of the settlement class (the "Notice").[7]   As required by Fed. R. Civ. P. 23(h), the Notice informed members of all the settlement classes that Interim Co-Lead Counsel would request attorneys' fees, reimbursement of litigation expenses, and service awards for the Class Representatives, and explained how class members could object to any of the requests, as follows:

**17. How Will The Lawyers Be Paid?**

You are not personally responsible for payment of attorneys' fees or expenses for Class Counsel. Class Counsel for the indirect purchasers will ask the Court for an award of attorneys' fees of up to 1/3 (33.33%) of the total McWane, SIGMA, and Star Settlement Funds of $4,071,250

---

[6] ECF No. 335.

[7] The Notice is attached as Exhibit 2.

and for reimbursement of litigation expenses. In addition, Class Counsel will ask the Court to approve service awards of $15,000 to each of the eight Class Representatives for their services representing the classes. All awards of attorneys' fees, reimbursement of expenses, and service awards will be paid from the total Settlement Fund after the Court approves them.[8]

On pages 9-10 of the Notice, class members were informed that they could

> "object if you do not like any part the McWane Settlement, or if you disagree with the Plan of Allocation or any part of Class Counsel's Request for an Award of Attorneys' Fees, Reimbursement of Expenses, and Service Awards for the Class Representatives. You should give reasons for your objections…
> If you are in either the SIGMA or Star class, you can object to the Request for an Award of Attorneys' Fees, Reimbursement of Expenses, and Service Awards for the Class Representatives."

The Notice goes on to describe the procedure and deadline for any objection. *Id.* at 9-10.

No objections have been received as of the date of the filing of this Motion. The deadline for objections is May 23, 2018, however, and Interim Co-Lead Counsel will provide the Court with a final report on any objections and responses thereto on or before June 6, 2018.

## III.    THE REQUESTED ATTORNEYS' FEES ARE REASONABLE

Rule 23(h) of the Federal Rules of Civil Procedure provides that "[i]n a certified class action, the court may award reasonable attorney's fees and

---

[8] Notice, p. 9.

{00183041 }

nontaxable costs that are authorized by law or by the parties' agreement."  As discussed above, Plaintiffs' Counsel have complied with the requirements of Rule 23(h) (1) and (2), which provides for notice to the class of the attorneys' fee request and an opportunity to object. Thus, what remains for the Court to determine is whether the requested fee is reasonable and fair to the class members and Plaintiffs' Counsel under the circumstances.

Plaintiffs' Counsel respectfully request an award of attorneys' fees of one-third of the $4,071,250 combined SIGMA, Star, and McWane settlement funds. Plaintiffs' Counsel's fee request is reasonable and consistent with fee awards in this Circuit, particularly in light of the length and complexity of this case, the nature and extent of Plaintiffs' Counsel's efforts in litigating the case and, in the end, negotiating substantial settlements, and the litigation risks assumed. Moreover, cross-checking the fee requested against Plaintiffs' Counsel's lodestar of $5,098,360.75 (based upon historical rates) shows that the requested fee is much less than the lodestar, which also supports its reasonableness.

### A.    A Reasonable Percentage Of The Fund Recovered Is The Appropriate Method For Awarding Class Counsel's Attorneys' Fees In This Common Fund Settlement

Courts have long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*,

9

444 U.S. 472, 478 (1980) *See also Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977) ("a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees"). *Accord Trustees v. Greenough*, 105 U.S. 527 (1881)*; Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 165-67 (1939); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 820 n.39 (3d Cir. 1995); *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 187 (3d Cir. 2005). Courts have consistently approved the compensation of counsel from a common fund because "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994).

In this Circuit, district courts have discretion to award fees in common fund cases based on either the percentage-of-the-fund method or the lodestar/multiplier method. *In re Diet Drugs Prod. Liab. Litig.*, 582 F.3d 524, 539 (3d Cir. 2009); *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006). The percentage-of-the-fund method is preferred in this Circuit and would be properly applied here. *See*, *e.g.*, *Kirsch*, 534 Fed. Appx. at 115; *In re Ins. Brokerage Antitrust Litig.*, 579

10

F.3d 241, 280 (3d Cir. 2009); *Diet Drugs*, 582 F.3d at 540; *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3d Cir. 1998).[9]

**B.     A Fee Award Of One-Third Of The Settlement Funds Is Fair And Reasonable**

In determining what constitutes a reasonable percentage fee award, a district court should consider the ten factors identified by the Third Circuit in *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000), and *Prudential*, 148 F.3d at 283. As the Third Circuit explained in *Diet Drugs*, the *Gunter/Prudential* factors are:

> (1) the size of the fund created and the number of beneficiaries, (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel, (3) the skill and efficiency of the attorneys involved, (4) the complexity and duration of the litigation, (5) the risk of nonpayment, (6) the amount of time devoted to the case by plaintiffs' counsel, (7) the awards in similar cases, (8) the value of benefits attributable to the efforts of class counsel

---

[9] *See also Report of Third Circuit Task Force: Court Awarded Attorney Fees*, 108 F.R.D. 237, 255-56 (1985); *Report of Third Circuit Task Force: Selection of Class Counsel*, 208 F.R.D. 340, 355 (2002) ("A percentage fee, tailored to the realities of the particular case, remains superior to any other means of determining a reasonable fee for class counsel."); *Castro v. Sanofi Pasteur Inc.*, 2017 WL 4776626, at *7 (D. N.J. Oct. 23, 2017) ("In common fund cases such as this one, attorneys' fees are typically awarded through the percentage-of-recovery method."); *In re Viropharma Inc. Sec. Litig.*, No. 12-2714, 2016 WL 312108, at *15 (E.D. Pa. Jan. 25, 2016) ("The percentage-of-recovery method is 'generally favored' in cases involving a settlement that creates a common fund."); *In re Linerboard Antitrust Litig.*, MDL 1261, 2004 WL 1221350, at *3 (E.D. Pa. June 2, 2004) ("the percentage of recovery method is the proper one to calculate attorneys' fees."); *Manual for Complex Litigation*, *Fourth*, § 14.121 (2004) (reporting that "the vast majority of courts of appeals now permit or direct district courts to use the percentage-fee method in common-fund cases").

{00183041 }

relative to the efforts of other groups, such as government agencies conducting investigations, (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and (10) any innovative terms of settlement.

582 F.3d at 541 (internal citations omitted). Consideration of these factors demonstrates that Plaintiffs' Counsel's request for one-third of the settlement funds as a fee award is reasonable.

### 1. An Award of One-Third is Reasonable Based on the Amount of the Settlement Funds and the Number of Entities Benefitted.

The total recovery achieved in this case - over $4,000,000 - is substantial, particularly in light of the complexity, duration, and expense of ongoing litigation and the number of class members who may participate. A one-third fee is routinely awarded for settlement funds of much larger size.[10]  As discussed later, establishing liability and damages at trial and securing recovery for the class members would have been risky and uncertain, and at the time of the settlement with McWane, Plaintiffs also faced uncertainty as to whether the Court would grant their class motion or McWane's motion to exclude the opinions of Plaintiffs' damages expert. This factor weighs in favor of the requested fee award.

---

[10] *See*, *e.g.*, *In re Neurontin Antitrust Litig.*, No. 02-1830, ECF 114 (D.N.J. Aug. 6, 2014) (awarding one-third fee of $191 million settlement); *Marchbanks Truck Serv. v. Comdata Network, Inc.*, 2014 WL 12738907 (E.D. Pa. July 14, 2014) (awarding requested one-third of $130 million settlement fund).

{00183041 }

## 2.   Analysis of any Potential Objections to the Fee Request is Premature.

As set forth above, the Notice advised class members that Interim Co-Lead Counsel would apply for an award of attorneys' fees of up to one-third of the settlement funds, reimbursement of expenses, and service awards for the Class Representatives. It also advised class members that they could object to these requests, and provided instructions on how to do so. Because the deadline for objections is May 23, 2018, if there are any objections Interim Co-Lead Counsel will address them in their responsive filing due on June 6, 2018. No objections have been filed to date.

## 3.   Class Counsel are Skilled and Efficient Litigators.

Plaintiffs' Counsel are highly experienced in litigating complex class action antitrust cases. Plaintiffs' Counsel's built the necessary evidentiary record in this case for class certification, impact, and damages to the indirect purchasers, and ultimately were able to settle the claims for over $4,000,000. The last part is the most important, because in the end, "[t]he result achieved is the clearest reflection of petitioners' skill and expertise." *Linerboard*, 2004 WL 1221350, at *5.[11] Here,

---

[11] *See also In re OSB Antitrust Litig.*, No. 2:06-cv-00826-PD, Order, ECF 947 at *5 (E.D. Pa. Dec. 9, 2008) ("'[T]he most significant factor [in evaluating claims for counsel fees] . . . is the quality of representation, as measured by the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of

13

the recovery achieved is substantial, thus further evidencing the skill and efficiency

of Plaintiffs' Counsel. This result was achieved in the face of a vigorous defense

by Defendants, especially McWane, all of which were represented by skilled

counsel at some of the leading defense firms in the United States. Accordingly, this

factor weighs in favor of the requested fee award.

### 4.     The Complexity and Duration of the Litigation

"[C]omplex and/or novel legal issues, extensive discovery, acrimonious

litigation, and tens of thousands of hours spent on the case by class counsel" are

the "factors which increase the complexity of class litigation." *In re Cendant Corp.*

*Prides Litig.*, 243 F.3d 722, 741 (3d Cir. 2001). This case involved extensive

efforts by Plaintiffs' Counsel (and this Court) over years, as reflected in the

hundreds of entries on the docket.

During the course of the action, Plaintiffs were faced with several rounds of

amending the pleadings and intense briefing, including motions to dismiss, for

class certification, and to exclude the expert opinions of Plaintiffs' econometrician,

Dr. James T. McClave.  Interim Co-Lead Counsel prepared for and presented

arguments before the Court on those motions. Moreover, the parties completed

---

opposing counsel.'") (quoting *In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166,
194 (E.D. Pa. 2000)); *Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136, 149
(E.D. Pa. 2000) ("[t]he single clearest factor reflecting the quality of class
counsel's services to the class are the results obtained.").

14

merits and expert discovery, which included production of hundreds of thousands of pages of documents from Defendants, Plaintiffs, and third parties, the production by Plaintiffs of their expert's reports, and numerous depositions of fact and expert witnesses.

As to the complexity of the case, "'[a]n antitrust class action is arguably the most complex action to prosecute. . . The legal and factual issues involved are always numerous and uncertain in outcome.'" *Linerboard*, 2004 WL 1221350, at *10 (quoting *In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329, 1337 (N.D. Ga. 2000)). This case is no exception. Regarding duration, the case, now pending for seven years, could continue for substantial additional time if it were to go to trial.  Accordingly, this factor weighs in favor of finding the fee request reasonable.

> ### 5.    Plaintiffs' Counsel Faced a Substantial Risk of Nonpayment.

Plaintiffs' Counsel undertook this case on a wholly contingent basis and ran a substantial risk of nonpayment of attorneys' fees or recovery of the out-of-pocket money expended for litigation expenses. Plaintiffs' Counsel have devoted a great deal of time and resources to this case for seven years, while deferring all compensation for their time during that lengthy period (and risking receipt of little or no compensation if the case was not litigated to a successful conclusion). *See In re Flonase Antitrust Litig.*, 291 F.R.D. 93, 104 (E.D. Pa. 2013) ("*Flonase Indirect*

15

*Purchasers*") ("as a contingent fee case, counsel faced a risk of nonpayment in the event of an unsuccessful trial. Throughout this lengthy litigation, class counsel have not received any payment. This factor supports approval of the requested fee.").[12]  Plaintiffs' Counsel also advanced $87,270.35 in costs and expenses to prosecute the litigation,[13] which would not be reimbursed absent a successful result. *See In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 516 (W.D. Pa. 2003) ("Aside from investing their time, counsel had to front copious sums of money . . . Thus, the risks that counsel incurred in prosecuting this case were substantial and further support the requested fee award."). Accordingly, this factor weighs in favor of the requested fee award.

### 6.  Plaintiffs' Counsel Devoted Thousands of Hours to Prosecuting this Action.

Plaintiffs' Counsel devoted considerable time and effort to prosecuting the Plaintiffs' claims. As set forth in the Declarations submitted with this Motion, attached as Exhibit 1, from May 10, 2012 (the date the Court appointed Interim Co-Lead and Liaison Counsel) through March 31, 2018, Plaintiffs' Counsel devoted 9,414.70 hours to prosecuting this case, resulting in a total lodestar using

---

[12] *See also Hall v. Best Buy Co.*, 274 F.R.D. 154, 173 (E.D. Pa. 2011) ("while this case has been pending, Class Counsel have not received any payment, and, by proceeding on a contingent-fee basis, ran substantial risk of nonpayment….").

[13] The amount of unreimbursed costs and expenses for each firm are set out in the Declarations attached as Exhibit 1.

{00183041 }

historical billing rates of $5,098,360.75. Plaintiffs' Counsel could have spent those hours litigating other matters, which counsels in favor of awarding the requested fee. *See*, *e.g.*, *In re Flonase Antitrust Litigation*, 951 F. Supp. 2d 739, 748 (E.D. Pa. 2013) ("*Flonase Direct Purchasers*") (finding factor weighed in favor of 33% fee award); *Lazy Oil Co. v. Wotco Corp.*, 95 F. Supp. 2d 290, 323 (W.D. Pa. 1997) ("In addition to noting the vast amount of work which was required in prosecuting this case, we also note Class Counsel's representation that their involvement in this litigation required them to abstain from working on other matters.").

### 7. One-third of the Settlement Funds is a Typical and Reasonable Fee Award for Cases Like this One.

The law is well-established that a one-third fee is typical, reasonable, and justified by extensive authority from courts in this Circuit. *See*, *e.g.*, *Castro v. Sanofi Pasteur Inc.*, No. 11-7178 (JMV)(MAH), 2017 WL 4776626, at *9 (D. N.J. Oct. 23, 2017) ("The one-third fee is within the range of fees typically awarded within the Third Circuit through the percentage-of-recovery method; the Circuit has observed that fee awards generally range from 19% to 45% of the settlement fund…Thus, the requested fee in this matter [of one-third of the settlement fund] is within the normal range." (internal citation omitted)); *In re K-Dur Antitrust Litig.*, No. 01-cv-1652, ECF 1058 (D.N.J. Oct. 5, 2017) (awarding 33⅓% of settlement). *See also Fasteners*, 2014 WL 296954, at *7 ("Counsel's request for one third of the settlement fund is consistent with other direct purchaser antitrust actions.")

17

(internal citation omitted); *Flonase Direct Purchasers*, 951 F. Supp. 2d at 746, 748 (approving requested one-third of $150 million settlement fund (plus interest), and noting that "in the last two-and-a-half years, courts in eight direct purchaser antitrust actions approved one-third fees"); *Flonase Indirect Purchasers*, 291 F.R.D. at 104 ("A one-third fee award is standard in complex antitrust cases of this kind."); *Marchbanks Truck Serv., Inc. v. Comdata Network, Inc.*, 2014 WL 12738907, at *2 (E.D. Pa. July 14, 2014) ("fee awards of one-third of the settlement amount are commonly awarded in this Circuit"); *In re Wellbutrin SR Antitrust Litig.,* No. 08-2431, 2011 U.S. Dist. LEXIS 158833, *14-15 (E.D. Pa. Nov. 21, 2011) (awarding fee of 33⅓% of settlement); *In re Auto. Refinishing Paint Antitrust Litig.*, MDL Docket No. 1426, 2008 WL 63269, at *1, *8 (E.D. Pa. Jan. 3, 2008) (same); *Bradburn Parent Teacher Store, Inc. v. 3M*, 513 F. Supp. 2d 322, 342 (E.D. Pa. 2007) (approving a percentage of recovery of 35%, plus reimbursement of expenses).[14] Moreover, a one-third fee award is consistent with

---

[14] *See also Steele v. Welch*, No. Civ.A. 03-942, Civ.A. 03-6596, 2005 WL 3801469, at *2 (E.D. Pa. May 20, 2005)(finding requested fee of 33%, plus expenses, to be reasonable); *Mylan Pharms., Inc. v. Warner Chilcott Public Ltd., Co.,* No. 12-3824, 2014 WL 12778314 (E.D. Pa. Sept. 15, 2014) (awarding 33⅓% of settlement); *In re Neurontin Antitrust Litig.*, No. 02-1830 (D.N.J. Aug. 6, 2014) (same); *In re Hypodermic Prods. Antitrust Litig.*, No. 05-1602, ECF 461 (D.N.J. Apr. 10, 2013) (same); *Rochester Drug Co-Operative, Inc. v. Braintree Labs., Inc.,* No. 1:07-cv-00142, ECF 243 (D. Del. May 31, 2012) (same); *In re Metoprolol Succinate Antitrust Litig.*, No. 06-52, ECF 193 (D. Del. Feb. 21, 2012) (same); *In re Tricor Direct Purchaser Antitrust Litig.*, 2009 U.S. Dist. LEXIS 133251, *17  (D. Del. April 23, 2009) (same); *In re Corel Corp. Sec. Litig.*, 293 F. Supp. 2d

awards nationwide.[15] A fee that fully compensates counsel for their time and the

inherent risk posed by contingent antitrust litigation of this magnitude and

---

484, 497-98 (E.D. Pa. 2003) (awarding 331/3% of settlement fund and noting, "[t]his District has observed that fee awards frequently range between nineteen and forty-five percent of the common fund."); *In re Ravisent Techs., Inc. Sec. Litig.*, No. Civ.A.00-CV-1014, 2005 WL 906361, at *11 (E.D. Pa. Apr. 18, 2005) ("courts within this Circuit have typically awarded attorneys' fees of 30% to 35% of the recovery, plus expenses"); *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 134 (D.N.J. 2002) ("Scores of cases exist where fees were awarded in the one-third to one-half of the settlement fund.") (citations omitted); *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 433-34 (E.D. Pa. 2001) (approving one-third fee request).

[15] *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 460 (9th Cir. 2000) (affirming award of fees equal to one-third of total recovery); *In re U.S. Foodservice, Inc. Pricing Litig.*, No. 07-md-01894, ECF 521 (D. Conn. Dec. 9, 2014) (attorneys awarded one-third of a $297 million settlement fund); *Standard Iron Works v. ArcelorMittal*, No. 08 C 5214, 2014 WL 7781572 (N.D. Ill. Oct. 22, 2014) (attorneys awarded 33% of a $163.9 million settlement fund); *Shaw v. Interthinx, Inc.,* No. 13-cv-01229-REB-NYW, 2015 WL 1867861 at *6 (D. Colorado Apr. 22, 2015) ("The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class."); *Menkes v. Stolt-Nielsen S.A.*, No. 3:03CV00409(DJS), 2011 WL 13234815 (D. Conn. Jan. 25, 2011) (granting fee request of 33⅓ percent of common fund in class action settlement); *In re Universal Service Fund Telephone Billing Practices Litigation*, No. 02-MD-1468-JWL, 2011 WL 1808038 at *2 (D. Kan. May 12, 2011) ("an award of one-third of the fund falls within the range of awards deemed reasonable by courts"); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06 Civ. 4270(PAC), 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (holding that "Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit" and collecting cases); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (33.33% fee award); *In re Blech Sec. Litig.*, No., 94 Civ. 7696 (RWS), 2002 WL 31720381, at *1 (S.D.N.Y. Dec. 4, 2002) (finding fee request of 33-1/3% reasonable).

complexity is also strongly supported by the policies favoring private enforcement of the antitrust laws.[16] This factor supports the requested fee.

### 8. Plaintiffs' Counsel Had to Fully Prosecute the Action to Obtain a Monetary Recovery for the Class Members.

Although the FTC did bring claims against Defendants and achieved a partial victory against McWane, which contested the claims, Plaintiffs' Counsel nevertheless were forced to fully litigate Plaintiffs' claims, including significant issues beyond those involved in the FTC proceeding, such as class certification and antitrust impact and damages issues (pass-through). The results achieved by the FTC could not be used as either *res judicata* or *collateral estoppel* against McWane by the private litigants.  Further, much of the evidence gathered by the FTC would not have been admissible at trial and thus had to be recreated, particularly from third party witnesses whose testimony and data was needed to prove impact. McWane continued to maintain that its conduct was not illegal and vigorously contested each and every issue. Plaintiffs had to prove the conduct, that

---

[16] *See, e.g.*, *In re Southeastern Milk Antitrust Litig.*, 2:07-CV-208, 2013 WL 2155387, at *5 (E.D. Tenn. May 17, 2013) ("[F]ailing to fully compensate class counsel for the excellent work done and the various substantial risks taken would undermine society's interest in the private litigation of antitrust cases. Society's interests are clearly furthered by the private prosecution of civil cases which further important public policy goals, such as vigorous competition by marketplace competitors… Simply put, anti-competitive conduct such as that alleged in this case would likely go unchallenged absent the willingness of attorneys to undertake the risks associated with such expensive and complex litigation.").

20

the conduct resulted in antitrust injury and damages, and that the damages were passed through to the indirect purchasers.  Further, Plaintiffs' Counsel sought and obtained monetary compensation for the damages to the indirect purchasers, something that was outside of the scope of the FTC proceeding. Therefore, this factor favors the requested fee.

### 9. The Requested Fee is Consistent with the Percentage Fee That Would Have Been Negotiated in a Private Contingent Fee Arrangement.

"What the market would pay" for fees in a similar litigation is "significant because…the goal of the fee setting process [is] to 'determine what the lawyer would receive if he were selling his services in the market rather than being paid by Court Order.'" *Linerboard,* 2004 WL 1221350, at \*15 (citing *In re Continental Ill. Sec. Litig.,* 962 F.2d 566, 568 (7th Cir. 1992)). There is widespread consensus that "a 33 1/3% contingent fee is [what is] commonly negotiated in the private market." *OSB*, No. 2:06-cv-00826-PD, Order, ECF 947, at \*7 (citing *Linerboard,* 2004 WL 1221350, at \*15); *see also* Eisenberg & Miller*, Attorney Fees in Class Action Settlements: An Empirical Study,* 1 J. Empirical Legal Stud. 27 (2004), at 35 ("Substantial empirical evidence indicates that a one-third fee is a common benchmark in private contingency fee cases.").[17] Indeed, "a one-third contingency

---

[17] *Accord In re Remeron Direct Purchaser Antitrust Litig.*, Civ. No. 03-0085 FSH, 2005 WL 3008808, at \*16 (D.N.J. Nov. 9, 2005) ("Attorneys regularly contract for contingent fees between 30% and 40% with their clients in non-class, commercial

21

fee arrangement is not out of the ordinary in a complex [antitrust] case like this one." *Fasteners*, 2014 WL 296954, at *7.[18] Therefore, this factor weighs in favor of approval of the fee request.

### 10. The Factor of any Innovative Terms is Neutral.

Plaintiffs claimed that they were injured and damaged by paying too much for DIPF as a result of Defendants' antitrust violations. Plaintiffs' Counsel obtained money to compensate the class members. No innovative terms were, in Interim Co-Lead Counsel's view, necessary. This factor neither weighs in favor of nor against a decision to award the requested fee. *See, e.g.*, *In re Merck & Co. Vytorin ERISA Litig.*, Civ.A. No. 08-CV-285, 2010 WL 547613, at *12 (D.N.J. Feb. 9, 2010) (finding factor neutral when no innovative terms are highlighted).

---

litigation."); *Montague v. Dixie Nat. Life Ins. Co.*, No. 3:09-00687-JFA, 2011 WL 3626541, at *3 (D.S.C. Aug. 17, 2011) ("In non-class contingency fee litigation, a 30% to 40% contingency fee is typical.").

[18] *See also Mylan Pharms. Inc. v. Warner Chilcott Public Ltd. Co.*, 2014 WL 12778314, at *7 ("[A] one-third contingency is standard in individual litigation; in antitrust litigation, a higher contingency would be reasonable, given the complexities and risks involved. In these circumstances, the requested 33⅓% fee award is fair and reasonable."); *Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455, 464 n.18 (E.D. Pa. 2008) (citing *Bradburn Parent Teacher Store, Inc.*, 513 F. Supp. 2d at 340 (finding a fee of 35% to be consistent with private contingent fee arrangements)); *In re Ikon*, 194 F.R.D. at 194 ("[I]n private contingency fee cases … plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery.").

In sum, the *Prudential/Gunter* factors support Plaintiffs' Counsel's request for one-third of the settlement funds as a fee award.

## C. The Lodestar Cross-Check Confirms The Reasonableness Of The Requested Fee

Courts in the Third Circuit may examine the lodestar calculation as a cross-check on the percentage fee award. *See*, *e.g.*, *Linerboard*, 2004 WL 1221350, at *4. The cross-check is not designed to be a "full-blown lodestar inquiry," but rather an estimation of the value of counsel's investment in the case. *Report of Third Circuit Task Force*, *Selection of Class Counsel*, 208 F.R.D. 340, 422-23 (2002) (noting that "[t]he lodestar remains difficult and burdensome to apply"); *In re Rite Aid Corp. Securities Litig.*, 396 F.3d 294, 307 (3d Cir. 2005) ("[T]he lodestar cross-check does not trump the primary reliance on the percentage of common fund method"). The Third Circuit recommends the use of the lodestar cross-check "as a means of assessing whether the percentage-of-recovery award is too high or too low," not as a substitute for the percentage-of-the-fund method. *Diet Drugs*, 582 F.3d at 545 n.42 (citing *Rite Aid*, 396 F.3d at 306-07).

The cross-check analysis is a two-step process. First, the lodestar is determined by multiplying the number of hours reasonably expended by the reasonable rates requested by the attorneys.[19] Second, the court determines the

---

[19] *See Caudle v. Bristow Optical Co., Inc.*, 224 F.3d 1014, 1028 (9th Cir. 2000).

{00183041 }

multiplier required to match the lodestar to the percentage-of-the-fund request made by counsel, and determines whether the multiplier falls within the accepted range for such a case. Here, because Plaintiffs' Counsel are asking for a fee award that is a fraction of their lodestar, the cross-check confirms that the one-third fee request is eminently reasonable.

### 1.   Plaintiffs' Counsel's Lodestar is Reasonable.

Between May 10, 2012 and March 31, 2018 Plaintiffs' Counsel spent 9,414.70 hours working on this case on behalf of the class.[20] As explained above, the hours were spent on investigation, pleadings, discovery, briefing, oral argument, working with the expert, and settlement.[21] Given this effort, the complexity of the legal issues involved, and the intensity of the defense mounted by skillfully-represented Defendants, the number of hours expended by Plaintiffs' Counsel are reasonable.  Further, Interim Co-Lead Counsel excluded from this request time incurred in this litigation prior to the appointment of Interim Co-Lead and Liaison Counsel.  Last, Interim Co-Lead Counsel have and will be expending

---

[20] Exhibit 1.

[21] "The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting. The district courts may rely on summaries submitted by the attorneys and need not review actual billing records." *Rite Aid*, 396 F.3d at 306-307. *See also Prudential*, 148 F.3d at 341 (finding no abuse of discretion where district court "reli[ed] on time summaries, rather than detailed time records"). Of course, Plaintiffs' Counsel would make detailed billing records available to the Court *in camera* upon request.

{00183041 }

substantial additional hours on this litigation to bring it to a close, which are not

included in the current lodestar, and these additional hours should be considered in

evaluating the reasonableness of the fee request.

The historical hourly rates charged by Class Counsel are reasonable based

on each person's position, experience level, and location. Taking into account the

several factors discussed above, including the result achieved, the complexity and

risk of the litigation, and the skill and experience of counsel, Plaintiffs' Counsel's

rates are reasonable and appropriate. These reasonable rates resulted in a total

lodestar of $5,098,360.75.

### 2. The Presence of a Negative Multiplier Supports the Requested Fee.

Courts may increase or decrease the lodestar amount by applying a

multiplier. Consideration of multipliers used in comparable cases may be

appropriate to gauge the reasonableness of a percentage fee award. *Rite Aid*, 396

F.3d at 307.  Here Plaintiffs' Counsel are not asking for a fee that constitutes a

multiple of their lodestar.  Instead, Plaintiffs' Counsel are requesting a fee award of

one-third of the total settlement funds of $4,071,250, or $1,343,512.50, which is

only 26.62% of the lodestar.  Plaintiffs' Counsel will have a negative multiplier if

the requested fee is awarded.  Here, the lodestar cross-check provides additional

confirmation of the reasonableness of the requested fee.  *Castro*, 2017 WL

4776626, at *9 ("Because the lodestar cross-check results in a negative multiplier, it provides strong evidence that the requested fee is reasonable.").

## IV. PLAINTIFFS' COUNSEL SHOULD BE REIMBURSED FOR THEIR OUT-OF-POCKET EXPENSES

Plaintiffs also request that the Court authorize reimbursement to Plaintiffs' Counsel of the reasonable and necessary expenses they advanced to prosecute this litigation since its inception. "Attorneys who create a common fund for the benefit of a class are entitled to reimbursement of reasonable litigation expenses from the fund." *Nichols*, 2005 WL 950616, at *24 (quoting *In re Aetna Inc. Sec. Litig.*, No. CIV. A. MDL 1219, 2001 WL 20928 at *13 (E.D. Pa. Jan. 4, 2001)); *see also Rent-Way*, 305 F. Supp. 2d at 519 ("There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of . . . reasonable litigation expenses from that fund."); *In re Corel Corp. Inc. Sec. Litig.*, 293 F. Supp. 2d 484, 498 (E.D. Pa. 2003) (same) (quoting *Ikon*, 194 F.R.D. at 192).[22]

---

[22] *See also Meijer, Inc. v. 3M*, No. 04-5871, 2006 WL 2382718 at *18 (E.D. Pa. Aug. 14, 2006) (granting plaintiffs' motion for approval of expenses "incurred in connection with the prosecution and settlement of the litigation, and [including] costs related to the following: travel; computerized legal research; copying; postage; telephone and fax; transcripts; retention of a mediator; the document database; expert services; and claims administration.").

{00183041 }

Since the inception of the case, Plaintiffs' Counsel have incurred $87,270.35 in unreimbursed expenses.[23] The categories of expenses for which reimbursement is now sought are the type of expenses routinely charged to hourly clients, such as document management, travel, photocopying, deposition services and transcripts, and computerized legal research.

## V.     THE COURT SHOULD APPROVE CLASS REPRESENTATIVE SERVICE AWARDS

Plaintiffs also request approval for a $15,000 service award for each of the Class Representatives[24] to be paid from the combined settlement funds.  Such awards are common in class actions resulting in a common fund for distribution to the class, because "the class representatives have conferred benefits on all other class members and they deserve to be compensated accordingly." *Linerboard*

---

[23] These expenses are detailed in the Declarations attached as Exhibit 1.  The Court previously approved the use of up to $475,000 from the earlier settlements for litigation expenses.  A portion was used, mostly to pay Plaintiffs' expert, and also for mediation and deposition expenses. The $219,473.52 remaining will be added to the settlement funds for distribution.

There are additional expenses relating to settlement administration and the claims process that will necessarily be incurred if the Court grants final approval of the McWane settlement.  The exact amount will not be known until it is time to complete the distribution.  Interim Co-Lead Counsel would seek approval for these expenses when they seek authorization to distribute the settlement funds to class members at the conclusion of the claim submission and evaluation process.

[24] The Class Representatives are Yates Construction Co., Inc., Waterline Industries Corp., Wayne County, City of Hallandale Beach, South Huntington Water District, Water District No. 1 of Johnson County, TC Construction Co., and Village of Woodbridge.

27

*Antitrust Litig.*, 2004 WL 1221350, at *18. As the Third Circuit has noted, such

awards exist "to compensate named plaintiffs for the services they provided and

the risks they incurred during the course of class action litigation." *Sullivan v. DB

Invs., Inc.*, 667 F.3d 273, 333 n.65 (3d Cir. 2011) (citation omitted).  Factors that

courts consider in determining service awards include the risks to the plaintiffs in

commencing the litigation (financially and otherwise), the extent of the plaintiffs'

personal involvement in the lawsuit, the duration of the litigation, and the

plaintiffs' personal benefits (or lack thereof) purely in their capacity as members of

the class. *McGee v. Ann's Choice, Inc.*, No. 12-2664, 2014 WL 2514582, at *3

(E.D. Pa. June 4, 2014) (citing *In re Plastic Tableware Antitrust Litig.*, No. 94-CV-

3564, 1995 WL 723175, at *2 (E.D. Pa. Dec. 4, 1995)).

Here, each of the Class Representatives spent a significant amount of time

assisting in the litigation of this case.  Each worked with their attorneys, responded

to written discovery, and produced documents relating to its claims; an individual

representing each Class Representative was examined at deposition by defense

counsel regarding its claims; and each was kept appraised of the status of the

litigation and the proposed settlements.  The Class Representatives took on this

risk and responsibility, on behalf of the entire class, even though their claims were

not large.  The requested service awards are reasonable given the amount of effort

the Class Representatives expended to benefit the class members.

28

## VI.   CONCLUSION

For the reasons discussed herein, Plaintiffs respectfully request that the

Court: (1) award Plaintiffs' Counsel one-third of the combined settlement funds as

attorneys' fees; (2) order reimbursement of litigation expenses incurred by

Plaintiffs' Counsel in the amount of $87,270.35; and (3) award each Class

Representative a service award of $15,000.

Dated: May 9, 2018                            Respectfully submitted,

                                              /s/Robert S. Kitchenoff


David Kovel                                   Lisa J. Rodriguez
Elizabeth Brehm                               SCHNADER HARRISON SEGAL
KIRBY MCINERNEY LLP                           & LEWIS LLP
825 Third Avenue, 16th Floor                  Woodland Falls Corporate Park
New York, NY  10022                           220 Lake Drive East, Suite 200
Tel: (212) 317-2300                           Cherry Hill, New Jersey 08002-1165
dkovel@kmllp.com                              Telephone: (856) 482-5741
ebrehm@kmllp.com                              ljrodriguez@schnader.com

*Interim Co-Lead Counsel for*                 *Interim Liaison Counsel for*
*Indirect Purchaser Plaintiffs*               *Indirect Purchaser Plaintiffs*

Robert S. Kitchenoff                          Joseph C. Kohn
WEINSTEIN KITCHENOFF &                        William E. Hoese
ASHER LLC                                     KOHN, SWIFT & GRAF, P.C.
100 South Broad Street, Suite 705             1600 Market Street, Suite 2500
Philadelphia, PA  19110-1061                  Philadelphia, PA  19103215) 238-1700
Tel: (215) 545-7200                           jkohn@kohnswift.com
kitchenoff@wka-law.com                        whoese@kohnswift.com

*Interim Co-Lead Counsel for*                 *Interim Co-Lead Counsel for*
*Indirect Purchaser Plaintiffs*               *Indirect Purchaser Plaintiffs*

{00183041 }